**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>GOLDENPEAKS POLAND<br>HOLDING LIMITED, *et al.*,<br><br><div align="center">Debtors.[1]</div> | Chapter 11<br><br>Case No. 26-90564 (ARP)<br><br>(Jointly Administered) |

**NOTICE OF (I) INTERIM APPROVAL OF DISCLOSURES; (II) HEARING TO CONSIDER
CONFIRMATION OF THE PLAN; (III) DEADLINE FOR FILING OBJECTIONS TO
CONFIRMATION OF THE PLAN AND FINAL APPROVAL OF THE DISCLOSURES;
(IV) DEADLINE FOR VOTING ON THE PLAN; AND (V) BAR DATE FOR FILING
ADMINISTRATIVE CLAIMS ESTABLISHED BY THE PLAN**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 29, 2026 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. On July 24, 2026, the Debtors filed the *First Amended Combined Disclosure Statement and Plan of Liquidation of GoldenPeaks Poland Holding Limited and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 399] (including all exhibits thereto and as amended, supplemented or otherwise modified from time to time, the "Combined Disclosure Statement and Plan" or, separately in relevant part, the "Disclosure Statement" and the "Plan").

By an Order dated July 24, 2026 [Docket No. 403] (the "Conditional Approval and Procedures Order"), the Court approved, on an interim basis, the disclosures (the "Disclosures") in the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code. The Conditional Approval and Procedures Order expressly reserves all parties' rights to raise objections to the adequacy of information in the Disclosure Statement.

By the Conditional Approval and Procedures Order, the Bankruptcy Court established **August 24, 2026 at 4:00 p.m. (Central Time)** (the "Voting Deadline") as the deadline by which ballots accepting or rejecting the Plan must be received. To be counted, your ballot must **actually be received** on or before the Voting Deadline by the Voting Agent via the online ballot portal at https://restructuring.ra.kroll.com/goldenpeaks or at the following address:

By First-Class Mail (in the return envelope provided or otherwise), Overnight Courier, or Hand Delivery:

<div align="center">

GoldenPeaks Poland Holding Limited, et al., Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

</div>

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GoldenPeaks. The location of Debtor Goldenpeaks Poland LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 801 Louisiana Street, Suite 368, Houston, TX 77002.

(The enclosed pre-addressed reply envelope does <u>not</u> include pre-paid postage, and the voting creditor will need to apply the necessary postage (including the applicable international postage) if such voting creditor seeks to vote by paper Ballot. To arrange hand delivery of your Ballot, please email GoldenPeaksBallots@ra.kroll.com (with "GoldenPeaks Poland Ballot Delivery" in the subject line), at least 24 hours prior to arrival at the Kroll address above and provide the anticipated date and time of delivery.)

On **August 28, 2026 at 10:00 a.m. (Central Time)**, or as soon thereafter as counsel may be heard, a hearing will be held before the Honorable Alfredo R. Pérez in the United States Bankruptcy Court for the Southern District of Texas, to consider final approval of the Disclosures and confirmation of the Plan, as the same may be amended or modified (the "<u>Confirmation Hearing</u>"). Parties may only participate in the hearing virtually by an audio and video connection. Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Pérez's home page. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting. Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Pérez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.

The Confirmation Hearing may be adjourned from time to time without further notice to you. The Combined Disclosure Statement and Plan may be modified in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Combined Disclosure Statement and Plan, and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing.

Objections, if any, to final approval of the Disclosures or confirmation of the Plan, including any supporting memoranda, must be in writing, be filed with the Clerk of the Court, United States Bankruptcy Court, Southern District of Texas, 515 Rusk Street, Houston, TX 77002 together with proof of service on or before **August 24, 2026 at 4:00 p.m. (Central Time)** (the "<u>Objection Deadline</u>"), and shall (a) state the name and address of the objecting party and the amount of its claim or the nature of its interest in the Debtors' Chapter 11 Cases; (b) state with particularity the provision or provisions of the Combined Disclosure Statement and Plan objected to and, for each objection asserted, the legal and/or factual basis for such objection; and (c) be served on the Notice Parties identified in the Conditional Approval and Procedures Order.

If you wish to receive copies of the Combined Disclosure Statement and Plan, they will be provided, as quickly as practicable, upon request to the Voting Agent, Kroll Restructuring Administration LLC (the "<u>Voting Agent</u>") by (i) telephone at (844) 408-3419 (U.S./Canada, toll-free) or +1 (646) 701-5122 (international, toll), or (ii) email at GoldenPeaksInfo@ra.kroll.com (with "GoldenPeaks Solicitation" in the subject line). Copies of the Combined Disclosure Statement and Plan are also available for free on the Voting Agent's website at https://restructuring.ra.kroll.com/goldenpeaks and are on file with the Clerk of the Bankruptcy Court for the Southern District of Texas, and may be reviewed during the regular hours of the Court or online through the Bankruptcy Court's website at https://www.txs.uscourts.gov/page/bankruptcy-court.

The Plan defines the Administrative Expense Bar Date as **thirty (30) calendar days after the Effective Date**, other than for Professional Fee Claims, which are subject to the bar date set forth in Section VIII.C.

## EXCULPATIONS, INJUNCTIONS, AND RELEASES

The Debtors seek approval of the Brookfield Settlement and the exculpation, release, injunction, and Final DIP Order and Sale Order protection provisions set forth in Sections XVI.A, XVI.B, XVI.C, XVI.D, XVI.E, and XVI.I of the Combined Disclosure Statement and Plan:

**Certain Defined Terms.**

"**Brookfield**" means Brookfield Asset Management Limited and its affiliates, including funds and accounts managed by any of them, and any affiliate or designee thereof, as applicable.

"**Founders**" means, collectively, Adriano Agosti and Daniel Tain, and any Related Person thereof that is not a Debtor.

"**Exculpated Parties**" means (a) the Debtors and (b) the directors of the Debtors who served during any portion of the Chapter 11 Cases, including the Independent Directors and Brookfield Directors, solely in their capacity as such; *provided, however*, that notwithstanding anything to the contrary in the Plan, the Founders shall not be Exculpated Parties in any capacity.

"**Related Persons**" means, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's successors and assigns, and as applicable, said Person's current and former shareholders, affiliates, subsidiaries, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants, solely in their respective capacities as such.

"**Released Parties**" means, collectively, (a) the Independent Directors; (b) the Debtors' professionals retained in the Chapter 11 Cases; (c) Brookfield; (d) Brookfield Directors; (e) the DIP Agent; (f) the DIP Lenders / Loan Parties; (g) the Prepetition Credit Facilities Agents; (h) the Prepetition Credit Facilities Lenders; (i) Bid Administrator LLC and its current and former Affiliates; and (j) the respective Related Persons of each of the foregoing parties; *provided, however*, that notwithstanding anything to the contrary in the Plan, the Founders shall not be Exculpated Parties, Released Parties, or Related Persons under the Plan, and shall not be entitled to the benefit of any of the exculpation or release provisions under the Plan, in any of their capacities.

"**Releasing Parties**" has the meaning set forth in Section XVI.D of the Plan.

**Brookfield Settlement (Section XVI.A).**

Pursuant to sections 363, 1123(b)(3)(A), and 1129 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the substantial contributions made by Brookfield to the Debtors, their Estates, and these Chapter 11 Cases—including the prepetition bridge financing provided, the DIP Facility, the agreement of the DIP Lenders / Loan Parties to permit the funding of the Plan and the wind-down of the Estates with the Wind-Down Budget and other Collateral in which such parties hold Liens and Claims, and the funding of the Wind-Down Budget (collectively, the "Brookfield Settlement Contributions")—the Plan constitutes a good-faith compromise and settlement of all Claims, Interests, and Causes of Action among the Debtors, the Estates, and Brookfield (the "Brookfield Settlement"). The releases, exculpation, and injunction set forth in this Section XVI.A, as they pertain to Brookfield and their respective Related Persons, are given in exchange for, and are supported by, the Brookfield Settlement Contributions, and constitute an integral and non-severable part of such compromise and settlement. Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, of the Brookfield Settlement, and the Court's finding that such settlement is (a) in exchange for good and valuable consideration provided by Brookfield; (b) a good-faith settlement and compromise negotiated at arm's length; (c) in the best interests of the Debtors, their Estates, and Holders of Claims and Interests; and (d) fair, equitable, and reasonable.

**Exculpation (Section XVI.B).**

**The Exculpated Parties will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken in connection with or related to the Chapter 11 Cases, the DIP Facility, the Sale Order, the Stalking Horse APA and other Sale Documents, the Bid Procedures and Bid Procedures Order, any sale or other disposition of the Debtors' assets, or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by Final Order of a court of competent jurisdiction); provided, however, that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reasonable reliance shall form a defense to any such claim, Cause of Action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code.**

**Debtor Releases (Section XVI.C).**

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors and the Estates (collectively, the "Estate Releasors") shall release each Released Party, and each Released Party is deemed released by the Estate Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Estate Releasors would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' liquidation, the Chapter 11 Cases, the Sale Motion and the Sale Order, the Stalking Horse APA and other Sale Documents, the Bid Procedures and Bid Procedures Order, the DIP Facility/Obligations, the DIP Documents, the DIP Orders, the Prepetition Credit Documents, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence (the "Estate Release"); provided, however, the foregoing Estate Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan. For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan or the Confirmation Order, the Estate Release shall not release any claims or Causes of Action of the Debtors or their Estates against the Founders (including any Causes of Action for breach of fiduciary duty), all of which are expressly preserved and shall vest in the Liquidation Trust on the Effective Date.**

4

Entry of the Confirmation Order shall constitute the Court's approval of the Estate Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Court's finding that the Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Estate Releasors asserting any Claim or Cause of Action released pursuant to the Estate Release.

For the avoidance of doubt, the Estate Release and the Third Party Release each extend to any and all Claims and Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Sale Motion and the Sale Order, the Stalking Horse APA and other Sale Documents, the Bid Procedures and Bid Procedures Order, the DIP Facility/Obligations, the DIP Documents, the DIP Orders, the Prepetition Credit Documents, and the negotiation, formulation, or implementation of any of the foregoing. The good and valuable consideration supporting the releases provided to Brookfield, the DIP Agent, the DIP Lenders / Loan Parties, the Prepetition Credit Facilities Agents, and the other Released Parties includes, without limitation, Brookfield's prepetition bridge financing provided when no other party was willing to fund the Debtors, the DIP Facility, and the agreement of the DIP Lenders / Loan Parties and the Prepetition Credit Facilities Lenders to permit the funding of the Plan and the wind-down of the Estates with Available Cash and other Collateral in which such parties hold Liens and Claims.

Third Party Releases (Section XVI.D).

On and after and subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, each of the following (collectively, the "Releasing Parties"), in each case for themselves and their Related Persons (in each case in their capacity as such): (a) each Holder of a Claim that votes to accept the Plan and that does not elect to "opt-out" of the Third Party Release by timely marking the appropriate box on its Opt-Out Form or Ballot; (b) each Holder of a Claim that is entitled to vote on the Plan and that either votes to reject the Plan or abstains from voting on the Plan, in each case that does not elect to "opt-out" of the Third Party Release by timely marking the appropriate box on its Ballot; (c) each Holder of a Claim or Interest that is Unimpaired or is otherwise deemed to accept the Plan and that does not elect to "opt-out" of the Third Party Release by timely marking the appropriate box on its Opt-Out Form; (d) each Holder of a Claim or Interest that is deemed to reject the Plan and that does not elect to "opt-out" of the Third Party Release by timely marking the appropriate box on its Opt-Out Form; and (e) the respective Related Persons of each of the foregoing parties that are legally entitled to be bound to the releases contained in this Plan under applicable law, shall release (the "Third Party Release") each Released Party, and the Released Parties shall be deemed released from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Releasing Party would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' liquidation, the Chapter 11 Cases, the Sale Motion and the Sale Order, the Stalking Horse APA and other Sale Documents, the Bid Procedures and Bid Procedures Order, the DIP Facility/Obligations, the DIP Documents, the DIP Orders, the Prepetition Credit Documents, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related

agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; *provided, however*, the foregoing Third Party Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan. For the avoidance of doubt, any Holder that votes to accept or reject the Plan, or abstains from voting on the Plan, may elect not to grant the Third Party Release, and thereby not be a Releasing Party, by timely opting out in the manner described in the Solicitation Package or the applicable notice of non-voting status.

Entry of the Confirmation Order shall constitute the Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Court's finding that the Third Party  Release is consensually provided by the applicable Claimant and a bar to the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Release.

Notwithstanding anything to the contrary in the Plan, the Founders shall not be Exculpated Parties, Released Parties, or Related Persons under the Plan, and shall not be entitled to the benefit of any of the exculpation or release provisions under the Plan, in any of their capacities.

<u>Injunction (Section XVI.E).</u>

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, as applicable, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold, or may hold Claims against or Interests in the Debtors, the Liquidation Trust or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, the Liquidation Trust, or any of the Liquidation Trust Assets, with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, the Liquidation Trust, or any of the Liquidation Trust Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, or the Liquidation Trust, or any of the Liquidation Trust Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or the Liquidation Trust under the Plan.

In furtherance of the foregoing, and except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities are permanently enjoined from commencing or continuing, directly or indirectly, any action or other proceeding of any kind against any Released Party or Exculpated Party on account of or in connection with any Claim or Cause of Action released or exculpated pursuant to this Section XVI.  No Entity (including any Holder that has opted out of the Third Party Release) may commence or pursue any Claim or Cause of Action of any kind against any Released Party or Exculpated Party that relates to or is reasonably likely to relate to any Claim or Cause of Action that is the subject of this Section XVI without first (a) obtaining a determination from the Court, after notice and a hearing, that such Claim or Cause of Action (i) is not released or exculpated

**under the Plan and (ii) is colorable, and (b) obtaining specific authorization from the Court to commence or pursue such Claim or Cause of Action.**

**Preservation of Final DIP Order and Sale Order Protections (Section XVI.I).**

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall modify, impair, or diminish the stipulations, admissions, releases, waivers (including the waivers of rights under sections 506(c) and 552(b) of the Bankruptcy Code and of the doctrine of marshaling), Liens, superpriority claims, indemnities, protections, or challenge-period provisions granted to or for the benefit of the DIP Agent, the DIP Lenders / Loan Parties, Brookfield, or the Prepetition Credit Facilities Agents under the Final DIP Order, all of which are incorporated herein by reference and shall survive and remain in full force and effect in accordance with their terms, including the protections of section 364(e) of the Bankruptcy Code. To the extent of any conflict between the Plan, on the one hand, and the Final DIP Order or the Sale Order, on the other hand, the Final DIP Order or the Sale Order, as applicable, shall govern with respect to the matters addressed therein.

IF YOU HAVE ANY QUESTIONS REGARDING YOUR CLAIM OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT AS SET FORTH ABOVE.

Dated: July 24, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Benjamin L. Wallen*

Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Steven W. Golden (SBT 24099681)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
mwarner@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*