**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>GOLDENPEAKS POLAND HOLDING LIMITED, *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90564 (ARP)<br><br>(Jointly Administered) |

# DEBTORS' EMERGENCY MOTION FOR (A) ENTRY OF AN ORDER TO APPEAR AND SHOW CAUSE AGAINST CNBM RESEARCH INSTITUTE FOR ADVANCED GLASS MATERIALS GROUP CO., LTD., AND (B) THE IMPOSITION OF COMPENSATORY AND COERCIVE SANCTIONS FOR VIOLATING THE AUTOMATIC STAY

**Emergency relief has been requested. Relief is requested not later than October 13, 2026, at 10:15 a.m. (prevailing Central Time).**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on October 13, 2026, at 10:15 a.m. (prevailing Central Time). You may participate in the hearing either in person or by an audio and video connection, unless otherwise ordered by the Court.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694 Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Pérez's homepage. The meeting code is "judgeperez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Pérez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GoldenPeaks. The location of Debtor Goldenpeaks Poland LLC's principal place of business and the Debtors' service address in these Chapter 11 cases is 801 Louisiana Street, Suite 368, Houston, TX 77002.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this emergency motion (this "Motion"):

**PRELIMINARY STATEMENT**[2]

1. CNBM Research Institute for Advanced Glass Materials Group Co., Ltd. ("CNBM"),[3] the Debtors' construction services provider,[4] is a member of the Committee and has been identified as a proposed member of the post-confirmation Liquidation Trust Board.[5] More

---

[2] Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them below. Unless otherwise indicated, citations to the docket in these Chapter 11 Cases are in the form "[Docket No. __]." True and correct copies of the correspondence and other documents referenced in this Motion that are not of record are annexed hereto as follows: **Exhibit A**, the Debtors' September 28, 2026 letter to CNBM's counsel (the September 28 Letter, as defined below), together with its Attachments 1 and 2 as transmitted (Attachment 1 being the September 16–17, 2026 email exchange between counsel, including the China Construction Bank notification and SWIFT message attached thereto, and Attachment 2 being the Chinese-language Stop-Payment Ruling as received from CCB); **Exhibit B**, CNBM's counsel's October 1, 2026 letter (the October 1 Letter, as defined below); **Exhibit C**, the Debtors' October 2, 2026 letter, together with its Exhibit A (the October 2 Letter, as defined below); **Exhibit D**, CNBM's counsel's October 2, 2026 letter (CNBM's October 2 Response, as defined below); **Exhibit E**, the Debtors' proposed stipulation regarding CNBM's document production (the Stipulation, as defined below); and **Exhibit F**, the Declaration of Shan He Regarding Translation of Civil Ruling of the Intermediate People's Court of Hefei City, Anhui Province, Case No. (2026) Wan 01 Xing Bao No. 1-1 (the "He Declaration" or "He Decl."). Exhibits A through E are cited herein by exhibit letter and document (e.g., "Ex. A (Sept. 28 Letter)"). The Stop-Payment Ruling is cited to the certified English translation attached to the He Declaration as Exhibit 2; the Chinese-language original is attached to the He Declaration as Exhibit 1. Pin cites to the certified translation refer to the page numbering of that exhibit.

[3] CNBM appeared in these Chapter 11 Cases, and filed its Cure Objection (defined below), as "CNBM Research Institute for Advanced Glass Materials Co., Ltd., f/k/a (CNBM) Bengbu Design & Research Institute for Glass Industry Co., Ltd." *See* Docket Nos. 204–206, 396. Its counsel's correspondence, the EPC Contract, and China Construction Bank's notices identify the same entity as "CNBM Research Institute for Advanced Glass Materials *Group* Co., Ltd." *See, e.g.*, Ex. B (Oct. 1 Letter) at 1; Ex. A (Sept. 28 Letter), Att. 1 at 3. The certified translation of the Stop-Payment Ruling renders the applicant's Chinese-language name (中建材玻璃新材料研究院集团有限公司) literally as "China National Building Materials Glass New Material Research Institute Group Co., Ltd.," with its registered address at No. 1047 Tushan Road, Bengbu, Anhui and Unified Social Credit Code 913403004852224289. He Decl. Ex. 2 at 1. CCB's own notification to CNBM pairs that Chinese name with the English name "CNBM Research Institute for Advanced Glass Materials Group Co., Ltd." Ex. A, Att. 1 at 3. All of these names refer to the same entity, referred to herein as CNBM.

[4] The First Day Declaration states, in relevant part: "After the initial development stage, a project enters the "EPC" [Engineering, Procurement, and Construction] phase for construction. For construction services, the Company historically contracted with China National Building Material Group Corporation ("CNBM"). The project owners generally make payments for EPC Services periodically upon achievement of certain construction milestones. CNBM, a third-party EPC provider, provides a performance guarantee to the projects. CNBM would historically subcontract its work to non-debtor affiliate Spectris Energy sp. z.o.o. ("Spectris"), which, as discussed below, recently ceased operations and has applied for remedial proceedings in Poland." First Day Declaration ¶ 38 at 14.

[5] The Plan provides that the Liquidation Trust Board consists of one Brookfield Designee and two Committee Designees, to be "set forth in the Liquidation Trust Agreement." *Order Confirming Chapter 11 Plan* [Docket No. 720] (the "Confirmation Order"), Plan § XIV.C (Liquidation Trust Governance) (at 116–17 of 167). The draft Liquidation

than three and one-half months after the Petition Date, while actively participating in these cases as a Committee member and through U.S. counsel, CNBM went to a court in Hefei, China, and obtained an *ex parte* order freezing €5,122,607.40[6] of estate property without apparent notice to the Debtors, without disclosure to this Court, and without ever seeking relief from the automatic stay.

2. The property CNBM froze is Debtor Timber Renewable Energy sp. z o.o.'s ("TRE") payment under the Performance Bond that China Construction Bank Corporation, Anhui Branch ("CCB"), issued in TRE's favor to secure CNBM's performance under a prepetition EPC (Engineering, Procurement, and Construction) contract. After TRE made a demand to CCB under the Performance Bond (which was necessary because the Performance Bond was about to expire on September 30 and CNBM had not extended it) and CCB notified CNBM, CNBM's U.S. counsel wrote to the Debtors on September 16, 2026, calling the demand "premature" and asking that TRE stand down pending resolution of matters "before the Bankruptcy Court." In that correspondence, CNBM failed to disclose that it had ***already*** filed an *ex parte* Application in the Intermediate People's Court of Hefei, Anhui Province (the "Hefei Court"), seeking an order suspending CCB's

---

Trust Agreement filed with the Amended Plan Supplement identifies a "Representative of CNBM Research Institute for Advanced Glass Materials Co., Ltd." as one of the two initial Committee Designees. *Notice of Filing Amended Plan Supplement for the Third Amended Combined Disclosure Statement and Plan of Liquidation of GoldenPeaks Poland Holding Limited and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 659], Ex. A (Liquidation Trust Agreement) § 5.1 (at 21 of 116) & Ex. A thereto (Liquidation Trust Board Members) (at 43 of 116). The version of the Liquidation Trust Agreement filed with the initial Plan Supplement on August 14, 2026 left the Committee Designee seats blank. *Notice of Filing Plan Supplement for the First Amended Combined Disclosure Statement and Plan of Liquidation of GoldenPeaks Poland Holding Limited and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 598], Ex. A (Liquidation Trust Agreement), Ex. A thereto (at 42 of 51).

[6] Approximately US$5,768,112.45 as of October 6, 2026. Source: www.xe.com.

payment to TRE under the Performance Bond.[7] On September 17, 2026, the Hefei Court entered a ruling doing just that (the "Stop-Payment Ruling").[8]

3. The Debtors did not learn any of this from CNBM. They learned it eleven days later, when ***CCB*** notified TRE's bank that it was "prohibited from making any payment or disbursement under the above-mentioned guarantee until further notice from the competent court."[9] To the Debtors' knowledge, neither TRE nor the other Debtors have ever been formally served with CNBM's Application (which the Debtors still have not seen, despite multiple written requests) or the Stop-Payment Ruling.[10] Since September 28, the Debtors have asked CNBM in writing (i.e., twice by letter and then by a formal notice under Bankruptcy Rule 2004) to produce the Hefei filings and the purported "Side Contract" on which the Stop-Payment Ruling rests. The Debtors also are unaware whether CNBM intends to again violate the automatic stay and commence the merits litigation in China that it must file within thirty days of the ruling (*i.e.*, by approximately October 17, 2026) to keep the freeze in place.[11] CNBM's first response did not deny a single operative fact regarding its violation of the automatic stay and asked for more time on account of a Chinese holiday.[12] Its second response "unequivocally denies" that CNBM violated the stay but offers no explanation of how an *ex parte* foreign proceeding against a debtor

---

[7] Ex. A (Sept. 28 Letter) at 3–4; He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 1 (reciting that the Hefei Court docketed CNBM's Application on September 15, 2026); Ex. C (Oct. 2 Letter) at 2 (noting that CNBM did not deny the point); Ex. D (CNBM Oct. 2 Response) at 1–3 (still not disputing it).

[8] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 4–5.

[9] Ex. A (Sept. 28 Letter) at 4.

[10] Ex. A (Sept. 28 Letter) at 4; Ex. C (Oct. 2 Letter) at 2.

[11] Ex. A (Sept. 28 Letter) at 6–7; Ex. C (Oct. 2 Letter) at 2, 5–6; *Notice of the Debtors' Rule 2004 Request for Production of Documents to CNBM Research Institute for Advanced Glass Materials Group Co., Ltd.* [Docket No. 820] (the "Rule 2004 Notice"), Sched. A, Request Nos. 1, 3, 8.

[12] Ex. B (Oct. 1 Letter) at 1–2.

to freeze estate property could be consistent with section 362(a), still does not dispute any of the operative facts, and does not say whether CNBM intends to sue TRE in China.[13] As of this filing, to the Debtors' knowledge, CNBM has not withdrawn the Application, has not sought to vacate the Stop-Payment Ruling, has not produced the Side Contract, and has not produced even its own Application.[14]

4. Accordingly, by this Motion, the Debtors request (a) entry of an order, in substantially the form attached hereto (the "Order"), directing CNBM to appear at a hearing (the "Show Cause Hearing") and show cause why it should not be held in civil contempt for violating the automatic stay, and (b) following the Show Cause Hearing, entry of an order (i) finding that CNBM willfully violated section 362(a)(1) and (a)(3) of the Bankruptcy Code; (ii) directing CNBM, within three (3) business days of entry of this Court's order, (A) to file with the Hefei Court a withdrawal of the Application and a request that the Stop-Payment Ruling be lifted, and to serve copies of those filings on Debtors' counsel; (B) to notify CCB in writing, with a copy to Debtors' counsel, that CNBM consents to CCB's payment of TRE's Demand under the Performance Bond; and (C) not to withdraw, transfer, encumber, or otherwise dissipate the RMB 40,032,664.57 bank deposit posted as security with the Hefei Court and, upon its release by the Hefei Court, to deposit the released funds into the registry of this Court pursuant to Bankruptcy Rule 7067, to be held pending this Court's determination of the Debtors' compensatory sanctions; (iii) enjoining CNBM from commencing or continuing any proceeding against any Debtor or its property outside this Court, including any guarantee-fraud litigation or arbitration under Article 16 of the Independent Guarantee Provisions; (iv) imposing coercive sanctions against CNBM in

---

[13] Ex. D (CNBM Oct. 2 Response) at 1–3.

[14] *See* Ex. B (Oct. 1 Letter) (passim); Ex. D (CNBM Oct. 2 Response) (passim).

an amount to be determined by the Court, for each day after the deadline fixed by the Court should CNBM fail to complete the steps described in clauses (ii)(A) and (ii)(B), above; (v) awarding the Debtors compensatory sanctions in the amount of the damages they have incurred, including professional fees and expenses, in an amount to be established; (vi) declaring that CNBM is ineligible to serve as a member of the Committee or of the Liquidation Trust Board; and (vii) disallowing CNBM's claims against the Debtors.

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court" or the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory bases for the relief requested herein are sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 9014 and 9020, and Rule 9013-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

## STATEMENT OF FACTS

### A. General Background

8. The Debtors and their non-debtor subsidiaries are an independent renewable energy power producer in Eastern Europe and the largest owner of solar photovoltaic assets in Poland. The Debtors were previously part of a larger group of companies that own and operate a renewable energy platform that includes integration of project development and engineering, financing and

structuring, supply chain management, construction and commissioning, asset operations, and commercial and energy sales, among others, where all services have been historically provided by the wider group. In order to survive, however, the Debtors separated from the larger group of companies and established an independent operating company around the Company's solar projects located in Poland.

9. On May 29, 2026 (the "Petition Date"), the Debtors commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code before the Bankruptcy Court. TRE is one of the Debtors. Its Chapter 11 Case has not been dismissed, and it is not among the Initial Acquired Companies whose cases were dismissed in connection with the September 28, 2026, partial closing of the sale of the Debtors' assets, discussed below.[15]

10. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Edward Manning, Restructuring Advisor to the Debtors, in Support of the Chapter 11 Petitions and First Day Relief* [Docket No. 19] (the "First Day Declaration"), which is incorporated by reference herein.

11. On June 16, 2026, the Office of the United States Trustee (the "U.S. Trustee") formed the official committee of unsecured creditors (the "Committee") [Docket No. 102], which the U.S. Trustee reconstituted on June 17, 2026 [Docket No. 107]. CNBM is a member of the

[15] *Notice of (I) Occurrence of Partial Closing, (II) Dismissal of Chapter 11 Cases of Certain Initial Acquired Companies, (III) Amended Purchase Agreement, and (IV) Assumption and Assignment of Certain Transferred Contracts* [Docket No. 765] at 1–2, Exhibit C (identifying Delta, Echo, Foxtrot, and Gamma Renewable Energy entities, not TRE, as the Initial Acquired Companies). The Confirmation Order contemplates that the Debtors may elect, prior to the Effective Date and with the consent of the Required DIP Lenders and the Buyer, to dismiss the cases of certain Debtors that are neither Sellers nor Acquired Companies (the "Unsold Dismissed Companies") on not less than ten business days' notice. Confirmation Order ¶¶ 49–51. No such notice has been filed with respect to TRE.

Committee.[16] On July 2, 2026, ArentFox Schiff LLP ("AFS") filed a *Notice of Appearance and Request for Notice* [Docket No. 206] in these Chapter 11 Cases on behalf of CNBM, and two of its partners moved for admission *pro hac vice* to represent CNBM [Docket Nos. 204, 205].

## B. The EPC Contract and the Performance Bond

12. On April 21, 2025, TRE, non-Debtor former affiliate of the Debtors GoldenPeaks Capital Holding Ltd. ("GPC"), and CNBM entered into an EPC contract for the design, supply, construction, and commissioning of a 142.40718 MW solar project in Poland (the "EPC Contract").[17] To secure CNBM's obligations under the EPC Contract, CCB issued Performance Guarantee No. AHC02LG000005200 on August 22, 2025, in favor of TRE, in the amount of EUR 5,122,607.40, expiring September 30, 2026 (the "Performance Bond").[18] On July 24, 2026, CNBM filed an objection to the Debtors' proposed assumption and assignment of its executory contracts (including the EPC Contract) and the related cure amounts, asserting that "the actual Cure Amount is no less than $49,769,453.21" (the "Cure Objection").[19]

13. In the Cure Objection, CNBM asserted that the Debtors' Cure Notice "omits numerous agreements between CNBM and the Debtors," including "the additional agreements set

[16] Confirmation Order ¶ C at 4–5; *Third Amended Disclosure Statement* [Docket No. 656] § IV.G. at 19 (identifying "CNBM Research Institute for Advanced Glass Materials Co., Ltd." as a member of the reconstituted Committee).

[17] Ex. A (Sept. 28 Letter) at 1–2; He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 1.

[18] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 2 (reciting the issuance date, amount, expiry, and CCB's irrevocable undertaking to pay "within five business days after receipt of the beneficiary's first written demand, any amount not exceeding EUR 5,122,607.40"). The Stop-Payment Ruling recites the guarantee number as "AHC02LG*0*000005200," *i.e.*, with one more zero than appears on the face of the Performance Bond, in CCB's notifications to CNBM, and in CNBM's counsel's correspondence. *Compare* He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 1 *with* Ex. A (Sept. 28 Letter), Att. 1 at 3–4 *and* Ex. B (Oct. 1 Letter) at 2. The Debtors understand the discrepancy to be a typographical error in the ruling; there is no dispute that the Stop-Payment Ruling is directed at the Performance Bond.

[19] *Objection and Reservation of Rights of CNBM Research Institute for Advanced Glass Materials Co., Ltd. to Debtors' (I) Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases and (II) Adequate Assurance of Future Performance of Stalking Horse Bidder* [Docket No. 396] at 3; *see also* Ex. A (Sept. 28 Letter), Att. 1 at 2 (CNBM's counsel reciting the same figure).

forth on Exhibit A" to the Cure Objection.[20] Among the six pages of allegedly omitted agreements is a reference to a "SIDE AGREEMENT RELATES TO THE EPC CONTRACTS FOR CONSTRUCTION OF 101.891MW OF SOLAR PLANTS IN POLAND DATED 02/20/2025" among TRE, GPC, CNBM, Spectris Energy sp. z o.o., Monteverdi & Gray Group Limited, and M+G Group Limited.[21] Despite their requests to CNBM, the Debtors have yet to receive the above-referenced "SIDE AGREEMENT" and do not know whether it is the same alleged "Side Contract" upon which the Stop-Payment Ruling rests.[22]

## C. TRE's Demand Under the Performance Bond

14. On September 2, 2026, TRE presented a demand to CCB through its bank, mBank S.A. ("mBank"), by authenticated SWIFT message, for the full €5,122,607.40 under the Performance Bond, certifying that CNBM was in breach of its obligations under the EPC Contract (the "Demand").[23] CCB received the Demand on September 9, 2026 and notified CNBM the same day.[24] After CCB informed TRE that it was rejecting the initial Demand for asserted technical deficiencies, TRE presented a further demand to CCB (through mBank) on September 17, 2026, before the Performance Bond's September 30, 2026 expiry.[25]

[20] Cure Objection at 5.

[21] Cure Objection, Ex. A at 16–17. The description does not match the EPC Contract (142.40718 MW, dated April 21, 2025) or the instrument on which the Stop-Payment Ruling rests (dated August 26, 2025).

[22] The Debtors have no knowledge of *any* executed "side agreements" involving CNBM.

[23] Ex. A (Sept. 28 Letter), Att. 1 at 4 (SWIFT MT799 dated September 8, 2026, forwarding the Demand dated September 2, 2026).

[24] Ex. A (Sept. 28 Letter), Att. 1 at 3 (CCB "Inward Cable Notification" to CNBM dated September 9, 2026); He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 3.

[25] Ex. A (Sept. 28 Letter) at 2–3; Ex. C (Oct. 2 Letter) at 4.

### D. CNBM's September 16 Email and Its *Ex Parte* Application to the Hefei Court

15. On September 16, 2026, at 8:32 p.m. Eastern Time, CNBM's counsel, Sophia Wang of AFS, wrote to Steven Golden of Pachulski Stang Ziehl & Jones LLP, copying numerous attorneys at both firms. Ms. Wang stated that CNBM had been informed of the Demand, called it "premature and unwarranted in light of the ongoing Chapter 11 proceedings," invoked the cure disputes that she said "remain pending before the Bankruptcy Court," and asked that TRE "withdraw or stay its demand for payment under the performance guarantee pending final resolution of all pending matters in the Chapter 11 Cases," requesting a response by the end of the next day.[26] Mr. Golden responded the next morning that the Debtors were reviewing the request and would respond in due course.[27]

16. Ms. Wang's email did not mention that, the day before, CNBM had already applied to the Hefei Court for an order suspending CCB's payment to TRE (the "Application").[28] CNBM did not give TRE or the Debtors notice of the Application, and did not seek—or obtain—relief from the automatic stay before filing it.[29] The Application rested on a purported instrument dated August 26, 2025, that the Stop-Payment Ruling describes as an "Additional Agreement (the 'Side Contract')" among CNBM (as "Contractor"), TRE (as "Project Company"), Spectris Energy sp. z o.o. (as "Subcontractor"), GPC (as "Guarantor"), and Monteverdi & Gray Group Ltd and M+G Group Limited (as "Co-guarantors") (the "Side Contract"), under which TRE and the other parties

---

[26] Ex. A (Sept. 28 Letter), Att. 1 at 1–2.

[27] Ex. A (Sept. 28 Letter), Att. 1 at 1.

[28] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 1 ("After the case was docketed on September 15, 2026, this Court duly formed a collegial panel and conducted a review. On September 15, 2026, [CNBM] applied to this Court, alleging fraud in connection with the letter of guarantee . . . ."); Ex. A (Sept. 28 Letter) at 3–4.

[29] Ex. A (Sept. 28 Letter) at 4; Ex. C (Oct. 2 Letter) at 2. CNBM has never disputed either point. *See* Ex. B (Oct. 1 Letter) (*passim*); Ex. D (CNBM Oct. 2 Response) (*passim*).

purportedly agreed "to waive any and all rights to bring any claims related to the works against the Contractor under the EPC Contract and the Sub-EPC Contract, including, without limitation, claims based on schedule, the Performance Guarantee, the Warranty Guarantee, the Parent Company Guarantee, and the Direct Agreement."[30] The Debtors had never heard of the Side Contract until CCB disclosed it in the Hefei proceeding, and CNBM has never produced it despite repeated requests.[31]

## E. The Stop-Payment Ruling

17. On September 17, 2026, two days after the Application was docketed, the Hefei Court entered the Stop-Payment Ruling.[32] The ruling directs that CCB "shall suspend payment to Timber Renewable Energy sp. z o.o. of EUR 5,122,607.40 under Performance Letter of Guarantee No. AHC02LG0000005200," and provides that it "shall take effect and be enforced immediately."[33] As security for the ruling, CNBM posted a bank deposit of RMB 40,032,664.57 with the Hefei Court.[34]

18. The Hefei Court's reasoning rests entirely on the Side Contract. Reciting Articles 1, 3, and 13 of that instrument, the court found that TRE's Demand "is highly likely to constitute"

---

[30] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 2 (quoting Article 3 of the Side Contract). The ruling also recites that Article 13 of the Side Contract provides that it "shall supersede the EPC Contract, the Sub-EPC Contract, and any other agreement or document signed by the parties." *Id.* The Debtors note that the ruling's own recitals are internally inconsistent: it states that the Sub-EPC Contract between CNBM and Spectris was signed on August 27, 2025, yet also states that the Side Contract, dated August 26, 2025, recites that the Sub-EPC Contract had been signed on August 26, 2025. *Id.* The Debtors have not seen the Side Contract and reserve all rights with respect to its existence, authenticity, validity, and effect.

[31] Ex. A (Sept. 28 Letter) at 4, 6; Ex. C (Oct. 2 Letter) at 2, 5; Rule 2004 Notice, Sched. A, Request No. 3.

[32] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 1, 4–5. A certified English translation of the ruling prepared by a professional Mandarin–English translator is attached to the He Declaration (Exhibit F hereto) together with the Chinese-language original. He Decl. ¶¶ 4–6 & Exs. 1–2. All quotations of the ruling in this Motion are to the certified translation.

[33] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 4.

[34] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 3.

the circumstance described in Article 12(5) of the Supreme People's Court's Several Provisions on the Trial of Disputes Involving Independent Letters of Guarantee (the "Independent Guarantee Provisions"), that is "other circumstances in which the beneficiary abuses its right to demand payment despite knowing that it has no right to demand payment"—and that "the circumstances of this case are urgent" because "[f]ailure to immediately take suspension measures would cause irreparable harm to the legitimate rights and interests of the applicant, CNBM."[35] The court heard only from CNBM; the ruling does not reflect any notice to, or participation by, TRE.[36]

19. By its terms and under the Independent Guarantee Provisions quoted in it, the Stop-Payment Ruling is a provisional preservation measure with two built-in clocks. First, a party may "apply to [the Hefei] Court for reconsideration once within ten days from the date of receipt of this ruling," but "[t]he enforcement of this ruling shall not be suspended during the reconsideration period."[37] Second, under Article 16 of the Independent Guarantee Provisions, "[i]f the applicant fails to lawfully initiate litigation or apply for arbitration over the independent guarantee fraud dispute within 30 days after the suspension ruling is issued, the people's court shall lift the suspension ruling."[38] Thirty days from September 17, 2026, is October 17, 2026. CNBM has not said whether it intends to commence such litigation or arbitration against TRE, a step that would itself be another violation of the automatic stay.[39]

---

[35] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 4. The court was candid that it "conducts only a preliminary examination," that its decision "constitutes only an interim opinion," and that it "does not make a final judicial determination as to whether the relevant demand for payment constitutes fraud." *Id.*

[36] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 1–5 (*passim*).

[37] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 4. It is not clear when and how any reconsideration deadline might apply to the Debtors since the Debtors did not receive any notice of the ruling from CNBM or the Hefei Court but, instead, were provided with it indirectly through CCB after it was ordered not to pay the Debtors.

[38] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 7 (Appendix, Art. 16).

[39] Ex. C (Oct. 2 Letter) at 2; Ex. D (CNBM Oct. 2 Response) (*passim*).

**F. The Debtors' Discovery of the Stay Violation and Their Efforts to Obtain Information from CNBM**

20. The Debtors first learned of the Application and the Stop-Payment Ruling on September 28, 2026, eleven days after the ruling issued, when CCB notified mBank by SWIFT message that it was "prohibited from making any payment or disbursement under the above-mentioned guarantee until further notice from the competent court."[40] TRE has never been served with the Application or the Stop-Payment Ruling; the copy of the ruling the Debtors possess was received by the Debtors by email from CCB on September 28, 2026.[41]

21. That same day, the Debtors sent CNBM, through AFS, a letter (the "September 28 Letter") setting out the basis on which the Application and the Stop-Payment Ruling violate section 362(a), demanding that CNBM produce by October 1, 2026 (a) all documents filed with or received from the Hefei Court, (b) the Side Contract, (c) any other side agreements between CNBM and any Debtor or affiliate, (d) CNBM's communications with CCB concerning the Demand, and (e) any stop-payment application concerning the Whiskey performance guarantee, and demanding that CNBM preserve all related materials.[42] The September 28 Letter expressly reserved the Debtors' right to seek the same documents under Bankruptcy Rule 2004 and to seek relief from this Court on an emergency basis.[43]

---

[40] Ex. A (Sept. 28 Letter) at 2, 4.

[41] Ex. A (Sept. 28 Letter) at 4.

[42] Ex. A (Sept. 28 Letter) at 6–7. On September 25, 2026, Debtor Whiskey Renewable Energy sp. z o.o. submitted a demand for payment to CCB in connection with that certain Performance Guarantee No. AHC02LG000007400, in respect of the amount of 2,816,170.20 Euros. As of the filing of this Motion, the Debtors have not received any information regarding CCB's response to the Whiskey demand or whether CNBM has taken similar actions in violation of the automatic stay to prevent payment.

[43] Ex. A (Sept. 28 Letter) at 7–8.

22. On October 1, 2026, CNBM responded through AFS (the "October 1 Letter"). The October 1 Letter stated that CNBM "takes the allegations in your letter seriously and is making diligent efforts to address the issues you raise," and that CNBM was "diligently gathering the documents as requested."[44] It did not deny that CNBM filed the Application without notice, that CNBM never sought relief from the stay, or that TRE was never served; it did not mention the Side Contract; and it did not say whether CNBM intended to commence additional litigation in China. Instead, it devoted most of its length to CNBM's dissatisfaction with the pace of these cases and the status of the Cure Objection, asserted that CNBM "was compelled to respond immediately, solely in defense against the demand and to prevent irreparable harm," and asked that the production deadline be extended to October 9, 2026 because of "the Mid-Autumn Festival Holiday from September 25 through October 7, 2026 in China."[45]

23. On October 2, 2026, the Debtors replied (the "October 2 Letter"). The October 2 Letter catalogued the facts the October 1 Letter had not denied; explained why necessity, the absence of advance notice of the Demand to CNBM, and the pendency of the Cure Objection are not defenses to a stay violation; and noted that, under the State Council's published 2026 holiday schedule, the Mid-Autumn Festival holiday ran only from September 25 through 27, that September 28 through 30 were ordinary working days, and that the National Day holiday runs from October 1 through 7, such that CNBM's Chinese counsel, which had prepared and filed the Application and obtained the Stop-Payment Ruling within two days in mid-September, had ample opportunity to produce CNBM's own court filings and executed contracts.[46] The Debtors offered

[44] Ex. B (Oct. 1 Letter) at 1–2.

[45] Ex. B (Oct. 1 Letter) at 1–2.

[46] Ex. C (Oct. 2 Letter) at 2–4.

a limited extension to October 9, 2026, on stated terms, including production of CNBM's own Hefei filings and the Side Contract in the original language by noon on October 5, 2026, and agreement that the exchange satisfied the parties' meet-and-confer obligation under Bankruptcy Local Rule 2004-1(c) with respect to a draft Rule 2004 notice annexed to the letter, to be accepted in writing by 5:00 p.m. (prevailing Central Time) that day.[47]

24. CNBM did not accept those terms. Later on October 2, CNBM responded through AFS ("CNBM's October 2 Response"). For the first time, CNBM "unequivocally denie[d] that it has violated the automatic stay under 11 U.S.C. § 362," asserting that "neither CNBM's application to the Hefei Intermediate People's Court . . . nor the resulting Stop-Payment Ruling issued on September 17, 2026 . . . violates the automatic stay under 11 U.S.C. § 362(a)(1) or (a)(3)."[48] CNBM offered no legal or factual basis for that denial. It characterized the Debtors' timeline as unreasonable in light of China's National Day holiday, stated that CNBM "cannot and will not accept the proposed terms," that it "will respond regarding production promptly after conferring with CNBM's personnel upon their return from the National Day Holiday," that it "does not agree that this exchange of correspondence satisfies the parties' obligation to meet and confer under Bankruptcy Local Rule 2004-1(c)," and that the draft Rule 2004 notice "is premature."[49] CNBM's October 2 Response, like the October 1 Letter, does not dispute that CNBM filed the Application without notice to TRE or this Court and without seeking stay relief, does not mention the Side Contract, does not state whether CNBM has served or attempted to serve TRE, and does

[47] Ex. C (Oct. 2 Letter) at 4–6 & Ex. A thereto.

[48] Ex. D (CNBM Oct. 2 Response) at 1.

[49] Ex. D (CNBM Oct. 2 Response) at 2–3.

not state whether CNBM intends to commence litigation or arbitration against TRE in China before the Article 16 window closes.[50]

25. Having been unable to reach agreement on a production schedule, on October 2, 2026, the Debtors filed and served the Rule 2004 Notice, which directs CNBM to produce the documents described in Schedule A thereto, including the Application and all materials filed with the Hefei Court, documents concerning service on TRE, the Side Contract and any other side agreements, CNBM's communications with CCB, documents concerning any stop-payment application directed at the Whiskey performance guarantee (which is similar to the arrangement in TRE), documents concerning any guarantee-fraud or other proceeding CNBM has commenced or contemplates against TRE, the Sub-EPC Contract, and the documents on which CNBM relies for its contention that the Hefei proceeding did not violate the stay, on or before October 16, 2026.[51] The Rule 2004 Notice is without prejudice to, and does not displace, the relief sought by this Motion, which the Debtors expressly reserved the right to pursue "without awaiting the extended deadline."[52]

26. On October 5, 2026, AFS and Debtors' counsel continued efforts to meet and confer and, as a result of such meeting, on October 6, 2026, Debtors' counsel sent AFS a proposed stipulation (the "Stipulation") that memorializes AFS's offer to produce all requested documents by October 9, 2026. As of the filing of this Motion, the Stipulation has not been signed and returned by AFS. The Stipulation concerns the production of documents only; it does not address the

[50] Ex. D (CNBM Oct. 2 Response) (*passim*).

[51] Rule 2004 Notice at 1 & Sched. A, Request Nos. 1–10. The Rule 2004 Notice recites the Debtors' attempt to confer under Bankruptcy Local Rule 2004-1(c) and the Debtors' continued willingness to confer. *Id.* at 2.

[52] Ex. C (Oct. 2 Letter) at 5 (¶ (c)); Rule 2004 Notice at 2.

withdrawal of the Application, the lifting of the Stop-Payment Ruling, or whether CNBM intends to commence litigation or arbitration against TRE before the Article 16 period expires.[53]

27. As of the filing of this Motion, CNBM has not (to the Debtors' knowledge) withdrawn the Application, has not (to the Debtors' knowledge) sought vacatur or lifting of the Stop-Payment Ruling, has not produced the Side Contract or even the Application that CNBM itself filed, has not stated whether it intends to commence litigation or arbitration against TRE in China, and has not stated whether or how it has attempted to serve TRE. The Stop-Payment Ruling continues to freeze €5,122,607.40 of TRE's property.[54]

## BASIS FOR RELIEF

### G. The Automatic Stay Protects TRE and Its Rights Under the Performance Bond

28. Upon the filing of a bankruptcy petition, "an automatic stay operates as a self-executing injunction" that prevents creditors from pursuing collection efforts against, or taking control over, the property of the debtor's estate. *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354–55 (5th Cir. 2008). The purpose of the automatic stay is to provide debtors with a "breathing spell from [their] creditors" and channel competing claims for a debtor's assets into a single forum. *Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984) (citations omitted); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990); *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1409 (5th Cir. 1986), *on reh'g en banc*, 808 F.2d 363 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988).

[53] Ex. E (Stipulation).

[54] *See* Ex. B (Oct. 1 Letter) (passim); Ex. D (CNBM Oct. 2 Response) (passim); Ex. E (Stipulation).

29. Given its fundamental importance, courts broadly construe the automatic stay. *See In re Padilla*, 379 B.R. 643, 662 (Bankr. S.D. Tex. 2007). Among other things, a petition "operates as a stay, applicable to all entities, of—(1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . . [and] (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(1), (3).

30. TRE is the named beneficiary of the Performance Bond. TRE's rights under the Performance Bond, including its right to payment thereunder, are property of TRE's estate under section 541(a)(1) of the Bankruptcy Code, "wherever located and by whomever held," and are subject to this Court's exclusive jurisdiction under 28 U.S.C. § 1334(e)(1). The automatic stay arose as to TRE and its property on the Petition Date and remains in effect; TRE's Chapter 11 Case has not been dismissed, and no order of this Court has modified or terminated the stay as to TRE or its property other than approving stipulated relief from stay for a limited purpose with respect to a financial institution.[55]

## H. <u>CNBM's Application and the Stop-Payment Ruling Violate Section 362(a)(1) and (a)(3)</u>

31. CNBM's conduct falls squarely within Bankruptcy Code section 362(a)(3). As the Supreme Court has explained, that provision "prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed." *City of Chicago v. Fulton*, 592 U.S. 154, 158 (2021). Applying to a foreign court for, and obtaining, a judicial order

[55] Ex. A (Sept. 28 Letter) at 3; *see* 11 U.S.C. § 362(c); *see* Docket Nos. 723, 725.

that freezes the estate's right to receive payment of a €5,122,607.40 receivable and that directs the obligor not to pay the debtor is precisely such an affirmative act. The Stop-Payment Ruling exists for no purpose other than to prevent TRE from receiving estate property, and CNBM procured it.

32. CNBM's conduct also violates section 362(a)(1). The Application commenced a judicial proceeding in which TRE is a named respondent.[56] The relief CNBM sought and obtained rests entirely on CNBM's assertion that a prepetition instrument, the purported Side Contract dated August 26, 2025, waived TRE's rights in respect of the Performance Bond.[57] CNBM has thus sought to enforce alleged prepetition contractual rights against a debtor and its property in a foreign forum, outside this Court and without its authorization. Such a proceeding seeks, in substance, to protect CNBM's contingent prepetition reimbursement claim against TRE, a claim that the Bankruptcy Code channels into the chapter 11 process. 11 U.S.C. § 362(a)(1).

33. That CNBM acted in China does not change the analysis. The automatic stay applies to CNBM regardless of where its acts were undertaken, including abroad. *See Milbank v. Philips Lighting Elecs. N. Am. (In re Elcoteq, Inc.)*, 521 B.R. 189, 198–99 (Bankr. N.D. Tex. 2014) (citing *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996), and *Sinatra v. Gucci (In re Gucci)*, 309 B.R. 679, 683–84 (S.D.N.Y. 2004)); *Official Comm. of Unsecured Creditors v. Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c))*, 575 B.R. 229, 250-51 (Bankr. S.D.N.Y. 2017); *In re Soundview Elite, Ltd.*, 503 B.R. 571, 584 (Bankr. S.D.N.Y. 2014). Section 541(a) defines the estate to include the debtor's property "wherever located and by whomever held." CNBM, a Committee member that has appeared in these cases through United States counsel, is subject to this Court's jurisdiction and to sanction for violating the stay. *See Hong Kong*

---

[56] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 1 (identifying "Respondent: Timber Renewable Energy sp. z o.o.").

[57] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 2, 4.

*& Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 997 (9th Cir. 1998) (creditor that participated in the bankruptcy may pursue foreign proceedings only "at the risk of bankruptcy court sanctions in the United States"). CNBM cannot appear and participate in these cases, including by serving as a fiduciary on the Committee, while simultaneously proceeding *ex parte* in the Hefei Court to assert control over estate property.

**I. <u>CNBM's Violation Was Willful</u>**

34. The Fifth Circuit applies a three-part test to determine whether a stay violation is willful: (a) the creditor must have known of the existence of the stay; (b) the creditor's acts must have been intentional; and (c) the creditor's acts must have violated the stay. *Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008). "Specific intent to violate the stay is not required. Only acts which violate the stay need be intentionally committed." *In re MD Promenade, Inc.*, No. 08-34113-SGJ-7, 2009 WL 80203, at *13 (Bankr. N.D. Tex. Jan. 8, 2009) (quoting *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 125 (Bankr. N.D. Tex. 2003)). A good-faith belief in the party's own entitlement is irrelevant; a creditor with knowledge of the petition must seek relief from the stay before acting against property to which the estate has even an arguable claim. *See Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303–04 (5th Cir. 2005).

35. Each element is satisfied here. *First*, CNBM's knowledge of the stay is beyond dispute: CNBM was appointed to the Committee on June 17, 2026; it appeared through AFS on July 2, 2026; it filed the Cure Objection on July 24, 2026; and its counsel's September 16 email, sent the day *after* CNBM filed the Application, invoked "the ongoing Chapter 11 proceedings" and the matters "pending before the Bankruptcy Court" as reasons TRE should stand down.[58] *Second*, CNBM's acts were deliberate: it retained Chinese counsel, prepared and filed the

[58] Ex. A (Sept. 28 Letter), Att. 1 at 1–2; Docket Nos. 107, 206, 396.

Application, posted RMB 40,032,664.57 in security, and obtained the Stop-Payment Ruling within two days, conduct CNBM itself describes as "compelled . . . to respond immediately."[59] *Third*, those acts violated the stay for the reasons stated above.

36. The result is no different under the objective standard the Supreme Court articulated for civil contempt in the discharge-injunction context, under which a court may hold a creditor in contempt where there is "no fair ground of doubt" as to whether the order barred the creditor's conduct, that is, where there is "no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart v. Lorenzen*, 587 U.S. 554, 139 S. Ct. 1795, 1799, 1801–02 (2019). There is no objectively reasonable basis on which a creditor with actual knowledge of a debtor's chapter 11 case could conclude that it may, without seeking relief from the stay, commence an *ex parte* proceeding against the debtor in a foreign court to freeze the debtor's demand for payment while simultaneously writing to the debtor's counsel that the dispute belongs "before the Bankruptcy Court."

## J. <u>CNBM's Stated Justifications Do Not Excuse the Violation</u>

37. CNBM's correspondence offers three justifications. None is a defense.

38. *"Necessity."* CNBM asserts that, "[f]aced with that improper demand and its imminent deadline, CNBM was compelled to respond immediately, solely in defense against the demand and to prevent irreparable harm."[60] The Bankruptcy Code prescribes the means by which a creditor who believes estate property is being misapplied may protect itself: a motion for relief from the automatic stay under section 362(d), which this Court may hear on an expedited basis or, where warranted, *ex parte* under section 362(f). CNBM, through AFS, was in direct contact with

---

[59] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 1, 3; Ex. B (Oct. 1 Letter) at 2.

[60] Ex. B (Oct. 1 Letter) at 2.

Debtors' counsel on September 16 and 17, 2026, and could have sought that relief from this Court at any time. It chose instead to proceed in a foreign court without notice to the debtor, while simultaneously inviting the Debtors to address the matter in this Court.[61] That is not "defense"; it is the self-help section 362(a) forbids. *See Chesnut*, 422 F.3d at 303–04. Nor was the asserted "irreparable harm" anything more than CNBM's own contingent reimbursement exposure to CCB under a facility CNBM itself procured, a prepetition contingent claim of exactly the kind the chapter 11 process exists to administer. And a party that could post RMB 40,032,664.57 in security within days was not without means to seek relief in the proper forum.[62]

39. *"Without notice to CNBM."* CNBM complains that TRE, "without notice to CNBM or its bankruptcy counsel, issued a demand directly to [CCB]" and afforded CCB "only five business days to pay."[63] The Performance Bond is an irrevocable demand guarantee, presented to the guarantor through the beneficiary's bank by authenticated SWIFT message; nothing in the instrument requires the beneficiary to give the applicant prior notice of a demand, and the obligation to inform the applicant rests with the guarantor, which CCB discharged the same day it received the Demand.[64] The five-business-day payment period is CCB's own irrevocable undertaking in the instrument CNBM procured, not any deadline that the Debtors imposed. In any event, how TRE exercised its own contractual rights has no bearing on whether CNBM was free to seize control of estate property without this Court's leave.

---

[61] Ex. C (Oct. 2 Letter) at 2–3.

[62] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 3; Ex. C (Oct. 2 Letter) at 3.

[63] Ex. B (Oct. 1 Letter) at 2.

[64] Ex. A (Sept. 28 Letter), Att. 1 at 3–4; He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 2–3; Ex. C (Oct. 2 Letter) at 3.

40. *The Cure Objection and the sale.* Much of CNBM's correspondence is devoted to its dissatisfaction with the pace of these cases, the status of the Cure Objection, and the timing of the sale closings.[65] None of that bears on the automatic stay. If CNBM believed it was entitled to information or relief concerning the Cure Objection or the treatment of its contracts, the remedy was a request to the Debtors or a motion to this Court. Indeed, Ms. Wang's September 16 email argued that the Demand should await resolution of those very matters "before the Bankruptcy Court."[66] CNBM cannot invoke this Court as the proper forum in correspondence with the Debtors while, on the previous day and without disclosure, having commenced proceedings against the Debtor in another forum.

41. Finally, CNBM's latest position, that it "unequivocally denies" a stay violation, is a conclusion, not an argument. CNBM's October 2 Response identifies no provision of the Bankruptcy Code, no order of this Court, and no authority under which a creditor may obtain an *ex parte* foreign order freezing a debtor's receivable without first obtaining relief from the stay. Nor does it dispute any of the operative facts set out above.[67]

## K. CNBM Should Be Ordered to Show Cause Why It Should Not Be Held in Contempt, and Coercive and Compensatory Sanctions Should Be Imposed

42. This Court has authority to fashion appropriate remedies for violations of the automatic stay. *See* 11 U.S.C. § 105(a); *see also In re Noram Res., Inc.*, No. 08-38222, 2015 WL 5965654, at *5 (Bankr. S.D. Tex. Oct. 9, 2015) ("[T]he Court may invoke its civil contempt powers under § 105(a) to remedy violations of the automatic stay."). The Fifth Circuit has confirmed that

[65] Ex. B (Oct. 1 Letter) at 1–2.

[66] Ex. A (Sept. 28 Letter), Att. 1 at 2.

[67] Ex. D (CNBM Oct. 2 Response) at 1–3.

a bankruptcy court may hold a party in civil contempt and may award compensatory damages, including attorneys' fees, as well as coercive sanctions designed to compel compliance. *See Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 612–13 (5th Cir. 1997).

43. CNBM has denied liability for its stay violation in conclusory terms, has not yet stated its intentions with respect to further action in the Hefei Court, and left the Stop-Payment Ruling in place. Each day that the ruling remains in effect, CNBM continues to exercise control over estate property in violation of section 362(a)(3).

44. CNBM's conduct also bears directly on its fitness to serve as a fiduciary in these Chapter 11 Cases. A member of an official committee owes fiduciary duties to the creditors it represents, and section 1102(a)(4) of the Bankruptcy Code authorizes the Court to order the U.S. Trustee to change the membership of a committee "if the court determines that the change is necessary to ensure adequate representation of creditors." 11 U.S.C. § 1102(a)(4). A creditor that, while serving on the Committee, pursued *ex parte* relief in a foreign court to seize control of estate property cannot adequately represent those creditors, and should not be permitted to carry that conflict onto the Liquidation Trust Board that will administer the estates' remaining assets after the Effective Date for the benefit of unsecured creditors.[68]

45. Accordingly, the Debtors request (a) entry of the Order directing CNBM to appear at the Show Cause Hearing and show cause why it should not be held in civil contempt for violating the automatic stay, and (b) following the Show Cause Hearing, entry of an order (i) finding that CNBM willfully violated section 362(a)(1) and (a)(3) of the Bankruptcy Code; (ii) directing

[68] The Liquidation Trust Agreement vests the selection of the two Committee Designees in the Committee. Amended Plan Supplement [Docket No. 659], Ex. A (Liquidation Trust Agreement) § 5.1 (at 21 of 116). The Debtors do not ask the Court to select the Committee Designees; they ask only that CNBM be declared ineligible to serve, leaving the Committee to designate a replacement in accordance with the Liquidation Trust Agreement.

CNBM, within three (3) business days of entry of this Court's order, (A) to file with the Hefei Court a withdrawal of the Application and a request that the Stop-Payment Ruling be lifted, and to serve copies of those filings on Debtors' counsel; (B) to notify CCB in writing, with a copy to Debtors' counsel, that CNBM consents to CCB's payment of TRE's Demand under the Performance Bond; and (C) not to withdraw, transfer, encumber, or otherwise dissipate the RMB 40,032,664.57 bank deposit posted as security with the Hefei Court and, upon its release by the Hefei Court, to deposit the released funds into the registry of this Court pursuant to Bankruptcy Rule 7067, to be held pending this Court's determination of the Debtors' compensatory sanctions; (iii) enjoining CNBM from commencing or continuing any proceeding against any Debtor or its property outside this Court, including any guarantee-fraud litigation or arbitration under Article 16 of the Independent Guarantee Provisions; (iv) imposing coercive sanctions against CNBM in an amount to be determined by the Court, for each day after the deadline fixed by the Court should CNBM fail to complete the steps described in clauses (ii)(A) and (ii)(B), above; (v) awarding the Debtors compensatory sanctions in the amount of the damages they have incurred, including professional fees and expenses, in an amount to be established; (vi) declaring that CNBM is ineligible to serve as a member of the Committee or of the Liquidation Trust Board; and (vii) disallowing CNBM's claims against the Debtors.

**<u>EMERGENCY CONSIDERATION</u>**

46. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i), and a Show Cause Hearing on or before October 13, 2026. CNBM's violation is ongoing: the Stop-Payment Ruling continues to freeze €5,122,607.40 of TRE's property, and CCB has confirmed that it will not pay TRE "until further notice from the

competent court."[69] The thirty-day period under Article 16 of the Independent Guarantee Provisions within which CNBM must commence litigation or arbitration against TRE to keep the Stop-Payment Ruling in place expires on or about October 17, 2026, and CNBM has not stated whether it intends to take that step in further violation of the automatic stay.[70] Absent prompt relief, the Debtors face the prospect of a second, independent stay violation in the form of merits litigation against a debtor in a foreign court, with the attendant cost and risk of inconsistent determinations concerning estate property. Prompt relief is also necessary because the Performance Bond expired by its terms on September 30, 2026; TRE's complying demands were presented before that date, and any delay in resolving the status of CCB's payment obligation prejudices the estate's ability to realize on the instrument.[71] Finally, the Debtors and the estates continue to incur professional fees responding to CNBM's conduct.

## RESERVATION OF RIGHTS

47. Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party-in-interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against CNBM or any creditor or third party; (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code; or (e) an admission of any fact or of the existence, validity, authenticity, enforceability, or effect of any instrument described in the Stop-Payment Ruling, including the

[69] Ex. A (Sept. 28 Letter) at 4.
[70] He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 7; Ex. D (CNBM Oct. 2 Response) at 2–3.
[71] Ex. C (Oct. 2 Letter) at 4; He Decl. Ex. 2 (Stop-Payment Ruling (Certified Transl.)) at 2.

purported Side Contract. The Debtors reserve all rights with respect to their or any successor-in-interest's claims or causes of action against CNBM or its affiliates, and to CNBM's asserted claims in these Chapter 11 Cases, against any affiliate or successor of the Debtors, or otherwise, including the right to seek disallowance, reduction, subordination, or setoff, and all rights, claims, remedies, and defenses of TRE and the other Debtors under the EPC Contract, the Performance Bond, any parent company guarantee, any direct agreement, the Bankruptcy Code, and applicable law, and the right to supplement this Motion, including on the basis of any documents produced in response to the Rule 2004 Notice.

## **NOTICE**

48. Notice of this Motion and the hearing hereon will be provided to: (a) CNBM, through its counsel, AFS (Attn: Aram Ordubegian, Christopher K.S. Wong, and Sophia R. Wang), by email and overnight courier, and at its registered office at No. 1047 Tushan Road, Bengbu, Anhui, People's Republic of China; (b) the U.S. Trustee; (c) counsel to the Committee; (d) counsel to the DIP Lenders and the Buyer; and (e) the parties identified on the Debtors' Master Service List [Docket No. 767], in accordance with the Bankruptcy Rules and the Bankruptcy Local Rules. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that this Court enter appropriate orders granting the relief requested herein and granting such other and further relief as is just and proper under the circumstances.

Dated: October 7, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Benjamin L. Wallen*
Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Steven W. Golden (SBT 24099681)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
mwarner@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
Malhar S. Pagay (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on October 7, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Benjamin L. Wallen*
Benjamin L. Wallen

# EXHIBIT A

PACHULSKI STANG ZIEHL & JONES

Malhar S. Pagay

310.772.2335
mpagay@pszjlaw.com

**LOS ANGELES**
10100 SANTA MONICA BLVD. 13TH FL.
LOS ANGELES, CALIFORNIA 90067-4003
310.277.6910

**NEW YORK**
1700 BROADWAY, 36TH FL.
NEW YORK, NEW YORK 10019
212.561.7700

**WILMINGTON**
919 NORTH MARKET STREET, 17TH FLOOR,
P.O. BOX 8705
WILMINGTON, DELAWARE 19899-8705
302.652.4100

**HOUSTON**
700 LOUISIANA STREET, STE. 4500
HOUSTON, TEXAS 77002
713.691.9385

**SAN FRANCISCO**
ONE SANSOME STREET, 34TH FL. STE. 3430
SAN FRANCISCO, CALIFORNIA 94104
415.263.7000

September 28, 2026

**VIA EMAIL**

Aram Ordubegian, Esq.
Christopher K.S. Wong, Esq.
Sophia R. Wang, Esq.
ArentFox Schiff LLP
555 South Flower Street, 43rd Floor
Los Angeles, CA 90071
aram.ordubegian@afslaw.com
christopher.wong@afslaw.com
sophia.wang@afslaw.com

**Re: *In re GoldenPeaks Poland Holding Limited, et al.*, Case No. 26-90564 (ARP) (Bankr. S.D. Tex.) (Jointly Administered)**
**CNBM Research Institute for Advanced Glass Materials Group Co., Ltd. – Application for Stop-Payment of Performance Guarantee No. AHC02LG000005200, Intermediate People's Court of Hefei, Anhui Province, Case No. (2026) Wan 01 Xing Bao No. 1-1**
**Violation of the Automatic Stay (11 U.S.C. § 362(a)); Demand for Production of Documents**

Counsel:

As you are aware, we are counsel to Timber Renewable Energy sp. z o.o. ("TRE") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-referenced jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

Over the past few weeks, TRE has been engaged in efforts to demand payment ("Demand") on account of Performance Guarantee No. AHC02LG000005200, dated August 22, 2025, issued by China

Construction Bank Corporation, Anhui Branch ("CCB"), in favor of TRE, in the amount of EUR 5,122,607.40 (the "Performance Bond") in connection with that certain EPC Contract for the Design, Supply, Construction and Commissioning of 142.40718 MW Solar Farms, dated April 21, 2025 (as such contract may have been amended through variation, the "EPC Contract"), by and among TRE, Goldenpeaks Capital Holding Ltd., and your client, CNBM Research Institute for Advanced Glass Materials Group Co., Ltd. ("CNBM"). On September 16, 2026, Ms. Wang wrote to Steven Golden of our office indicating CNBM's awareness of the Demand and requesting a response and discussion. Mr. Golden responded the following day that we were reviewing CNBM's assertions and would respond in due course. A copy of the email exchange is annexed hereto as Attachment 1.

This morning, we were surprised to learn through communications received from CCB that, notwithstanding its awareness of TRE's pending chapter 11 proceedings in the Bankruptcy Court and without the knowledge and participation of TRE, CNBM had filed an application (the "Application") in the Intermediate People's Court of Hefei, Anhui Province, People's Republic of China (the "Hefei Court"), and obtained a ruling of that court dated September 17, 2026 (the "Stop-Payment Ruling"), which suspends payment to TRE under the Performance Bond as requested by TRE's Demand. A copy of the Stop-Payment Ruling and informal translation thereof is annexed hereto as Attachment 2.

For the reasons set out below, CNBM's Application and the relief it obtained violate the automatic stay of section 362(a) of title 11 of the United States Code (the "Bankruptcy Code").

**I. Background**

The Debtors, including TRE, commenced these chapter 11 cases on May 29, 2026 (the "Petition Date").

Following CNBM's failure to procure an extension or replacement of the Performance Bond as required by section 4.2 of the EPC Contract, TRE presented a Demand for payment under the Performance Bond through mBank S.A., which, according to the Stop-Payment Ruling, CCB received on September 9, 2026, and thereupon communicated to CNBM. (TRE presented a further

PACHULSKI STANG ZIEHL & JONES



demand dated September 17, 2026, prior to the stated expiry of the Performance Bond).

As noted above, on September 16, 2026, at 8:34 p.m. Eastern Time, Ms. Wang wrote to Mr. Golden, copying numerous attorneys at your firm, stating that CNBM had been informed of TRE's Demand and asserting that the demand was "premature and unwarranted in light of the ongoing Chapter 11 proceedings." That email invoked the cure disputes that Ms. Wang stated "remain pending before the Bankruptcy Court," and requested that TRE "withdraw or stay its demand for payment under the performance guarantee pending final resolution of all pending matters in the Chapter 11 Cases," with a response requested by the end of the following day. Mr. Golden replied on September 17, 2026 that the Debtors were reviewing the request and would respond in due course. Ms. Wang's email did not disclose that CNBM had, on the previous day, September 15, 2026, already applied to the Hefei Court for an order suspending payment under the Performance Guarantee, nor did it refer to any "Side Contract." The Debtors thus were invited to address the matter through the Bankruptcy Court while CNBM was simultaneously pursuing, without notice, ex parte relief against TRE and its property in a foreign court.

## II. CNBM's Application to the Hefei Court Violates the Automatic Stay

Upon the filing of TRE's petition, the automatic stay of section 362(a) of the Bankruptcy Code arose by operation of law. As of the date of this correspondence, TRE remains a debtor and debtor in possession; its chapter 11 case has not been dismissed, and no order of the Bankruptcy Court has modified or terminated the automatic stay as to TRE or its property, other than approving stipulated relief from stay for a limited purpose with respect to a financial institution.

TRE is the named beneficiary of the Performance Bond in support of CNBM's obligations under the EPC Contract. TRE's rights under the Performance Bond, including its right to payment thereunder, are property of TRE's bankruptcy estate under section 541(a)(1) of the Bankruptcy Code, "wherever located and by whomever held," and are subject to the exclusive jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334(e)(1).

CNBM had actual knowledge of these cases and of the automatic stay. CNBM has appeared in these cases through your firm and has actively participated in them, including as a member of the Official Committee of Unsecured Creditors, thereby submitting itself to the jurisdiction of the Bankruptcy Court.

On September 15, 2026, more than three and one-half months after the Petition Date, CNBM commenced proceedings in the Hefei Court against TRE for an order suspending payment to TRE of the amount demanded under the Performance Bond. TRE did not receive any notice of these proceedings and CNBM commenced postpetition litigation against TRE without seeking relief from the automatic stay. On September 17, 2026, the Hefei Court, having heard only CNBM, entered the Stop-Payment Ruling directing CCB to suspend payment to TRE of EUR 5,122,607.40 under the Performance Bond, effective immediately. The Debtors first learned of the Stop-Payment Ruling on September 28, 2026, when CCB notified mBank S.A. by SWIFT message that, pursuant to the Stop-Payment Ruling, it is "prohibited from making any payment or disbursement under the above-mentioned guarantee until further notice from the competent court." As of the date of this letter, neither TRE nor the Debtors have been served by CNBM with CNBM's Application or the Stop-Payment Ruling.

CNBM's conduct falls squarely within section 362(a)(3) of the Bankruptcy Code, which stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." As the Supreme Court has explained, section 362(a)(3) "prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed." *City of Chicago v. Fulton*, 592 U.S. 154, 158 (2021). Obtaining a judicial order that freezes the estate's right to receive payment of a EUR 5,122,607.40 receivable is precisely such an affirmative act. CNBM's application further constitutes the commencement of a judicial proceeding against the debtor within the meaning of section 362(a)(1). The Stop-Payment Ruling, by its own terms, rests on CNBM's assertion that a prepetition instrument dated August 26, 2025, described in the ruling as a "Side Contract," the existence of which we were unaware, purportedly waived TRE's rights in respect of the Performance Bond; CNBM has thus sought to enforce alleged prepetition contractual rights against a

debtor and its property in a foreign forum, outside the Bankruptcy Court and without its authorization.

The automatic stay applies to CNBM regardless of where its acts were undertaken, including abroad. *See Milbank v. Philips Lighting Elecs. N. Am. (In re Elcoteq, Inc.)*, 521 B.R. 189, 198-99 (N.D. Tex. 2014)(citing *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D. N.Y. 1996); *Sinatra v. Gucci (In re Gucci)*, 309 B.R. 679, 683-84 (S.D. N.Y. 2004)); *Official Comm. of Unsecured Creditors v. Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c))*, 575 B.R. 229, 280–81 (Bankr. S.D.N.Y. 2017); *In re Soundview Elite, Ltd.*, 503 B.R. 571, 584 (Bankr. S.D.N.Y. 2014). Section 541(a) of the Bankruptcy Code defines the estate to include the debtor's property "wherever located and by whomever held." CNBM, having appeared in these cases and asserted claims against the Debtors, is subject to the Bankruptcy Court's jurisdiction and to sanction for violating its stay. *See Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 997 (9th Cir. 1998) (creditor that participated in the bankruptcy may pursue foreign proceedings only "at the risk of bankruptcy court sanctions in the United States"). CNBM cannot appear and participate in these cases while simultaneously proceeding in the Hefei Court to assert control over estate property.

A violation of the stay is willful where the party "knew of the automatic stay and . . . the [party's] actions which violated the stay were intentional"; a good-faith belief in the party's own entitlement is irrelevant. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005)(citations and quotations omitted)(creditor with knowledge of the petition must seek relief from the stay before acting against property to which the estate has even an arguable claim). CNBM's knowledge of the stay is beyond dispute. The Bankruptcy Court has authority under section 105(a) of the Bankruptcy Code to hold a party in civil contempt for violating court injunctions and to award compensatory damages, including attorneys' fees, and coercive sanctions until the violation is cured. *See Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 612–13 (5th Cir. 1997).

**III. Production of Documents**

The Debtors require additional information regarding CNBM's actions taken without the Debtors' knowledge and in willful violation of the stay:

1. Production of Documents. No later than 5:00 p.m. (prevailing Central Time) on Thursday, October 1, 2026, produce to the undersigned complete copies of the following, together with English translations where the originals are in Chinese:

   (a) all documents filed with, submitted to, or received from the Hefei Court in or in connection with Case No. (2026) Wan 01 Xing Bao No. 1-1, including CNBM's Application, all evidence and exhibits submitted in support thereof, all documents relating to the security provided by CNBM, the Stop-Payment Ruling and any other rulings, notices, or orders of the Hefei Court, and all correspondence between CNBM (or its counsel) and the Hefei Court;

   (b) the instrument dated August 26, 2025 described in the Stop-Payment Ruling as the "Side Contract" among CNBM, TRE, Spectris Energy sp. z o.o., GoldenPeaks Capital Holding Ltd., Monteverdi & Gray Group Ltd and M+G Group Limited, in fully executed form, together with all schedules, annexes, amendments, supplements, and side letters thereto, and all drafts and correspondence relating to its negotiation and execution;

   (c) any other side letter, side agreement, side contract, or similar instrument between or among CNBM (or any affiliate of CNBM, including CNBM Bengbu Design & Research Institute for Glass Industry Co., Ltd. and Triumph Science & Technology Group Co Ltd) and TRE, Whiskey, GoldenPeaks Capital Holding Ltd., Spectris Energy sp. z o.o.,

Monteverdi & Gray Group Ltd, M+G Group Limited, or any other Debtor or affiliate of a Debtor, in each case all final versions in fully executed form and together with all schedules, annexes, amendments, and supplements thereto, and all drafts and correspondence relating to their negotiation and execution;

(d) all communications between CNBM (or its counsel or affiliates) and CCB, or any other bank, concerning TRE's or Whiskey's demands under the Performance Guarantee or Performance Guarantee No. AHC02LG000007400, including any notice given by CCB to CNBM of any demand and any instructions given by CNBM to CCB; and

(e) all documents concerning any application, filed or contemplated, for stop-payment or similar relief in respect of Performance Guarantee No. AHC02LG000007400 or any other undertaking issued in favor of any Debtor.

2. Preservation. CNBM should preserve all documents, communications, and electronically stored information relating to the matters described in this letter, including the categories identified in paragraph 1.

These demands are made without prejudice to, and the Debtors expressly reserve, their right to seek the same or additional documents and testimony pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Rules 7026 through 7037 of the Federal Rules of Bankruptcy Procedure, or otherwise.

## IV. Reservation of Rights

The Debtors reserve all rights with respect to CNBM's actions as described above, including seeking appropriate relief from the Bankruptcy Court, on an emergency basis if necessary, including an order (i) declaring that CNBM's application and the Stop-Payment Ruling were obtained in violation of the automatic stay; (ii) directing

CNBM to withdraw its application and procure the vacatur of the Stop-Payment Ruling; (iii) enjoining CNBM from commencing or continuing any proceeding against TRE, any other Debtor or their property outside the Bankruptcy Court; and (iv) awarding damages, attorneys' fees, and such other sanctions as the Bankruptcy Court deems appropriate under sections 105(a) and 362 of the Bankruptcy Code. The Debtors further reserve all rights with respect to CNBM's asserted claims in these cases, including the right to seek disallowance, reduction, subordination, or setoff, and all rights, claims, remedies, and defenses of TRE and the other Debtors under the EPC Contract, the Performance Guarantee, any parent company guarantee, any direct agreement, the Bankruptcy Code, and applicable law, all of which are expressly reserved.

Nothing in this letter is intended to be, or shall be construed as, an admission of any fact or of the existence, validity, authenticity, enforceability, or effect of any instrument described in the Stop-Payment Ruling, including the purported "Side Contract," or a waiver of any right, claim, remedy, or defense of TRE or any other Debtor, at law, in equity, under any agreement, or under the Bankruptcy Code and the orders of the Bankruptcy Court.

Very truly yours,

Malhar S. Pagay

cc: (via email)
Richard M. Pachulski, Esq.
Debra I. Grassgreen, Esq.
Steven W. Golden, Esq.
Benjamin L. Wallen, Esq.
James E. Britton, Esq. (ArentFox Schiff LLP)
Julia Zhu-Morelli, Esq. (ArentFox Schiff LLP)

# ATTACHMENT 1

**Malhar S. Pagay**

**From:** Steven W. Golden
**Sent:** Thursday, September 17, 2026 4:58 AM
**To:** Sophia R. Wang
**Cc:** Ordubegian, Aram; Wong, Christopher K.S.; Zhu-Morelli, Julia; Britton, James E.; Benjamin L. Wallen; Michael D. Warner; Maxim Litvak; Richard Pachulski; Debra Grassgreen; Malhar S. Pagay
**Subject:** RE: GoldenPeaks - Timber Demand

**Follow Up Flag:** Flag for follow up
**Flag Status:** Flagged

Sophia:

We are reviewing and will respond in due course. Copying in my partner, Malhar Pagay, as well.

--Steve

**Steven W. Golden**
Pachulski Stang Ziehl & Jones LLP
Partner
Tel: 212.561.7715 (NY) | 302.778.6406 (DE) | Mobile: 301.706.7520
sgolden@pszjlaw.com

PSZJ

Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**From:** Sophia R. Wang <Sophia.Wang@afslaw.com>
**Sent:** Wednesday, September 16, 2026 8:32 PM
**To:** Steven W. Golden <sgolden@pszjlaw.com>
**Cc:** Ordubegian, Aram <aram.ordubegian@afslaw.com>; Wong, Christopher K.S. <christopher.wong@afslaw.com>; Zhu-Morelli, Julia <Julia.Zhu-Morelli@afslaw.com>; Britton, James E. <james.britton@afslaw.com>; Benjamin L. Wallen <bwallen@pszjlaw.com>; Michael D. Warner <mwarner@pszjlaw.com>; Maxim Litvak <mlitvak@pszjlaw.com>; Richard Pachulski <rpachulski@pszjlaw.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>
**Subject:** GoldenPeaks - Timber Demand

Dear Steven,

Our client, CNBM informed us that it has received the attached demand for payment under a performance guarantee. Timber Renewable Energy Sp. z o.o. acting through mBank S.A. (Warsaw, Poland), submitted a demand to China Construction Bank Corporation ("CCB"), Bengbu Branch for

payment of EUR 5,122,607.40 under Performance Guarantee No. AHC02LG000005200, dated August 22, 2025, on the basis that CNBM is in breach of its obligations under the underlying contract. A copy of the bank notification and demand is attached for your reference.

We believe this demand is premature and unwarranted in light of the ongoing Chapter 11 proceedings and several unresolved issues directly affecting Timber and CNBM:

1. **Unresolved Designation and Cure Disputes.** Brookfield has not yet determined whether Timber will be designated as an "Acquired Company" under the Confirmation Order (Dkt. 720), or alternatively, whether it will assume Timber's contracts with CNBM. Please advise whether Brookfield has made such a determination. CNBM timely filed its Cure Objection (Dkt. 396), asserting that the actual cure amounts owed to CNBM are no less than $49,769,453.21. These cure disputes remain pending before the Bankruptcy Court and must be resolved as a statutory prerequisite to any assumption and assignment of the Timber-CNBM contracts under Section 365 of the Bankruptcy Code. Until these threshold issues are resolved, any demand for payment under the guarantee is premature.
2. **Unspecified Breach.** The demand fails to identify the specific breach of contract underlying Timber's claim. A demand of this magnitude, without any articulation of the alleged breach, is insufficient to justify payment.

In light of these unresolved issues, Timber's demand is premature, unreasonable, and inconsistent with good faith. We request that Timber withdraw or stay its demand for payment under the performance guarantee pending final resolution of all pending matters in the Chapter 11 Cases, including Brookfield's designation of Timber, the assumption and assignment of the Timber-CNBM contracts, and the adjudication of the cure amount disputes.

Please respond no later than the end of the day tomorrow, September 17, 2026. If you would like to discuss, please let us know your availability tomorrow (9/17) or this Friday (9/18). Thank you.

Regards,

ArentFox Schiff

**Sophia Wang**
ASSOCIATE | **ARENTFOX SCHIFF LLP**
Sophia.Wang@afslaw.com | **DIRECT** 213.443.7577
Website | LinkedIn | Subscribe
555 S Flower Street, 43rd Floor, Los Angeles, CA 90071

---

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

# 国外银行来电通知书

## INWARD CABLE NOTIFICATION

致To: CNBM Research Institute for Advanced Glass Materials Group Co., Ltd
中建材玻璃新材料研究院集团有限公司

收到报文日期Date: 2026年09月09日

业务种类 Deal Type: 备用信用证保函业务

业务编号Deal No. AHC02LG000005200

兹通知贵公司，我行收到关于上述业务来电一份，现将副本随附通知。请于三个工作日内通知我行答复意见。

We are advising you that we have received the enclosed cable under the above-mentioned transaction, copy of which is for your confirmation. Please process for reply within three working days.

备注Remarks:

3

回执意见:

CHINA CONSTRUCTION BANK CORPORATION
BENGBU BRANCH
(1) ORIGINAL 正本
Sign: 王高

公司盖章
Authorized Signature(s)

显示 INCOMING MESSAGE内容:2

102002BN5178892155753 3284

CS 扫描全能王
3亿人都在用的扫描App

MESSAGE TYPE:MT799
SENDER:BREXPLPWXXX
RECEIVER:PCBCCNBJAHX

2026-09-08
:20:TRANSACTION REFERENCE NUMBER
DFH256A/26
:21:RELATED REFERENCE
AHC02LG000005200
:79:NARRATIVE
AT OUR CLIENT'S REQUEST: TIMBER RENEWABLE ENERGY
SP. Z O.O. /BENEFICIARY/, WE FORWARD THE DEMAND
DATED 02.09.2026 UNDER PERFORMANCE GUARANTEE NO.
AHC02LG000005200 DATED 22.08.2025.
WE CONFIRM THAT SIGNATURE ON THE DEMAND HAS BEEN
PLACED BY PERSON AUTHORISED TO REPRESENT THE
BENEFICIARY - MR. PEDRO ANDRE MARQUES DA SILVA.
QUOTE
DEMAND
TO: CHINA CONSTRUCTION BANK CORPORATION ANHUI
BRANCH, ADDRESSED AT
NO. 2358 YUNGU ROAD HEFEI, ANHUI, CHINA P.R.C
230001
DATE: 2 SEPTEMBER 2026
DEAR SIRS
PERFORMANCE GUARANTEE NO. AHC02LG000005200 DATED
22 AUGUST 2025 ISSUED IN
FAVOUR OF TIMBER RENEWABLE ENERGY SP. Z O.O. (THE
/GUARANTEE/)
WE REFER TO THE GUARANTEE. TERMS DEFINED IN THE
GUARANTEE HAVE THE SAME
MEANING WHEN USED IN THIS DEMAND.
1. WE CERTIFY THAT THE SUM OF EUR 5,122,607.40
(FIVE MILLION ONE HUNDRED TWENTY TWO
THOUSAND SIX HUNDRED SEVEN EUROS AND FORTY CENTS)
IS DUE AND THE APPLICANT IS IN BREACH OF ITS
OBLIGATIONS UNDER THE UNDERLYING CONTRACT.
WE THEREFORE DEMAND PAYMENT OF THE SUM OF EUR
5,122,607.40 (FIVE MILLION ONE HUNDRED TWENTY-TWO
THOUSAND SIX HUNDRED SEVEN EUROS AND FORTY
CENTS).
2. PAYMENT SHOULD BE MADE TO THE FOLLOWING
ACCOUNT:
3 ACCOUNT HOLDER:TIMBER RENEWABLE ENERGY SP. Z O.O.
ACCOUNT NUMBER:PL56 1140 1010 0000 4320 8900 2003
:79:NARRATIVE
BANK: MBANK S.A.
BANK ADDRESS: PROSTA 18, 00-850 WARSAW, POLAND
SWIFT/BIC: BREXPLPWXXX
CURRENCY: EUR
YOURS FAITHFULLY,
DIGITALLY SIGNED BY PEDRO ANDRE MARQUES DA SILVA
UNQUOTE
regards
MBANK S.A./GUARANTEE OFFICE/KJ

2/2

CHINA CONSTRUCTION BANK CORPORATION
BENGBU BRANCH
(1) ORIGINAL 正本
Sign:

102002BN5178

CS 扫描全能王
3亿人都在用的扫描App

# ATTACHMENT 2

# 中华人民共和国
# 安徽省合肥市中级人民法院
# 民事裁定书

（2026）皖 01 行保 1 号之一

申请人：中建材玻璃新材料研究院集团有限公司，住所地安徽省蚌埠市涂山路 1047 号，统一社会信用代码 913403004852224289。

法定代表人：陶立纲，董事长。

委托诉讼代理人：张晨，北京盈科（上海）律师事务所律师。

委托诉讼代理人：徐也轩，北京盈科（上海）律师事务所律师。

被申请人：Timber 可再生能源有限责任公司（Timber Renewable Energy sp. z o. o. ），住所地波兰共和国华沙市塔内奇纳街 18 号，02-829 华沙（WARSAW, POLAND, Ul. Taneczna 18, 02-829 Warsaw），国家法院登记册编号 0000890774。

被申请人：中国建设银行股份有限公司安徽省分行，住所地安徽省合肥市云谷路 2358 号，统一社会信用代码 91340000610300174F。

负责人：关雁翎。

申请人中建材玻璃新材料研究院集团有限公司（以下简称中建材玻璃研究院公司）与被申请人Timber可再生能源有限责任公

司（以下简称Timber能源公司）、中国建设银行股份有限公司安徽省分行（以下简称建设银行安徽省分行）申请中止支付保函项下款项一案，本院于2026年9月15日立案后，依法组成合议庭进行了审查。

申请人中建材玻璃研究院公司于2026年9月15日以保函欺诈为由向本院申请：裁定建设银行安徽省分行中止支付编号为AHC02LG0000005200履约保函项下，受益人为Timber能源公司索兑款项5,122,607.40欧元，折合人民币40,032,664.57元（按2026年9月14日1欧元兑7.8149元人民币的汇率计算）。

经本院审查初步查明：2025年4月21日，中建材玻璃研究院公司作为承包方与业主方Timber能源公司、业主方母公司GoldenPeaks Capital Holding Ltd.（以下简称GPC）就位于波兰的142.40718MW太阳能电站建设工程签订《EPC合同》。

2025年8月27日，中建材玻璃研究院公司作为总承包商与Spectris Energy sp.z o.o（以下简称Spectris能源公司）签署《EPC分包合同》(SUBEPC合同)，由Spectris担任该项目的分包商。

2025年8月26日，中建材玻璃研究院公司(承包商)与Timber能源公司（项目公司）、Spectris能源公司（分包商）、GPC（担保人）以及MONTEVERDI & GRAY GROUP LTD、M+G Group Limited（联合担保人）共同签署了《附加协议》(《Side Contract》)。该协议记载，项目公司、担保人与承包商于2025年4月21日签署关于共计142.40718MW光伏电站的设计、供货和施工调试的EPC合同（EPC合同）；承包商与分包商于2025年8月26日签署关于光伏

电站共计 142.40718MW的设计、供货和施工调试的EPC合同及后续变更（SUBEPC合同）；各方均充分知悉和了解EPC合同和SUBEPC合同的内容。协议第 1 条约定：“联合担保人、担保人及项目公司同意承担与履约保函和质保保函有关的任何费用。此外，联合担保人、担保人及项目公司未能预见履约保函或质保保函要被执行，但在极少数情况下不得不被执行时，由联合担保人、担保人和/或项目公司全额承担有关付款以及全部费用，并纳入担保文件的担保范围。”第 3 条约定：“联合担保人、担保人、项目公司和分包商同意放弃其EPC合同和 SUBEPC合同中向承包商提起任何工程索赔的权利，包括但不限于基于工期、履约保函、质保保函、母公司担保和直接协议索赔的权利（组件的采购责任仍是承包商的）。如联合担保人、担保人、项目公司和/或分包商就EPC合同和SUBEPC合同中延期违约责任和性能保证条款向承包商提起索赔，承包商有权主张不超过 EPC合同金额 100%的违约金。放弃该权利不包括分包商向承包商索取其从担保人或项目公司处已获得的款项的权利。联合担保人、担保人、项目公司和分包商同意，承包商会将除组件采购外的剩余全部工作分包给分包商。为避免疑义，分包商应承担组件自出厂后至项目现场的运输工作以及由此产生的相关义务。”第 13 条约定：“尽管存在与之相反的约定，本附加协议的效力应优先于EPC合同、SUBEPC合同以及双方签署的任何其他协议或文件。联合扣保人承认并同意，如果联合担保人、担保人、项目公司或分包商中的任何一方未能履行其在本附加协议项下的义务，承包商有权根据担保文件的规定执行担保文件。”

另查明：2025年8月22日，建设银行安徽省分行以Timber能源公司为受益人，开具编号为AHC02LG0000005200担保金额为5,122,607.40欧元履约保函，到期日为2026年9月30日。该保函中，建设银行安徽省分行作出不可撤销地承诺，在收到受益人首次书面索赔书后五个营业日内支付不超过5,122,607.40欧元的任何金额。

2026年9月9日，建设银行安徽省分行收到Timber能源公司就案涉履约保函的索赔书，要求支付金额5,122,607.40欧元。建设银行安徽省分行遂通知中建材玻璃研究院公司。

本案审查过程中，中建材玻璃研究院公司称截至2026年9月16日，建设银行安徽省分行未就案涉保函项下款项予以付款。

中建材玻璃研究院公司以在中国农业发展银行蚌埠市分行20334039900100000456261账户内的银行存款人民币40,032,664.57元向本院提供担保。

本院经审查认为，本案系申请人申请中止支付保函项下款项的案件。依据《最高人民法院关于审理独立保函纠纷案件若干问题的规定》（以下简称《独立保函若干规定》）第十三条、第十六条、第十八条之规定，独立保函的申请人发现有保函欺诈情形的，可以在提起诉讼或申请仲裁前，向开立人住所地具有管辖权的人民法院申请中止支付独立保函项下的款项。人民法院受理止付申请后，可以就基础合同与保函相关的内容以及履行情况进行必要、有限的审查，以利于判断止付申请的理由是否成立。本案中由建设银行安徽省分行开立的编号AHC02LG0000005200履约保函属于

《独立保函若干规定》第三条规定的独立保函。现中建材玻璃研究院公司以保函欺诈为由申请对上述独立保函予以止付，案涉保函开立人所在地为安徽省合肥市，故本院对本案具有管辖权。

关于本案的法律适用。依据《独立保函若干规定》第二十二条之规定，对于建设银行安徽省分行开立的编号AHC02LG0000005200履约保函的止付保全程序，应当适用中华人民共和国法律进行审查。

需要说明的是，独立保函独立于基础合同，具备“见索即付”的基本特征，但是针对独立保函的独立性，国际惯例和相关法律同时又确立了“欺诈例外”的原则，使得在符合特定条件的索兑不受保函独立于基础交易原则的制约，即在保函受益人明知其不具备保函项下款项的付款请求权而仍提出恶意索款要求的情况下，开立人不应履行保函项下的付款义务，保函的独立性归于无效，上述情形构成保函独立性原则的例外。依据《独立保函若干规定》第十二条、第十四条、第十八条规定，在涉及独立保函是否涉嫌欺诈的情况下，应当对本案基础交易的事实作有限审查。按照上述规定，在受理当事人提出的独立保函欺诈纠纷之前，对于相应的索兑请求是否构成独立保函欺诈，不进行终局性的司法判断，仅根据案件情形判断是否存在独立保函欺诈的高度可能性。即，本院在审查中止支付保函项下款项中仅进行初步审查，作出的处理仅为阶段性意见，不影响后续当事人如提出独立保函欺诈纠纷诉讼中经过实体审理后的最终判断。

本案中，中建材玻璃研究院公司与Timber能源公司等签订《附

加协议》，约定Timber能源公司等同意放弃其EPC合同和SUBEPC合同中向中建材玻璃研究院公司提起任何工程索赔的权利。同时明确附加协议的效力应优先于EPC合同、SUBEPC合同以及双方签署的任何其他协议或文件。此情况下，Timber能源公司仍向建设银行安徽省分行提出履约保函的索兑申请，高度可能构成《独立保函若干规定》第十二条第五项规定的“受益人明知其没有付款请求权仍滥用该权利的其他情形”。同时，本案情况紧急，如不立即采取止付措施，将给止付申请人中建材玻璃研究院公司的合法权益造成难以弥补的损害。中建材玻璃研究院公司已向本院提供了足以弥补被申请人因止付可能遭受损失的担保。中建材玻璃研究院公司申请裁定建设银行安徽省分行中止支付编号AHC02LG0000005200履约保函项下的款项，于法有据，本院予以支持。

综上，中建材玻璃研究院公司的申请符合法律规定。依照《中华人民共和国民事诉讼法》第一百五十七条第一款第十一项、《最高人民法院关于审理独立保函纠纷案件若干问题的规定》第三条、第十二条第五项、第十三条、第十四条、第十六条、第十八条之规定，裁定如下:

中国建设银行股份有限公司安徽省分行中止向Timber可再生能源有限责任公司（Timber Renewable Energy sp. z o. o.）支付编号为AHC02LG0000005200履约保函项下款项5,122,607.40欧元（折合人民币40,032,664.57元，按2026年9月14日1欧元兑7.8149元人民币的汇率计算）

案件申请费 5000 元，由中建材玻璃新材料研究院集团有限公司负担。

本裁定立即开始执行。

如对本裁定有异议，可以自收到裁定书之日起十日内向本院申请复议一次。复议期间不停止裁定的执行。

审 判 长　刘付兴
审 判 员　万庆农
审 判 员　张　莹

安徽省合肥市中级人民法院

二〇二六年九月十七日

书 记 员　周　涛

附：相关法律条文

《中华人民共和国民事诉讼法》

第一百五十七条 裁定适用于下列范围：

……（十一）其他需要裁定解决的事项。

《最高人民法院关于审理独立保函纠纷案件若干问题的规定》

第三条 保函具有下列情形之一，当事人主张保函性质为独立保函的，人民法院应予支持，但保函未载明据以付款的单据和最高金额的除外：

（一）保函载明见索即付；

（二）保函载明适用国际商会《见索即付保函统一规则》等独立保函交易示范规则；

（三）根据保函文本内容，开立人的付款义务独立于基础交易关系及保函申请法律关系，其仅承担相符交单的付款责任。

当事人以独立保函记载了对应的基础交易为由，主张该保函性质为一般保证或连带保证的，人民法院不予支持。

当事人主张独立保函适用民法典关于一般保证或连带保证规定的，人民法院不予支持。

第十二条 具有下列情形之一的，人民法院应当认定构成独立保函欺诈：

（一）受益人与保函申请人或其他人串通，虚构基础交易的；

（二）受益人提交的第三方单据系伪造或内容虚假的；

（三）法院判决或仲裁裁决认定基础交易债务人没有付款或

赔偿责任的;

（四）受益人确认基础交易债务已得到完全履行或者确认独立保函载明的付款到期事件并未发生的;

（五）受益人明知其没有付款请求权仍滥用该权利的其他情形。

第十三条 独立保函的申请人、开立人或指示人发现有本规定第十二条情形的，可以在提起诉讼或申请仲裁前，向开立人住所地或其他对独立保函欺诈纠纷案件具有管辖权的人民法院申请中止支付独立保函项下的款项，也可以在诉讼或仲裁过程中提出申请。

第十四条 人民法院裁定中止支付独立保函项下的款项，必须同时具备下列条件:

（一）止付申请人提交的证据材料证明本规定第十二条情形的存在具有高度可能性;

（二）情况紧急，不立即采取止付措施，将给止付申请人的合法权益造成难以弥补的损害;

（三）止付申请人提供了足以弥补被申请人因止付可能遭受损失的担保。

止付申请人以受益人在基础交易中违约为由请求止付的，人民法院不予支持。

开立人在依指示开立的独立保函项下已经善意付款的，对保障该开立人追偿权的独立保函，人民法院不得裁定止付。

第十六条 人民法院受理止付申请后，应当在四十八小时内作

出书面裁定。裁定应当列明申请人、被申请人和第三人，并包括初步查明的事实和是否准许止付申请的理由。

裁定中止支付的，应当立即执行。

止付申请人在止付裁定作出后三十日内未依法提起独立保函欺诈纠纷诉讼或申请仲裁的，人民法院应当解除止付裁定。

第十八条 人民法院审理独立保函欺诈纠纷案件或处理止付申请，可以就当事人主张的本规定第十二条的具体情形，审查认定基础交易的相关事实。

# People's Republic of China

**HEFEI INTERMEDIATE PEOPLE'S COURT, ANHUI PROVINCE**

**CIVIL RULING**

Case No. (2026) Wan 01 Xing Bao No. 1-1

Applicant: China National Building Materials Glass New Materials Research Institute Group Co., Ltd. ("CNBM Glass Research Institute"), domiciled at No. 1047 Tushan Road, Bengbu City, Anhui Province, Unified Social Credit Code 913403004852224289. Legal representative: Tao Ligang, Chairman. Entrusted litigation agents: Zhang Chen and Xu Yexuan, lawyers of Beijing Yingke (Shanghai) Law Firm.

Respondent: Timber Renewable Energy sp. z o.o., domiciled at ul. Taneczna 18, 02-829 Warsaw, Poland, National Court Register No. 0000890774.

Respondent: China Construction Bank Corporation, Anhui Branch, domiciled at No. 2358 Yungu Road, Hefei City, Anhui Province, Unified Social Credit Code 91340000610300174F. Person in charge: Guan Yanling.

This case concerns an application by CNBM Glass Research Institute against respondents Timber Renewable Energy sp. z o.o. ("Timber Energy") and China Construction Bank Anhui Branch ("CCB Anhui Branch") for suspension of payment under a letter of guarantee. The Court docketed the case on 15 September 2026 and, having lawfully constituted a collegial panel, conducted its review.

On 15 September 2026, CNBM Glass Research Institute, alleging guarantee fraud, applied to the Court for an order that CCB Anhui Branch suspend payment under performance guarantee No. AHC02LG0000005200, under which the beneficiary Timber Energy had made a demand for payment of EUR 5,122,607.40 (equivalent to RMB 40,032,664.57, calculated at the exchange rate of EUR 1 = RMB 7.8149 as of 14 September 2026).

1. **FACTS ESTABLISHED BY PRELIMINARY REVIEW**

On 21 April 2025, CNBM Glass Research Institute, as contractor, entered into an EPC Contract with the owner Timber Energy and the owner's parent company GoldenPeaks Capital Holding Ltd. ("GPC") for the construction of a 142.40718 MW solar power plant located in Poland.

On 27 August 2025, CNBM Glass Research Institute, as main contractor, signed a Sub-EPC Contract with Spectris Energy sp. z o.o. ("Spectris Energy"), under which Spectris acted as subcontractor for the project.

On 26 August 2025, CNBM Glass Research Institute (Contractor), Timber Energy (Project Company), Spectris Energy (Subcontractor), GPC (Guarantor), and MONTEVERDI & GRAY GROUP LTD and M+G Group Limited (Joint Guarantors) jointly signed a "Side Contract." The Side Contract recorded that the Project Company, Guarantor and Contractor had signed an EPC Contract on 21 April 2025 for the design, supply, construction and commissioning of the 142.40718 MW photovoltaic power plant, and that the Contractor and Subcontractor had signed a Sub-EPC Contract on 26 August

2025 (and subsequent amendments) covering the same scope, with all parties fully aware of the contents of both the EPC Contract and the Sub-EPC Contract.

Article 1 of the Side Contract provided: "The Joint Guarantors, Guarantor and Project Company agree to bear any costs relating to the performance guarantee and the warranty guarantee. Furthermore, although the Joint Guarantors, Guarantor and Project Company did not anticipate that the performance guarantee or warranty guarantee would need to be called, in the rare event that they must be called, the relevant payment and all costs shall be borne in full by the Joint Guarantors, Guarantor and/or Project Company, and shall be included within the scope of the guarantee documents."

Article 3 provided: "The Joint Guarantors, Guarantor, Project Company and Subcontractor agree to waive any right to bring engineering claims against the Contractor under the EPC Contract and Sub-EPC Contract, including but not limited to claims based on schedule, the performance guarantee, the warranty guarantee, the parent company guarantee and the direct agreement (procurement responsibility for components remains with the Contractor). If the Joint Guarantors, Guarantor, Project Company and/or Subcontractor bring a claim against the Contractor under the delay/default liability and performance guarantee provisions of the EPC Contract and Sub-EPC Contract, the Contractor shall be entitled to claim liquidated damages of up to 100% of the EPC Contract amount. This waiver does not include the Subcontractor's right to claim from the Contractor amounts already received by the Contractor from the Guarantor or Project Company. The Joint Guarantors, Guarantor, Project Company and Subcontractor agree that the Contractor will subcontract all remaining work, other than component procurement, to the Subcontractor. For the avoidance of doubt, the Subcontractor shall be responsible for transporting the components from the factory to the project site and for the obligations arising therefrom."

Article 13 provided: "Notwithstanding anything to the contrary, this Side Contract shall prevail over the EPC Contract, the Sub-EPC Contract, and any other agreement or document signed by the parties. The Joint Guarantors acknowledge and agree that if any of the Joint Guarantors, Guarantor, Project Company or Subcontractor fails to perform its obligations under this Side Contract, the Contractor shall be entitled to call the guarantee documents in accordance with their terms."

It was further established that on 22 August 2025, CCB Anhui Branch issued performance guarantee No. AHC02LG0000005200 in favour of beneficiary Timber Energy, in the amount of EUR 5,122,607.40, expiring on 30 September 2026. Under the guarantee, CCB Anhui Branch irrevocably undertook to pay any amount not exceeding EUR 5,122,607.40 within five business days of receiving the beneficiary's first written demand.

On 9 September 2026, CCB Anhui Branch received a demand from Timber Energy under the guarantee for payment of EUR 5,122,607.40, and accordingly notified CNBM Glass Research Institute.

During the Court's review, CNBM Glass Research Institute stated that, as of 16 September 2026, CCB Anhui Branch had not made payment under the guarantee.

CNBM Glass Research Institute provided security to the Court in the form of a bank deposit of RMB 40,032,664.57 held in account No. 20334039900100000456261 at the Bengbu Branch of the Agricultural Development Bank of China.

2. **COURT'S REASONING**

Upon review, the Court held that this case concerns an application to suspend payment under a guarantee. Under Articles 13, 16 and 18 of the Supreme People's Court's Provisions on Several Issues Concerning the Trial of Independent Guarantee Dispute Cases ("Independent Guarantee Provisions"), where an applicant for an independent guarantee discovers circumstances of guarantee fraud, it may, before initiating litigation or arbitration, apply to the people's court with jurisdiction over the domicile of the issuer to suspend payment under the independent guarantee. After accepting a suspension-of-payment application, the people's court may conduct a necessary and limited review of the underlying contract as it relates to the guarantee and its performance, in order to assess whether the grounds for suspension are established.

The performance guarantee No. AHC02LG0000005200 issued by CCB Anhui Branch constitutes an independent guarantee under Article 3 of the Independent Guarantee Provisions. As CNBM Glass Research Institute applied for suspension of payment on the ground of guarantee fraud, and the issuer of the guarantee is domiciled in Hefei City, Anhui Province, the Court has jurisdiction over this case.

As to the applicable law, under Article 22 of the Independent Guarantee Provisions, the suspension-of-payment preservation procedure concerning guarantee No. AHC02LG0000005200 issued by CCB Anhui Branch shall be reviewed under the law of the People's Republic of China.

The Court further noted that, while an independent guarantee is independent of the underlying contract and has the basic feature of "payment on first demand," international practice and relevant law also establish a "fraud exception" to this independence, such that a demand meeting certain conditions is not protected by the principle of independence from the underlying transaction — that is, where a beneficiary makes a bad-faith demand for payment under the guarantee while knowing it has no right to payment, the issuer should not perform its payment obligation under the guarantee, and the guarantee's independence is thereby nullified; this constitutes an exception to the principle of independence.

Under Articles 12, 14 and 18 of the Independent Guarantee Provisions, where an independent guarantee is alleged to involve fraud, a limited review of the facts of the underlying transaction should be conducted. In accordance with these provisions, before accepting a party's independent guarantee fraud dispute, the court does not make a final judicial determination as to whether the demand constitutes independent guarantee fraud, but only assesses, based on the circumstances of the case, whether there is a high probability that independent guarantee fraud exists. That is, in reviewing an application to suspend payment under a guarantee, the Court conducts only a preliminary review, and its ruling is only a provisional view that does not affect the final determination to be made following substantive trial in any subsequent litigation over independent guarantee fraud.

In this case, CNBM Glass Research Institute and Timber Energy and others signed the Side Contract, under which Timber Energy and others agreed to waive any right to bring engineering claims against CNBM Glass Research Institute under the EPC Contract and Sub-EPC Contract, and it was expressly agreed that the Side Contract would prevail over the EPC Contract, the Sub-EPC Contract, and any other agreement or document signed by the parties. Despite this, Timber Energy nonetheless submitted a demand to CCB Anhui Branch under the performance guarantee, which is highly likely to constitute "other circumstances in which the beneficiary abuses its right to payment while knowing it has no such right," as provided in Article 12(5) of the Independent Guarantee Provisions.

In addition, the circumstances of this case are urgent: failure to immediately take suspension measures would cause irreparable harm to the legitimate rights and interests of the applicant, CNBM Glass Research Institute. CNBM Glass Research Institute has provided the Court with security sufficient to cover any loss the respondents may suffer as a result of the suspension. The application by CNBM Glass Research Institute for an order that CCB Anhui Branch suspend payment under performance guarantee No. AHC02LG0000005200 is well founded in law, and the Court upholds it.

3. **RULING**

In summary, the application of CNBM Glass Research Institute complies with the law. Pursuant to Article 157(1)(11) of the Civil Procedure Law of the People's Republic of China and Articles 3, 12(5), 13, 14, 16 and 18 of the Supreme People's Court's Provisions on Several Issues Concerning the Trial of Independent Guarantee Dispute Cases, it is hereby ruled as follows:

China Construction Bank Corporation, Anhui Branch shall suspend payment to Timber Renewable Energy sp. z o.o. of EUR 5,122,607.40 (equivalent to RMB 40,032,664.57, calculated at the exchange rate of EUR 1 = RMB 7.8149 as of 14 September 2026) under performance guarantee No. AHC02LG0000005200.

The case application fee of RMB 5,000 shall be borne by China National Building Materials Glass New Materials Research Institute Group Co., Ltd.

This ruling shall take effect and be enforced immediately. If a party objects to this ruling, it may apply to this Court for one reconsideration within ten days of receiving the ruling. Enforcement of the ruling is not suspended during the reconsideration period.

Presiding Judge: Liu Fuxing

Judge: Wan Qingnong

Judge: Zhang Ying

Dated: 17 September 2026 (the original date character contains an apparent typographical error, rendered here based on context)

Court Clerk: Zhou Tao

**ATTACHMENT: RELEVANT LEGAL PROVISIONS**

Civil Procedure Law of the People's Republic of China, Article 157: A ruling applies to the following matters: ... (11) Other matters requiring resolution by ruling.

**SUPREME PEOPLE'S COURT PROVISIONS ON SEVERAL ISSUES CONCERNING THE TRIAL OF INDEPENDENT GUARANTEE DISPUTE CASES**

Article 3: Where a guarantee has any of the following characteristics, the people's court shall support a party's assertion that the guarantee is an independent guarantee, unless the guarantee does not specify the documents against which payment is to be made and the maximum amount: (1) the guarantee states that it is payable on first demand; (2) the guarantee states that it is subject to model rules for independent guarantee transactions such as the ICC Uniform Rules for Demand Guarantees; (3) according to the text of the guarantee, the issuer's payment obligation is independent of the underlying transaction relationship and the guarantee application relationship, and the issuer is only liable for payment against conforming documents. Where a party asserts that an independent guarantee is a general or joint and several guarantee on the ground that it records a corresponding underlying transaction, the people's court shall not support such assertion. Where a party asserts that the Civil Code's provisions on general or joint and several guarantees apply to an independent guarantee, the people's court shall not support such assertion.

Article 12: The people's court shall find that independent guarantee fraud exists in any of the following circumstances: (1) the beneficiary colludes with the guarantee applicant or another person to fabricate the underlying transaction; (2) a third-party document submitted by the beneficiary is forged or contains false content; (3) a court judgment or arbitral award has determined that the debtor under the underlying transaction has no payment or indemnification liability; (4) the beneficiary has confirmed that the debt under the underlying transaction has been fully performed, or that the payment-triggering event specified in the independent guarantee has not occurred; or (5) other circumstances in which the beneficiary abuses its right to payment while knowing it has no such right.

Article 13: Where the applicant, issuer or instructing party of an independent guarantee discovers circumstances described in Article 12, it may, before initiating litigation or arbitration, apply to the people's court with jurisdiction over the domicile of the issuer, or another people's court with jurisdiction over the independent guarantee fraud dispute, to suspend payment under the independent guarantee; it may also make such application during litigation or arbitration proceedings.

Article 14: A people's court ruling to suspend payment under an independent guarantee must simultaneously satisfy the following conditions: (1) the evidence submitted by the applicant for suspension demonstrates a high probability that the circumstances described in Article 12 exist; (2) the circumstances are urgent, such that failure to immediately take suspension measures would cause irreparable harm to the applicant's legitimate rights and interests; and (3) the applicant has provided security sufficient to cover any loss the respondent may suffer as a result of the suspension. Where the applicant seeks suspension on the ground that the beneficiary breached the underlying transaction, the people's court shall not support the application. Where the issuer has made payment in good faith under an independent guarantee issued pursuant to instructions, the people's court may not order suspension of payment under an independent guarantee that secures the issuer's right of recourse.

Article 16: After accepting an application to suspend payment, the people's court shall issue a written ruling within 48 hours. The ruling shall identify the applicant, respondent(s) and any

third party, and shall include the facts preliminarily established and the reasons for granting or denying the suspension application. A ruling suspending payment shall be enforced immediately. If the applicant fails to lawfully initiate litigation or apply for arbitration over the independent guarantee fraud dispute within 30 days after the suspension ruling is issued, the people's court shall lift the suspension ruling.

Article 18: In trying an independent guarantee fraud dispute case or handling a suspension-of-payment application, the people's court may review and determine facts relating to the underlying transaction with respect to the specific circumstances under Article 12 asserted by a party.

# EXHIBIT B

ArentFox Schiff

**ArentFox Schiff LLP**
555 S. Flower St.
43rd Floor
Los Angeles, CA 90071

213.629.7400 **MAIN**
213.629.7401 **FAX**

afslaw.com

**Aram Ordubegian**
Los Angeles Managing Partner
213.629.7410 **DIRECT**
aram.ordubegian@afslaw.com

**Christopher K.S. Wong**
Partner
213.443.7512 **DIRECT**
christopher.wong@afslaw.com

**Sophia R. Wang**
Associate
213.443.7577 **DIRECT**
sophia.wang@afslaw.com

October 1, 2026

**VIA EMAIL**

Malhar S. Pagay, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Fl.
Los Angeles, California 90067-4003
mpagay@pszjlaw.com

Re: In re GoldenPeaks Poland Holding Limited, et al., Case No. 26-90564 (ARP) (Bankr. S.D. Tex.) (Jointly Administered); Response to Letter Dated September 28, 2026 and Request for Extension of Production Deadline

Dear Mr. Pagay:

We write on behalf of CNBM Research Institute for Advanced Glass Materials Group Co., Ltd. ("CNBM") to acknowledge receipt of your September 28, 2026 letter on behalf of Timber Renewable Energy sp. z o.o. ("TRE") and the above-captioned debtors in the chapter 11 cases pending before the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court," and such cases, the "Chapter 11 Cases"). CNBM takes the allegations in your letter seriously and is making diligent efforts to address the issues you raise.

As you are aware, CNBM timely filed its objection to the Debtors' proposed assumption and assignment of executory contracts with CNBM and the related cure amounts [Dkt. 396] (the "Cure Objection"). The Cure Objection remained pending and unresolved through confirmation of the Debtors' plan of liquidation on September 1, 2026 [Dkt. 720] (the "Confirmation Order"), and, since confirmation, the Debtors have provided CNBM with no update regarding the assumption and assignment of executory contracts with CNBM or resolution of the Cure Objection.

The same uncertainty surrounds the sale itself. The Bankruptcy Court entered its order approving the sale of substantially all of the Debtors' assets on August 12, 2026 [Dkt. 584] (the "Sale Order"), under a purchase agreement that originally contemplated a closing by September 1, 2026, subject to conditional extensions.

Only on September 28, 2026, nearly four weeks after that original closing date had passed, was an amended purchase agreement filed, providing for an initial closing by September 28, 2026, extendable by the buyer to as late as October 28, 2026, with all subsequent closings to occur within sixty days thereafter. Although the Debtors noticed a partial closing as to certain Initial Acquired Companies on September 28, 2026, it remains unclear whether TRE and the other Silo debtors will be sold at all and, if so, whether by an asset sale or an equity sale. CNBM therefore remains in continuing uncertainty regarding the treatment of its contracts and claims. While CNBM was kept in that position, TRE, without notice to CNBM or its bankruptcy counsel, issued a demand directly to China Construction Bank Corporation, Anhui Branch ("CCB") under Performance Guarantee No. AHC02LG000005200 (the "Performance Guarantee") for payment of EUR 5,122,607.40, affording CCB only five business days to pay. Faced with that improper demand and its imminent deadline, CNBM was compelled to respond immediately, solely in defense against the demand and to prevent irreparable harm.

We are carefully evaluating the allegations in your letter and are diligently gathering the documents as requested. At the same time, because of the Mid-Autumn Festival Holiday from September 25 through October 7, 2026 in China, during which CNBM, relevant personnel, and its counsel in China are unavailable, we require additional time to gather the requested documents. CNBM therefore respectfully requests that the current production deadline be extended from October 1, 2026 to October 9, 2026. Please confirm by reply email whether you agree to this extension.

This letter is written without prejudice to, and CNBM expressly reserves, all of its rights, claims, remedies, and defenses, whether at law, in equity, under the Bankruptcy Code, any order of the Bankruptcy Court, or any other applicable domestic or foreign law, or otherwise, including, without limitation, all rights with respect to its claims and objections in the Chapter 11 Cases and the right to request any relief from the Bankruptcy Court or any other court of competent jurisdiction. Nothing in this letter is intended to be, or shall be construed as, an admission of any fact, allegation, or characterization set forth in your letter, a waiver of any right, claim, remedy, or defense, or consent to the jurisdiction of any court for any purpose other than as expressly provided by law.

Sincerely,

Aram Ordubegian

AO

**cc:** (via email)

Richard M. Pachulski, Esq.
Debra I. Grassgreen, Esq.
Steven W. Golden, Esq.
Benjamin L. Wallen, Esq.
Pachulski Stang Ziehl & Jones LLP

James E. Britton, Esq. (ArentFox Schiff LLP)
Julia Zhu-Morelli, Esq. (ArentFox Schiff LLP)

# EXHIBIT C

PACHULSKI
STANG
ZIEHL &
JONES

LOS ANGELES
10100 SANTA MONICA BLVD. 13TH FL.
LOS ANGELES, CALIFORNIA 90067-4003
310.277.6910

NEW YORK
1700 BROADWAY, 36TH FL.
NEW YORK, NEW YORK 10019
212.561.7700

WILMINGTON
919 NORTH MARKET STREET, 17TH FLOOR,
P.O. BOX 8705
WILMINGTON, DELAWARE 19899-8705
302.652.4100

HOUSTON
700 LOUISIANA STREET, STE. 4500
HOUSTON, TEXAS 77002
713.691.9385

SAN FRANCISCO
ONE SANSOME STREET, 34TH FL. STE. 3430
SAN FRANCISCO, CALIFORNIA 94104
415.263.7000

Malhar S. Pagay
310.772.2335
mpagay@pszjlaw.com

October 2, 2026

**VIA EMAIL**

Aram Ordubegian, Esq.
Christopher K.S. Wong, Esq.
Sophia R. Wang, Esq.
ArentFox Schiff LLP
555 South Flower Street, 43rd Floor
Los Angeles, CA 90071
aram.ordubegian@afslaw.com
christopher.wong@afslaw.com
sophia.wang@afslaw.com

**Re:** ***In re GoldenPeaks Poland Holding Limited, et al.*****, Case No. 26-90564 (ARP) (Bankr. S.D. Tex.) (Jointly Administered)**
**CNBM Research Institute for Advanced Glass Materials Group Co., Ltd. – Hefei Intermediate People's Court Case No. (2026) Wan 01 Xing Bao No. 1-1; Performance Guarantee No. AHC02LG000005200**
**Response to Your Letter Dated October 1, 2026 and Request for Extension of Production Deadline**

Counsel:

We write in response to Mr. Ordubegian's letter of October 1, 2026 (the "Response") which acknowledges our letter of September 28, 2026 (the "September 28 Letter") and requests an extension of the production deadline stated therein. Capitalized terms not defined here have the meanings given in the September 28 Letter.

Set out below are (I) the matters the Response does not address, (II) our position on the justifications it offers, and (III) the Debtors' position regarding the requested extension.

## I. The Response Does Not Deny CNBM's Willful Stay Violation

The Response does not deny any of the following facts set out in the September 28 Letter: that CNBM applied to the Hefei Court on September 15, 2026, without apparent notice to TRE and without seeking relief from the automatic stay; that it did so *the day before* Ms. Wang wrote to Mr. Golden characterizing the Demand as "premature" in light of matters "pending before the Bankruptcy Court" and inviting discussion; that the Stop-Payment Ruling rests on a purported "Side Contract" that CNBM has never produced to the Debtors or their counsel; and that, to date, neither TRE nor the Debtors have been served with the Application or the Stop-Payment Ruling, of which the Debtors became aware through a communication from China Construction Bank on September 28. The Response is also silent as to the Side Contract itself.

We also note that, by its own terms, the Stop-Payment Ruling is a provisional preservation measure. Under Article 16 of the Supreme People's Court Provisions quoted in the ruling, the Hefei Court "shall lift" the ruling if the applicant fails to commence litigation or arbitration over the alleged guarantee fraud within thirty days after the ruling was issued – here, on or about October 17, 2026. The Response does not say whether CNBM intends to commence such litigation or arbitration against TRE. Any such step would be a further and independent violation of section 362(a)(1) and (a)(3) of the Bankruptcy Code. The Debtors require CNBM's position on this point now, not after the requested extension has run.

## II. The Justifications Offered in the Response

**Necessity.** The Response asserts that, "[f]aced with that improper demand and its imminent deadline, CNBM was compelled to respond immediately, solely in defense against the demand and to prevent irreparable harm." The Bankruptcy Code prescribes the means by which a creditor who believes estate property is being misapplied may protect itself: a motion for relief from the automatic stay under section 362(d), which the Bankruptcy Court may hear on an expedited or, where warranted, ex parte basis under section 362(f). CNBM, through your firm, was in direct contact with the Debtors' counsel on September 16 and 17, 2026 and could have sought that relief at any time. It chose instead to proceed ex parte in a foreign court, without

notice to the debtor, while simultaneously inviting the Debtors to address the matter in the Bankruptcy Court. That is not "defense" to CNBM's willful violation of the automatic stay. To the contrary, it is the self-help that section 362(a) forbids. A party's belief in the merits of its own position does not excuse a willful violation. *See, e.g., Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005).

We also note that the "irreparable harm" CNBM asserted to the Hefei Court is its own reimbursement exposure to CCB under the facility CNBM itself procured – i.e., a contingent claim against TRE arising under prepetition contracts, of precisely the kind the Bankruptcy Code channels into the chapter 11 process – and that CNBM was able, within days, to post security of RMB 40,032,664.57 in Hefei. CNBM was not without the means to seek relief in the proper forum.

**"Without Notice to CNBM."** The Response complains that TRE "without notice to CNBM or its bankruptcy counsel, issued a demand directly to [CCB]" and afforded CCB "only five business days to pay." The Performance Bond is an irrevocable demand guarantee which is, by its terms, to be presented to the guarantor through the beneficiary's bank by authenticated SWIFT message; nothing in the instrument requires the beneficiary to give the applicant prior notice of a demand. The obligation to inform the applicant rests with the guarantor. The five-business-day payment period is not something TRE "afforded" CCB; it is CCB's own irrevocable undertaking in the instrument CNBM procured.

**The Cure Objection and the Sale.** Much of the Response is devoted to CNBM's dissatisfaction with the pace of these cases, the status of its Cure Objection [Docket No. 396], and the timing of the sale closings. None of that bears on the automatic stay. The stay arose by operation of law on the Petition Date and remains in effect as to TRE and its property. If CNBM believed it was entitled to information or relief concerning the Cure Objection or the treatment of its contracts, the remedy was a request to the Debtors or a motion to the Bankruptcy Court. Indeed, Ms. Wang's September 16 email, apparently sent after CNBM violated the automatic stay by commencing proceedings in China, argued that the Demand should await resolution of those very matters "before the Bankruptcy Court." CNBM cannot invoke the Bankruptcy Court as the proper forum in correspondence with the Debtors while, on the previous day and

without disclosure, having commenced proceedings against the Debtor in another forum.

For the avoidance of doubt, TRE's complying demands under the Performance Bond were presented to CCB before the Expiry Date. The Stop-Payment Ruling suspends CCB's payment; it does not extinguish TRE's rights under the instrument. The Debtors will hold CNBM responsible for all loss, cost, and delay resulting from its conduct.

**III. The Requested Extension**

CNBM asks that the production deadline be extended from October 1 to October 9, 2026, on the ground that "the Mid-Autumn Festival Holiday from September 25 through October 7, 2026 in China" has rendered CNBM, its personnel, and its Chinese counsel unavailable.

First, the stated holiday period is somewhat overstated. Under the State Council's published 2026 schedule, the Mid-Autumn Festival holiday ran from September 25 through September 27; September 28, 29, and 30 were ordinary working days; and the National Day holiday runs from October 1 through October 7. CNBM's Chinese counsel, Beijing Yingke (Shanghai) Law Firm, was able to prepare and file the Application and obtain the Stop-Payment Ruling between September 15 and 17, 2026, and CNBM's own letter notes that the Application was pursued "immediately." The same diligence should be applied to remedy the violation.

Second, the documents described in paragraphs 1(a), (b) and (c) of the September 28 Letter are CNBM's own court filings and its own executed contracts, some of which were referenced in CNBM's Cure Objection. The Application and the evidence CNBM submitted in support of it, the Stop-Payment Ruling, the documentation of the security CNBM provided, the Side Contract and other referenced side contracts are necessarily in CNBM's possession and, we assume, in the possession of your firm. No holiday prevents their production in the original language today.

Third, the requested extension would carry production into the period in which the thirty-day window under Article 16 of the Supreme People's Court Provisions is running, and to within days of its expiry.

The Debtors will not agree to an extension that operates to run that clock while the estate remains without the Application, the Side Contract, or any statement of CNBM's intentions.

Accordingly, the Debtors are prepared to agree to a limited extension on the following terms, and only on the following terms:

(a) CNBM will produce the documents described in paragraphs 1(a), (b) and (c) of the September 28 Letter, in the original language, by 12:00 p.m. (prevailing Central Time) on Monday, October 5, 2026, with English translations to follow by October 9, 2026;

(b) the deadline for production of the documents described in paragraphs 1(d), and (e) of the September 28 Letter, as well as all Documents and Communications which CNBM contends supports the assertion that the initiation and prosecution of the Hefei proceeding did not violate the automatic stay contained in 11 U.S. C. § 362 is extended to 5:00 p.m. (prevailing Central Time) on Friday, October 9, 2026;

(c) the extension is without prejudice to the Debtors' rights, including the right to seek the same documents and testimony under Rule 2004 of the Federal Rules of Bankruptcy Procedure and to seek relief from the Bankruptcy Court in respect of CNBM's violation of the automatic stay, which the Debtors intend to pursue without awaiting the extended deadline;

(d) CNBM will identify the date, manner, and address of every attempt to serve or deliver the Application or the Stop-Payment Ruling on or to TRE, including any email or physical address that CNBM supplied to the Hefei Court for that purpose, and will produce copies of all transmittals and delivery records relating to same;

(e) CNBM has preserved, and will continue to preserve, all documents, communications, and electronically stored information described in paragraph 2 of the September 28 Letter;

(f) no further extension of the deadline to respond to the production requested in the September 28 Letter will be sought; and

(g) CNBM agrees that this exchange of correspondence constitutes and satisfies the parties' obligation to meet and confer regarding the schedule of production pursuant to Local Rule 2004-1(c) in respect of the *Notice of the Debtors' Rule 2004 Request for Production of Documents to CNBM Research Institute for Advanced Glass Materials Group Co., Ltd.*, annexed hereto as **Exhibit "A"**.

If CNBM does not unequivocally accept these terms in writing by 5:00 p.m. (prevailing Central Time) today, Friday, October 2, 2026, the Debtors will treat the production demand as having been refused and will proceed accordingly.

**IV. Reservation of Rights**

This letter supplements, and does not limit, the September 28 Letter. The Debtors reserve all rights, claims, remedies, and defenses described in the September 28 Letter and otherwise available to TRE and the other Debtors at law, in equity, under the EPC Contract, the Performance Bond, any parent company guarantee, any direct agreement, the Bankruptcy Code, and the orders of the Bankruptcy Court. Nothing in this letter is, or shall be construed as, an admission of any fact or of the existence, validity, authenticity, enforceability, or effect of any instrument described in the Stop-Payment Ruling, including the purported "Side Contract," or a waiver of any right, claim, remedy, or defense of TRE or any other Debtor. The Debtors' agreement to any extension of time is a courtesy extended without prejudice and shall not be construed as acquiescence in CNBM's conduct or as a waiver of the Debtors' right to seek relief from the Bankruptcy Court at any time.

Very truly yours,

Malhar S. Pagay

PACHULSKI STANG ZIEHL & JONES



cc: (via email)
Richard M. Pachulski, Esq.
Debra I. Grassgreen, Esq.
Steven W. Golden, Esq.
Benjamin L. Wallen, Esq.
James E. Britton, Esq. (ArentFox Schiff LLP)
Julia Zhu-Morelli, Esq. (ArentFox Schiff LLP)

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>GOLDENPEAKS POLAND HOLDING LIMITED, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90564 (ARP)<br><br>(Jointly Administered) |

**NOTICE OF THE DEBTORS' RULE 2004 REQUEST FOR PRODUCTION OF DOCUMENTS TO CNBM RESEARCH INSTITUTE FOR ADVANCED GLASS MATERIALS GROUP CO., LTD.**

**To:** **CNBM Research Institute for Advanced Glass Materials Group Co., Ltd.**, No. 1047 Tushan Road, Bengbu, Anhui, People's Republic of China
c/o ArentFox Schiff LLP, Attn: Aram Ordubegian, Esq., Christopher K.S. Wong, Esq., and Sophia R. Wang, Esq., 555 South Flower Street, 43rd Floor, Los Angeles, California 90071 (aram.ordubegian@afslaw.com; christopher.wong@afslaw.com; sophia.wang@afslaw.com)

**PLEASE TAKE NOTICE THAT**, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), CNBM Research Institute for Advanced Glass Materials Group Co., Ltd. ("CNBM") is directed to produce the documents described in Schedule A hereto to the above-captioned debtors and debtors in possession (collectively, the "Debtors"), including Timber Renewable Energy sp. z o.o. ("TRE"), by and through their undersigned counsel, at the office of Pachulski Stang Ziehl & Jones LLP, 700 Louisiana Street, Suite 4500, Houston, TX 77002, Attn: Malhar S. Pagay (mpagay@pszjlaw.com), Steven W. Golden (sgolden@pszjlaw.com) and Benjamin L. Wallen (bwallen@pszjlaw.com), on or before October 9, 2026, or at such other time, place, and manner as

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GoldenPeaks. The location of Debtor GoldenPeaks Poland LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 801 Louisiana Street, Suite 368, Houston, TX 77002.

the parties may agree.

**PLEASE TAKE FURTHER NOTICE THAT**, by letter dated September 28, 2026, the Debtors demanded that CNBM produce no later than October 1, 2026, the documents described in **Schedule A** and preserve all documents, communications, and electronically stored information relating to the matters described therein. By letter dated October 1, 2026, CNBM's counsel acknowledged receipt of that demand, stated that CNBM was gathering the requested documents, and requested that the production deadline be extended to October 9, 2026. This Notice is served without prejudice to, and in furtherance of, the Debtors' September 28, 2026 demand, and the Debtors reserve all rights with respect thereto.

**PLEASE TAKE FURTHER NOTICE THAT**, on October 2, 2026, the Debtors attempted to confer as to a reasonable examination schedule and the set forth on **Schedule A** pursuant to Bankruptcy Local Rule 2004-1(c), but were unable to reach a final agreement with CNBM prior to the filing of this Notice. The Debtors' remain willing to continue to confer regarding this Notice, without prejudice to their rights, including *inter alia*, under Bankruptcy Rule 2004 and Bankruptcy Local Rule 2004-1.

**PLEASE TAKE FURTHER NOTICE THAT**, nothing in this Notice or in Schedule A hereto is intended to be, or shall be construed as, an admission of any fact or of the existence, validity, authenticity, enforceability, or effect of any instrument described herein, or a waiver of any right, claim, remedy, or defense of TRE or any other Debtor, including the Debtors' right to seek additional documents or testimony from CNBM or any other person pursuant to Bankruptcy Rule 2004, Bankruptcy Rules 7026 through 7037, or otherwise, and the Debtors' right to seek relief from the Bankruptcy Court with respect to the matters described in the Debtors' September 28, 2026 letter, all of which are expressly reserved.

Dated: October __, 2026

_______________________________
Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Steven W. Golden (SBT 24099681)
Benjamin L. Wallen (SBT 24102623)
PACHULSKI STANG ZIEHL & JONES LLP
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
Email: mwarner@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted pro hac vice)
Debra I. Grassgreen (admitted pro hac vice)
Malhar S. Pagay (pro hac vice pending)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
mpagay@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

I certify that on October __, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

______________________________________
Steven W. Golden

# SCHEDULE A

## THE DEBTORS' RULE 2004 REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO CNBM RESEARCH INSTITUTE FOR ADVANCED GLASS MATERIALS GROUP CO., LTD.

## INSTRUCTIONS

1. If any responsive Document is withheld or redacted under a claim of privilege, produce a privilege log that identifies each withheld or redacted Document and includes the following information for each such Document: (a) the date of the Document; (b) the type of Document; (c) the name of each author of the Document; (d) the name of each recipient of the Document; (e) a description of the subject matter of the Document or redacted portion; and (f) the specific privilege asserted as to the Document or redacted portion and the basis for the claim of privilege.

2. Documents produced electronically and electronically stored information ("ESI") should:

   a. be produced in accordance with the instructions at https://support.everlaw.com/hc/en-us/articles/360004962052-Standard-Format-for-Processed-Data;

   b. maintain family integrity;

   c. be performed with custodian-level de-duplication;

   d. produced with a DAT load file with the following metadata fields: Beginning Production Number, Ending Production Number, Beginning Attachment Number, End Attachment Number, Family ID, Page Count, Custodian, Original Location Path, Email Folder Path, Document Type, Doc Author, Doc Last Author, Comments, Categories, Revisions, File Name, File Size, MD5 Hash, Date Last Modified, Time Last Modified, Date Created, Time Created, Date Last Accessed, Time Last Accessed, Date Sent, Time Sent, Date Received, Time Received, To, From, CC, BCC, Email Subject, Path to Native, Path to Full Text, Original Time Zone; and

   e. processed in UTC and provide a metadata field indicating original time zone.

3. For any responsive Document that is written in whole or in part in a language other than English (including Chinese or Polish), produce the Document in its original language together with every English translation of such Document that exists in Your possession, custody, or control. Consistent with the Debtors' September 28, 2026 letter, the Debtors further request that You provide complete English translations of all Documents filed with, submitted to, or received from the Hefei Court in or in connection with the Hefei Proceeding.

4. These Requests call for the production of all responsive Documents within Your possession, custody, or control, wherever located, including Documents held by Your attorneys (including Beijing Yingke (Shanghai) Law Firm and ArentFox Schiff LLP), agents, representatives, consultants, banks, and CNBM Affiliates, and any other Person acting or purporting to act on Your behalf, whether or not such Documents are in Your physical possession.

5. Each Request shall be construed independently and not by reference to any other Request for the purpose of limitation. If any part of a Document is responsive to a Request, the entire Document shall be produced, subject to appropriate privilege redactions. Each draft and each non-identical copy of a Document shall be treated as a separate Document and produced separately.

6. If any Document responsive to any Request has been lost, destroyed, discarded, or is otherwise no longer available, identify the Document by date, author, recipient(s), and general subject matter, and state the date and circumstances of its loss, destruction, or disposition and the identity of each Person with knowledge thereof.

7. Unless otherwise stated in a specific Request, each Request covers the Relevant Period. If a Document predates the Relevant Period but is referenced in, or provides context necessary to understand, a Document within the Relevant Period, it shall be deemed responsive.

8. You are requested to preserve all Documents, Communications, and ESI Concerning the matters described in these Requests, including the Hefei Proceeding, the Stop-Payment Ruling,

the Side Contract, the Performance Guarantees, and the Demands, and to take reasonable steps to prevent the deletion, expiration, or loss of such materials.

9. These Requests are continuing in nature. If, after producing Documents in response to these Requests, You obtain or become aware of additional responsive Documents, You are requested to promptly produce such additional Documents.

10. In construing the Requests, the use of either the singular or plural should not be deemed a limitation. The use of the singular includes the plural, and vice versa.

11. In each Request, the words "and" and "or" are interchangeable and should be construed either disjunctively or conjunctively or both, as broadly as necessary to bring within the scope of each Request all information that might otherwise be construed to be outside the scope.

## DEFINITIONS

12. "Application" means the application filed by CNBM with the Hefei Court on or about September 15, 2026, seeking an order suspending payment under the Timber Performance Guarantee, as described in the Stop-Payment Ruling, together with all amendments and supplements thereto.

13. "Bankruptcy Cases" means the chapter 11 cases commenced by the Debtors on May 29, 2026, pending in the Bankruptcy Court and jointly administered under Case No. 26-90564 (ARP).

14. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

15. "CCB" means China Construction Bank Corporation, including without limitation its Anhui Branch (No. 2358 Yungu Road, Hefei, Anhui, People's Republic of China) and its Bengbu Branch, and each of its other branches, offices, officers, employees, agents, and representatives.

16. The terms "CNBM," "You," and "Your" mean CNBM Research Institute for Advanced Glass Materials Group Co., Ltd., with its registered office at No. 1047 Tushan Road, Bengbu, Anhui, People's Republic of China, and each of its current and former officers, directors,

employees, agents, representatives, and attorneys (including Beijing Yingke (Shanghai) Law Firm and ArentFox Schiff LLP), and any other Person acting or purporting to act on its behalf.

17. "CNBM Affiliate" means any Person that directly or indirectly controls, is controlled by, or is under common control with CNBM, and each of their respective officers, directors, employees, agents, representatives, and attorneys.

18. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, WeChat, DingTalk, Signal, Slack, Microsoft Teams, memoranda, letters, SWIFT messages, telecopies, telefaxes, telexes, conferences, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind. Requests for "Communication" include pictures or snapshots of any "Communication."

19. "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, analyzing, stating, referring to, dealing with, or in any way pertaining to the subject matter.

20. "Debtors" means GoldenPeaks Poland Holding Limited and each of its affiliated debtors and debtors in possession in the Bankruptcy Cases, including without limitation TRE and Whiskey.

21. "Demands" means each demand for payment presented by or on behalf of TRE under the Timber Performance Guarantee (including the demand received by CCB on or about September 9, 2026, and the further demand dated September 17, 2026) and each demand for payment presented by or on behalf of Whiskey under the Whiskey Performance Guarantee, together with all documents presented therewith.

22. The terms "Document" or "Documents" shall be synonymous in meaning and equal in scope to the usage of that term in Rule 34 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rules 7034 and 9016, and shall include writings, recordings, and photographs, as those terms are defined in Rule 1001 of the Federal Rules of Evidence, and shall include without limitation any writings, emails, letters and other correspondence with third parties, court filings, pleadings, applications, rulings, orders, SWIFT messages, bank notices, drawings, graphs, charts, photographs, sound recordings, images, internal reports and reports provided by CNBM to external parties, including any court or governmental entity or agency, and other data or data compilations located or stored on any electronic storage device; and any writing or graphic matter, however produced or reproduced, of any kind or description, whether sent or received, including originals, copies, drafts and both sides thereof, regardless of their author or origin, or however denominated by the recipient of these Requests. In all instances in which a Document, or a series of Documents, has been prepared on a periodic basis, the Document reflecting each such period is requested. "Documents" always includes Communications and ESI, whether so stated or not.

23. "GPC" means GoldenPeaks Capital Holding Ltd., a Maltese company with company registration number C94357, and any Person acting or purporting to act on its behalf.

24. "Hefei Court" means the Intermediate People's Court of Hefei, Anhui Province, People's Republic of China.

25. "Hefei Proceeding" means the proceeding before the Hefei Court captioned Case No. (2026) Wan 01 Xing Bao No. 1-1, including the Application, the Stop-Payment Ruling, any application for reconsideration, and any action, arbitration, or other proceeding commenced or to be commenced by CNBM in connection therewith, including any proceeding alleging guarantee fraud in connection with the Timber Performance Guarantee.

26. "M&G Parties" means Monteverdi & Gray Group Ltd and M+G Group Limited, and any Person acting or purporting to act on behalf of either of them.

27. "Performance Guarantees" means, collectively, the Timber Performance Guarantee and the Whiskey Performance Guarantee.

28. "Person" means and includes individuals as well as corporations, partnerships, unincorporated associations, limited liability companies, state-owned enterprises, trusts, firms, cooperatives, fictitious business names, courts, and government agencies, and their respective agents, representatives and employees.

29. The term "Relevant Period" for the purpose of these Requests shall mean the time period from January 1, 2025, until the date of Your response to these Requests and any subsequent supplementation of same.

30. "Side Contract" means the instrument dated on or about August 26, 2025, described in the Stop-Payment Ruling as a "Side Contract" among CNBM (as contractor), TRE (as project company), Spectris (as subcontractor), GPC (as guarantor), and the M&G Parties (as joint guarantors), in any and all forms and however denominated, together with all schedules, annexes, exhibits, amendments, supplements, and side letters thereto.

31. "Spectris" means Spectris Energy sp. z o.o., and any Person acting or purporting to act on its behalf.

32. "Stop-Payment Ruling" means the Civil Ruling of the Hefei Court dated September 17, 2026, in the Hefei Proceeding, directing CCB to suspend payment to TRE of EUR 5,122,607.40 under the Timber Performance Guarantee.

33. "Sub-EPC Contract" means the subcontract between CNBM and Spectris for the design, supply, construction and commissioning of the 142.40718 MW solar plant that is the subject of the Timber EPC Contract, described in the Stop-Payment Ruling as having been signed on or about August 26 or 27, 2025, together with all amendments, variations, and supplements thereto.

34. "Timber EPC Contract" means the EPC Contract for the Design, Supply, Construction and Commissioning of 142.40718 MW Solar Farms, dated April 21, 2025, by and among TRE, GPC, and CNBM, as amended, varied, or supplemented from time to time.

35. "Timber Performance Guarantee" means Performance Guarantee No. AHC02LG000005200, dated August 22, 2025, issued by CCB, Anhui Branch, in favor of TRE in the amount of EUR 5,122,607.40, subject to the ICC Uniform Rules for Demand Guarantees (URDG 758), and any amendment, extension, or replacement thereof.

36. "TRE" means Timber Renewable Energy sp. z o.o., with its registered seat at ul. Taneczna 18, 02-829 Warsaw, Poland (KRS No. 0000890774).

37. "Whiskey" means Whiskey Renewable Energy sp. z o.o., with its registered seat at ul. Taneczna 18, 02-829 Warsaw, Poland (KRS No. 0000891918).

38. "Whiskey EPC Contract" means the EPC Contract for the Design, Supply, Construction and Commissioning of 77.25510 MW Solar Farms, dated April 21, 2025, by and among Whiskey, GPC, and CNBM, as amended, varied, or supplemented from time to time.

39. "Whiskey Performance Guarantee" means Performance Guarantee No. AHC02LG000007400, dated January 16, 2026, issued by CCB, Anhui Branch, in favor of Whiskey in the amount of EUR 2,816,170.20, subject to the ICC Uniform Rules for Demand Guarantees (URDG 758), and any amendment, extension, or replacement thereof.

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

All Documents filed with, submitted to, or received from the Hefei Court in or in connection with the Hefei Proceeding, including without limitation:

a. the Application, and any amendment or supplement thereto;

b. all evidence, exhibits, witness statements, declarations, legal opinions, translations, and other materials submitted to the Hefei Court in support of the Application;

c. all Documents Concerning the security provided by CNBM to the Hefei Court in

connection with the Application, including the bank deposit of RMB 40,032,664.57 referenced in the Stop-Payment Ruling;

d. the Stop-Payment Ruling and every other ruling, decision, notice, order, docketing or acceptance record, or other Document issued by the Hefei Court in the Hefei Proceeding; and

e. all correspondence and other Communications between CNBM (or its counsel) and the Hefei Court Concerning the Hefei Proceeding.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents Concerning the service, delivery, or provision of notice (or the absence thereof) of the Application, the Stop-Payment Ruling, or any other Document in the Hefei Proceeding upon TRE, any other Debtor, or their respective counsel, including Documents sufficient to show the date and manner of any such service, delivery, or notice.

**REQUEST FOR PRODUCTION NO. 3:**

The Side Contract, in fully executed form, together with all schedules, annexes, exhibits, amendments, supplements, and side letters thereto.

**REQUEST FOR PRODUCTION NO. 4:**

All drafts of the Side Contract, and all Documents and Communications Concerning the negotiation, preparation, execution, delivery, or performance of the Side Contract, including without limitation Communications between CNBM (or any CNBM Affiliate) and TRE, Spectris, GPC, the M&G Parties, or any Person acting or purporting to act on behalf of any of them.

**REQUEST FOR PRODUCTION NO. 5:**

Any other side letter, side agreement, side contract, or similar instrument between or among CNBM

(or any CNBM Affiliate), on the one hand, and TRE, Whiskey, GPC, Spectris, the M&G Parties, or any other Debtor or affiliate of a Debtor, on the other hand, in each case in final, fully executed form and together with all schedules, annexes, exhibits, amendments, and supplements thereto, and all drafts and Communications Concerning their negotiation and execution.

**REQUEST FOR PRODUCTION NO. 6:**

All Communications between CNBM (or its counsel or any CNBM Affiliate) and CCB, or any other bank or financial institution, Concerning the Demands or the Performance Guarantees, including without limitation:

a. any notice given by CCB to CNBM of any Demand, and any Documents transmitted by CCB to CNBM in connection therewith;

b. any instruction, request, objection, consent, or other direction given by CNBM to CCB Concerning the payment, refusal, suspension, or examination of any Demand;

c. any Communication Concerning the Application, the Hefei Proceeding, or the Stop-Payment Ruling, including any Communication Concerning CCB's compliance therewith or CCB's notification of mBank S.A., TRE, or Whiskey; and

d. any Communication Concerning the extension, renewal, amendment, or replacement of either Performance Guarantee.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents Concerning any application, petition, or request, whether filed, contemplated, or threatened, for stop-payment, suspension of payment, injunctive, or similar relief in respect of the Whiskey Performance Guarantee or any other guarantee, bond, letter of credit, or undertaking issued in favor of any Debtor, including without limitation all drafts of any such application, all Communications with any court or counsel Concerning any such application, and all Communications with CCB or any other bank Concerning any such application.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents Concerning any action, arbitration, application for reconsideration, or other proceeding commenced, contemplated, or threatened by CNBM against TRE, Whiskey, any other Debtor, or CCB Concerning the Demands, the Performance Guarantees, or the Side Contract, including without limitation any proceeding alleging guarantee fraud, and any proceeding commenced or to be commenced for the purpose of maintaining the Stop-Payment Ruling in effect.

**REQUEST FOR PRODUCTION NO. 9:**

The Sub-EPC Contract, in fully executed form, together with all schedules, annexes, exhibits, amendments, variations, and supplements thereto.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications which You contend support the assertion that the initiation and prosecution of the Hefei Proceeding did not violate the automatic stay contained in 11 U.S. C. § 362.

# EXHIBIT D

ArentFox Schiff

**ArentFox Schiff LLP**
555 S. Flower St.
43rd Floor
Los Angeles, CA 90071

213.629.7400 **MAIN**
213.629.7401 **FAX**

afslaw.com

**Aram Ordubegian**
Los Angeles Managing Partner
213.629.7410 **DIRECT**
aram.ordubegian@afslaw.com

**Christopher K.S. Wong**
Partner
213.443.7512 **DIRECT**
christopher.wong@afslaw.com

**Sophia R. Wang**
Associate
213.443.7577 **DIRECT**
sophia.wang@afslaw.com

October 2, 2026

**VIA EMAIL**

Malhar S. Pagay, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Fl.
Los Angeles, California 90067-4003
mpagay@pszjlaw.com

Re: In re GoldenPeaks Poland Holding Limited, et al., Case No. 26-90564 (ARP) (Bankr. S.D. Tex.) (Jointly Administered); Response to Letter Dated October 2, 2026

Dear Mr. Pagay:

We write on behalf of CNBM Research Institute for Advanced Glass Materials Group Co., Ltd. ("CNBM") in response to your letter dated October 2, 2026 (the "October 2 Letter"). Capitalized terms not defined herein have the meanings ascribed to them in our prior correspondence.

**CNBM Has Not Violated the Automatic Stay**

CNBM unequivocally denies that it has violated the automatic stay under 11 U.S.C. § 362. The October 2 Letter's characterization of the October 1, 2026 response (the "October 1 Letter") as failing to deny a stay violation is wrong. The October 1 Letter expressly disclaimed any admission of any fact, allegation, or characterization in the September 28, 2026 letter (the "September 28 Letter"), and TRE's attempt to mischaracterize our response into an admission is contrary to the express terms of the October 1 Letter and is rejected. CNBM's position is clear: the September 28 Letter's accusation is unfounded; neither CNBM's application to the Hefei Intermediate People's Court (Case No. (2026) Wan 01 Xing Bao No. 1-1) (the "Application") nor the resulting Stop-Payment Ruling issued on September 17, 2026 (the "Ruling") violates the automatic stay under 11 U.S.C. § 362(a)(1) or (a)(3), and CNBM reserves all rights and defenses with respect thereto and the claims made in the September 28 Letter and/or the October 2 Letter.

**TRE's Demanded Timeline Is Unreasonable**

As previously explained, China is observing its National Day holiday from October 1 through October 7, 2026 (the "National Day Holiday")—a fact TRE acknowledges in the October 2 Letter. We received the October 2 Letter at approximately 10:39 a.m. (prevailing Central Time) today, Friday, October 2, 2026. In China, where CNBM is located, it was then about midnight, Friday, October 2, 2026. The Letter nonetheless demands a response by 5:00 p.m. (prevailing Central Time) today, which is 6:00 a.m. Saturday in China. In other words, the entire response window, barely five hours, falls overnight for our client and closes before its business day can begin. Under that timetable, we cannot confer with our client at all, let alone review the issues raised with them or obtain the instructions we need to respond. A deadline that rules out any consultation between counsel and client is not reasonable.

Moreover, CNBM's offices are closed, and its personnel and Chinese counsel are unavailable throughout the National Day Holiday. It has been impossible for us to review and investigate TRE's document requests with CNBM, and equally impossible for CNBM to evaluate or assert any objections to which it may be entitled—including objections based on privilege, scope, burden, relevance, confidentiality, and foreign-law restrictions—until CNBM's personnel return to the office. A demand for "unequivocal written acceptance" of TRE's terms within hours, together with production of documents by 12:00 p.m. CT on Monday, October 5, 2026 during the National Day Holiday is unreasonable and appears designed to manufacture a purported "refusal" where none exists.

CNBM understands the seriousness of TRE's allegations but does not accept the self-imposed and unreasonable timeline. CNBM cannot and will not accept the proposed terms by 5:00 p.m. CT today, October 2, 2026. To be clear, that is not a refusal to engage in the production process; it is simply a practical impossibility. Counsel must confer with CNBM before responding substantively to the production requests and their attendant conditions. CNBM will respond regarding production promptly after conferring with CNBM's personnel upon their return from the National Day Holiday.

**The Rule 2004 Meet-and-Confer**

CNBM does not agree that this exchange of correspondence satisfies the parties' obligation to meet and confer under Bankruptcy Local Rule 2004-1(c) regarding the draft *Notice of the Debtors' Rule 2004 Request for Production of Documents to CNBM Research Institute for Advanced Glass Materials Group Co., Ltd.* attached to the October 2 Letter as Exhibit A (the "Rule

2004 Notice"). CNBM has had no opportunity whatsoever to review the draft Rule 2004 Notice or its ten enumerated requests. The 2004 Notice is premature, and CNBM reserves all rights and objections to the Rule 2004 Notice and the requests set forth therein. CNBM's counsel is prepared to meet and confer in good faith regarding these matters promptly after CNBM's personnel return to the office.

**Reservation of Rights**

This letter is written without prejudice to, and CNBM expressly reserves, all of its rights, claims, remedies, and defenses, whether at law, in equity, under the Bankruptcy Code, any order of the Bankruptcy Court, or any other applicable domestic or foreign law, or otherwise, including, without limitation, all rights with respect to its claims and objections in the Chapter 11 Cases and the right to request any relief from the Bankruptcy Court or any other court of competent jurisdiction. Nothing in this letter, or in the October 1 Letter, is intended to be, or shall be construed as, an admission of any fact, allegation, or characterization set forth in the September 28 Letter or the October 2 Letter, a waiver of any right, claim, remedy, or defense, or consent to the jurisdiction of any court for any purpose other than as expressly provided by law.

Sincerely,

Aram Ordubegian

AO

**cc:** (via email)
Richard M. Pachulski, Esq.
Debra I. Grassgreen, Esq.
Steven W. Golden, Esq.
Benjamin L. Wallen, Esq.
Pachulski Stang Ziehl & Jones LLP

James E. Britton, Esq. (ArentFox Schiff LLP)
Julia Zhu-Morelli, Esq. (ArentFox Schiff LLP)

# EXHIBIT E

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>GOLDENPEAKS POLAND HOLDING LIMITED, *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90564 (ARP)<br><br>(Jointly Administered)<br><br>Re: Docket No. 820 |

**STIPULATION AND AGREED ORDER RESOLVING THE DEBTORS' RULE 2004 REQUEST FOR PRODUCTION OF DOCUMENTS TO CNBM RESEARCH INSTITUTE FOR ADVANCED GLASS MATERIALS GROUP CO., LTD.**

This stipulation and agreed order (the "Stipulation") is entered into by and between the above-captioned debtors and debtors in possession (the "Debtors"), including Timber Renewable Energy sp. z o.o. ("TRE"), on the one hand, and CNBM Research Institute for Advanced Glass Materials Group Co., Ltd. ("CNBM" and, together with the Debtors, the "Parties"), on the other hand, by and through their respective undersigned counsel. The Parties hereby stipulate and agree as follows:

**RECITALS**

**WHEREAS**, on May 29, 2026 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), which cases are being jointly administered under case no. 26-90564.

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GoldenPeaks. The location of Debtor GoldenPeaks Poland LLC's principal place of business and the Debtors' service address in these Chapter 11 cases is 801 Louisiana Street, Suite 368, Houston, TX 77002.

**WHEREAS**, by letter dated September 28, 2026 (the "September 28 Letter"), the Debtors, through their counsel, requested that CNBM produce certain documents concerning, among other things, the application filed by CNBM with the Intermediate People's Court of Hefei, Anhui Province, People's Republic of China, in the proceeding captioned Case No. (2026) Wan 01 Xing Bao No. 1-1, and the ruling issued by that court on September 17, 2026, in respect of Performance Guarantee No. AHC02LG000005200.

**WHEREAS**, by letter dated October 1, 2026, CNBM, through its counsel, stated that it was gathering the documents requested in the September 28 Letter and requested that the deadline for their production be extended to October 9, 2026.

**WHEREAS**, on October 2, 2026, the Debtors filed the *Notice of the Debtors' Rule 2004 Request for Production of Documents to CNBM Research Institute for Advanced Glass Materials Group Co., Ltd.* [Docket No. 820] (the "Notice"), which directs CNBM to produce the documents described in Schedule A thereto (the "Requested Documents") on or before October 16, 2026.[2]

**WHEREAS**, on October 5, 2026, counsel for the Parties conferred regarding the Notice via videoconference, in addition to the earlier correspondences, pursuant to Bankruptcy Local Rule 2004-1(c).

**WHEREAS**, the Parties have agreed to resolve the Notice on the terms set forth in this Stipulation.

**NOW, THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS:**

1. CNBM shall produce to the Debtors all Requested Documents, consisting of all Documents within CNBM's possession, custody, or control that are responsive to Request for

---

[2] Capitalized terms used but not otherwise defined in this Stipulation shall have the meanings ascribed to them in the Notice, including Schedule A thereto.

Production Nos. 1 through 10 set forth in Schedule A to the Notice, construed in accordance with the Instructions and Definitions set forth therein, on or before 5:00 p.m. (prevailing Central Time) on October 9, 2026 (the "Production Deadline"). The Production Deadline shall supersede and replace the production date of October 16, 2026, set forth in the Notice, and the Notice shall be deemed resolved by this Stipulation.

2. Without limiting paragraph 1 of this Stipulation, and consistent with Instruction 3 of Schedule A to the Notice, CNBM shall produce by the Production Deadline (a) each Requested Document that is written in whole or in part in a language other than English, in its original language, together with every English translation of such Requested Document within CNBM's possession, custody, or control; and (b) complete English translations of all Documents filed with, submitted to, or received from the Hefei Court in or in connection with the Hefei Proceeding.

3. CNBM shall produce the Requested Documents electronically to the Debtors' undersigned counsel, Malhar S. Pagay (mpagay@pszjlaw.com), Steven W. Golden (sgolden@pszjlaw.com), and Benjamin L. Wallen (bwallen@pszjlaw.com), by secure file transfer or such other means as counsel for the Parties may agree in writing (including by electronic mail), and in accordance with Instruction 2 of Schedule A to the Notice; *provided*, *however*, that counsel for the Parties may agree in writing (including by electronic mail) to an alternative production format, but no such agreement shall extend the Production Deadline.

4. To the extent CNBM withholds or redacts any Requested Document on the basis of the attorney-client privilege, the work-product doctrine, or any other privilege or protection, CNBM shall serve on the Debtors' undersigned counsel, by the Production Deadline, a privilege log that complies with Instruction 1 of Schedule A to the Notice.

5. Contemporaneously with its production, CNBM shall deliver to the Debtors' undersigned counsel a declaration pursuant to 28 U.S.C. § 1746, executed by an authorized officer of CNBM, stating that (a) CNBM has conducted a reasonable and diligent search for the Requested Documents, including Documents held by the Persons described in Instruction 4 of Schedule A to the Notice; (b) CNBM has produced all Requested Documents located in that search, other than Documents identified on the privilege log described in paragraph 4 of this Stipulation; and (c) with respect to each Request for Production, if any, as to which CNBM has located no responsive Documents, that no such Documents exist within CNBM's possession, custody, or control.

6. CNBM waives, and shall not file or assert, any objection to, motion to quash, or motion for a protective order with respect to, the Notice or the Requested Documents, including any objection premised on the timing of the Notice or the sufficiency of any conference preceding the filing of the Notice under Bankruptcy Local Rule 2004-1, or on the laws of any jurisdiction other than the United States; *provided*, *however*, that CNBM may withhold or redact Requested Documents on the basis of privilege in accordance with paragraph 4 of this Stipulation and subject to the Debtors' rights to dispute such designations.

7. CNBM's obligations under this Stipulation are continuing. If, after the Production Deadline, CNBM locates or obtains any additional Requested Document, CNBM shall produce such Requested Document to the Debtors' undersigned counsel promptly, and in any event within two (2) business days thereafter. CNBM shall preserve all Documents, Communications, and electronically stored information Concerning the matters described in the Notice, consistent with Instruction 8 of Schedule A to the Notice.

8. Pursuant to Rule 502(d) of the Federal Rules of Evidence, the production of a privileged or protected Document in connection with this Stipulation shall not, by itself, constitute

a waiver of any privilege or protection in the Bankruptcy Cases or in any other federal or state proceeding. Upon written notice from CNBM identifying a Document produced in connection with this Stipulation as privileged or protected, the Debtors shall promptly return, sequester, or destroy such Document, without prejudice to the Debtors' right to challenge the claim of privilege or protection before the Bankruptcy Court.

9. Nothing in this Stipulation shall constitute or be construed as (a) an admission by any Party of any fact, liability, or legal position; (b) a waiver or limitation of the Debtors' rights to seek additional documents, testimony, or examination from CNBM or any other Person pursuant to Rules 2004, 7026 through 7037, of the Federal Rules of Bankruptcy Procedure, or otherwise; (c) a waiver or limitation of any right, claim, or remedy of TRE or any other Debtor with respect to the Hefei Proceeding, the Stop-Payment Ruling, the Performance Guarantees, or the Side Contract, including any right to seek enforcement of the automatic stay under section 362 of the Bankruptcy Code, damages, or sanctions; or (d) relief from, modification of, or a waiver of the automatic stay under section 362 of the Bankruptcy Code, or consent by any Debtor to the commencement or continuation of the Hefei Proceeding or the Stop-Payment Ruling. Except as expressly provided in paragraph 6 of this Stipulation, CNBM reserves all of its rights, claims, and defenses, including the right to request relief from the Bankruptcy Court.

10. Notwithstanding anything in the Federal Rules of Bankruptcy Procedure or the Bankruptcy Code to the contrary, this Stipulation shall become effective immediately upon its entry.

11. Each person who executes this Stipulation on behalf of a Party represents that he or she is duly authorized to do so on behalf of such Party. This Stipulation may be executed in

counterparts and by electronic signature, each of which shall be deemed an original and all of which together shall constitute one instrument.

12. The Bankruptcy Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

Dated: _______________, 2026

______________________________________
ALFREDO R. PÉREZ
UNITED STATES BANKRUPTCY JUDGE

[*Signature Page Follows*]

**STIPULATED AND AGREED TO BY:**

Dated: October __, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/*

Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Steven W. Golden (SBT 24099681)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
mwarner@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
Malhar S. Pagay (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
mpagay@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**ARENTFOX SCHIFF LLP**

*/s/ [__________]*

Aram Ordubegian (*pro hac vice*)
Christopher K.S. Wong (*pro hac vice*)
Sophia R. Wang (Texas Bar No. 24147006)
555 South Flower Street, 43rd Floor
Los Angeles, CA 90071
Telephone: (213) 629-7400
Facsimile: (213) 629-7401
aram.ordubegian@afslaw.com
christopher.wong@afslaw.com
sophia.wang@afslaw.com

*Counsel to CNBM Research Institute for Advanced Glass Materials Group Co., Ltd.*

## CERTIFICATE OF SERVICE

I certify that on October __, 2026, a true and correct copy of the foregoing document was filed via the Court's CM/ECF system and served on all parties receiving notice via the CM/ECF system who have filed a notice of appearance in this matter.

*/s/*

Benjamin L. Wallen

# EXHIBIT F

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>GOLDENPEAKS POLAND HOLDING LIMITED, *et al*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90564 (ARP)<br><br>(Jointly Administered) |

**DECLARATION OF SHAN HE REGARDING TRANSLATION OF CIVIL RULING OF THE INTERMEDIATE PEOPLE'S COURT OF HEFEI CITY, ANHUI PROVINCE, CASE NO. (2026) WAN 01 XING BAO NO. 1-1**

I, Shan He (何杉), pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of eighteen. I am not a party to the above-captioned chapter 11 cases and have no interest in their outcome. The facts set forth in this declaration (this "Declaration") are based on my personal knowledge, and if called upon to testify, I could and would testify competently to them.

2. I am a professional Mandarin Chinese–English interpreter and translator with more than twelve years of professional experience. I hold a Master of Arts in Translation and Interpretation from the Middlebury Institute of International Studies at Monterey (2014) and a Bachelor of Arts in English Language and Literature from Beijing Language and Culture University (2012). Mandarin Chinese is my native language, and I am fluent in English. I provide translation and interpretation services through my firm, Smooth Sail LLC, in the San Francisco Bay Area.

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GoldenPeaks. The location of Debtor Goldenpeaks Poland LLC's principal place of business and the Debtors' service address in these Chapter 11 cases is 801 Louisiana Street, Suite 368, Houston, TX 77002.

3. I am an Arizona Credentialed Court Interpreter (Tier 1), and I am a provisionally qualified Mandarin court interpreter in the Superior Courts of California for the Counties of Santa Clara, Alameda, and San Mateo. I have passed the written examination for California Court Interpreter Certification, and the certification process is in progress. I regularly interpret in proceedings before the United States Department of Justice, Executive Office for Immigration Review. From 2017 through 2024, as Interpreter and Translator Manager at Faraday Future, I led the legal translation and interpretation work for a California bankruptcy matter and translated and interpreted in connection with corporate, bankruptcy, securities, and other legal matters. A true and correct copy of my current curriculum vitae is attached hereto as **Exhibit 3**.

4. Pachulski Stang Ziehl & Jones LLP engaged me to translate from Chinese into English the Chinese-language document attached hereto as **Exhibit 1**, which is a Civil Ruling (民事裁定书) of the Intermediate People's Court of Hefei City, Anhui Province, People's Republic of China, Case No. (2026) Wan 01 Xing Bao No. 1-1 ((2026)皖01行保1号之一), dated September 17, 2026, together with its appendix of relevant legal provisions (the "Ruling"). Exhibit 1 is the document that was provided to me for translation on October 2, 2026.

5. Attached hereto as **Exhibit 2** is the English translation of the Ruling that I prepared, which I completed on October 5, 2026.

6. The English translation attached as Exhibit 2 is a true, complete, and accurate translation of the Chinese-language Ruling attached as Exhibit 1, to the best of my knowledge, skill, and ability. In preparing the translation, I rendered the Chinese text faithfully and did not add to, omit from, or alter the meaning of the original. The two explanatory notes I added are identified in Exhibit 2 as "Translator note." I note in particular that (a) I rendered the applicant's Chinese-language name, 中建材玻璃新材料研究院集团有限公司, literally as "China National Building

Materials Glass New Material Research Institute Group Co., Ltd."; and (b) the guarantee number appears in the Chinese original as "AHC02LG0000005200," and I reproduced it in Exhibit 2 exactly as it appears in the original.

7. I am competent to translate from Chinese into English and did so impartially.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 7, 2026, at San Jose, California.

*/s/ Shan He*
Shan He

# EXHIBIT 1

# 中华人民共和国
# 安徽省合肥市中级人民法院
# 民事裁定书

（2026）皖01行保1号之一

申请人：中建材玻璃新材料研究院集团有限公司，住所地安徽省蚌埠市涂山路1047号，统一社会信用代码913403004852224289。

法定代表人：陶立纲，董事长。

委托诉讼代理人：张晨，北京盈科（上海）律师事务所律师。

委托诉讼代理人：徐也轩，北京盈科（上海）律师事务所律师。

被申请人：Timber可再生能源有限责任公司（Timber Renewable Energy sp. z o. o.），住所地波兰共和国华沙市塔内奇纳街18号，02-829华沙(WARSAW, POLAND, Ul. Taneczna 18, 02-829 Warsaw)，国家法院登记册编号0000890774。

被申请人：中国建设银行股份有限公司安徽省分行，住所地安徽省合肥市云谷路2358号，统一社会信用代码91340000610300174F。

负责人：关雁翎。

申请人中建材玻璃新材料研究院集团有限公司（以下简称中建材玻璃研究院公司）与被申请人Timber可再生能源有限责任公

司（以下简称Timber能源公司）、中国建设银行股份有限公司安徽省分行（以下简称建设银行安徽省分行）申请中止支付保函项下款项一案，本院于2026年9月15日立案后，依法组成合议庭进行了审查。

申请人中建材玻璃研究院公司于2026年9月15日以保函欺诈为由向本院申请：裁定建设银行安徽省分行中止支付编号为AHC02LG0000005200履约保函项下，受益人为Timber能源公司索兑款项5,122,607.40欧元，折合人民币40,032,664.57元（按2026年9月14日1欧元兑7.8149元人民币的汇率计算）。

经本院审查初步查明：2025年4月21日，中建材玻璃研究院公司作为承包方与业主方Timber能源公司、业主方母公司GoldenPeaks Capital Holding Ltd.（以下简称GPC）就位于波兰的142.40718MW太阳能电站建设工程签订《EPC合同》。

2025年8月27日，中建材玻璃研究院公司作为总承包商与Spectris Energy sp.z o.o（以下简称Spectris能源公司）签署《EPC分包合同》(SUBEPC合同)，由Spectris担任该项目的分包商。

2025年8月26日，中建材玻璃研究院公司(承包商)与Timber能源公司（项目公司）、Spectris能源公司（分包商）、GPC（担保人）以及MONTEVERDI & GRAY GROUP LTD、M+G Group Limited（联合担保人）共同签署了《附加协议》(《Side Contract》)。该协议记载，项目公司、担保人与承包商于2025年4月21日签署关于共计142.40718MW光伏电站的设计、供货和施工调试的EPC合同（EPC合同）；承包商与分包商于2025年8月26日签署关于光伏

电站共计 142.40718MW的设计、供货和施工调试的EPC合同及后续变更（SUBEPC合同）；各方均充分知悉和了解EPC合同和SUBEPC合同的内容。协议第 1 条约定：“联合担保人、担保人及项目公司同意承担与履约保函和质保保函有关的任何费用。此外，联合担保人、担保人及项目公司未能预见履约保函或质保保函要被执行，但在极少数情况下不得不被执行时，由联合担保人、担保人和/或项目公司全额承担有关付款以及全部费用，并纳入担保文件的担保范围。”第 3 条约定：“联合担保人、担保人、项目公司和分包商同意放弃其EPC合同和 SUBEPC合同中向承包商提起任何工程索赔的权利，包括但不限于基于工期、履约保函、质保保函、母公司担保和直接协议索赔的权利（组件的采购责任仍是承包商的）。如联合担保人、担保人、项目公司和/或分包商就EPC合同和SUBEPC合同中延期违约责任和性能保证条款向承包商提起索赔，承包商有权主张不超过 EPC合同金额 100%的违约金。放弃该权利不包括分包商向承包商索取其从担保人或项目公司处已获得的款项的权利。联合担保人、担保人、项目公司和分包商同意，承包商会将除组件采购外的剩余全部工作分包给分包商。为避免疑义，分包商应承担组件自出厂后至项目现场的运输工作以及由此产生的相关义务。”第 13 条约定：“尽管存在与之相反的约定，本附加协议的效力应优先于EPC合同、SUBEPC合同以及双方签署的任何其他协议或文件。联合扣保人承认并同意，如果联合担保人、担保人、项目公司或分包商中的任何一方未能履行其在本附加协议项下的义务，承包商有权根据担保文件的规定执行担保文件。”

另查明：2025 年 8 月 22 日，建设银行安徽省分行以Timber能源公司为受益人，开具编号为AHC02LG0000005200 担保金额为5,122,607.40 欧元履约保函，到期日为 2026 年 9 月 30 日。该保函中，建设银行安徽省分行作出不可撤销地承诺，在收到受益人首次书面索赔书后五个营业日内支付不超过 5,122,607.40 欧元的任何金额。

2026 年 9 月 9 日，建设银行安徽省分行收到Timber能源公司就案涉履约保函的索赔书，要求支付金额 5,122,607.40 欧元。建设银行安徽省分行遂通知中建材玻璃研究院公司。

本案审查过程中，中建材玻璃研究院公司称截至 2026 年 9 月16 日，建设银行安徽省分行未就案涉保函项下款项予以付款。

中建材玻璃研究院公司以在中国农业发展银行蚌埠市分行20334039900100000456261 账户内的银行存款人民币40,032,664.57 元向本院提供担保。

本院经审查认为，本案系申请人申请中止支付保函项下款项的案件。依据《最高人民法院关于审理独立保函纠纷案件若干问题的规定》(以下简称《独立保函若干规定》)第十三条、第十六条、第十八条之规定，独立保函的申请人发现有保函欺诈情形的，可以在提起诉讼或申请仲裁前，向开立人住所地具有管辖权的人民法院申请中止支付独立保函项下的款项。人民法院受理止付申请后，可以就基础合同与保函相关的内容以及履行情况进行必要、有限的审查，以利于判断止付申请的理由是否成立。本案中由建设银行安徽省分行开立的编号AHC02LG0000005200 履约保函属于

《独立保函若干规定》第三条规定的独立保函。现中建材玻璃研究院公司以保函欺诈为由申请对上述独立保函予以止付，案涉保函开立人所在地为安徽省合肥市，故本院对本案具有管辖权。

关于本案的法律适用。依据《独立保函若干规定》第二十二条之规定，对于建设银行安徽省分行开立的编号AHC02LG0000005200履约保函的止付保全程序，应当适用中华人民共和国法律进行审查。

需要说明的是，独立保函独立于基础合同，具备“见索即付”的基本特征，但是针对独立保函的独立性，国际惯例和相关法律同时又确立了“欺诈例外”的原则，使得在符合特定条件的索兑不受保函独立于基础交易原则的制约，即在保函受益人明知其不具备保函项下款项的付款请求权而仍提出恶意索款要求的情况下，开立人不应履行保函项下的付款义务，保函的独立性归于无效，上述情形构成保函独立性原则的例外。依据《独立保函若干规定》第十二条、第十四条、第十八条规定，在涉及独立保函是否涉嫌欺诈的情况下，应当对本案基础交易的事实作有限审查。按照上述规定，在受理当事人提出的独立保函欺诈纠纷之前，对于相应的索兑请求是否构成独立保函欺诈，不进行终局性的司法判断，仅根据案件情形判断是否存在独立保函欺诈的高度可能性。即，本院在审查中止支付保函项下款项中仅进行初步审查，作出的处理仅为阶段性意见，不影响后续当事人如提出独立保函欺诈纠纷诉讼中经过实体审理后的最终判断。

本案中，中建材玻璃研究院公司与Timber能源公司等签订《附

加协议》，约定Timber能源公司等同意放弃其EPC合同和SUBEPC合同中向中建材玻璃研究院公司提起任何工程索赔的权利。同时明确附加协议的效力应优先于EPC合同、SUBEPC合同以及双方签署的任何其他协议或文件。此情况下，Timber能源公司仍向建设银行安徽省分行提出履约保函的索兑申请，高度可能构成《独立保函若干规定》第十二条第五项规定的"受益人明知其没有付款请求权仍滥用该权利的其他情形"。同时，本案情况紧急，如不立即采取止付措施，将给止付申请人中建材玻璃研究院公司的合法权益造成难以弥补的损害。中建材玻璃研究院公司已向本院提供了足以弥补被申请人因止付可能遭受损失的担保。中建材玻璃研究院公司申请裁定建设银行安徽省分行中止支付编号AHC02LG0000005200履约保函项下的款项，于法有据，本院予以支持。

综上，中建材玻璃研究院公司的申请符合法律规定。依照《中华人民共和国民事诉讼法》第一百五十七条第一款第十一项、《最高人民法院关于审理独立保函纠纷案件若干问题的规定》第三条、第十二条第五项、第十三条、第十四条、第十六条、第十八条之规定，裁定如下:

中国建设银行股份有限公司安徽省分行中止向Timber可再生能源有限责任公司（Timber Renewable Energy sp. z o. o.）支付编号为AHC02LG0000005200履约保函项下款项5,122,607.40欧元（折合人民币40,032,664.57元，按2026年9月14日1欧元兑7.8149元人民币的汇率计算）

案件申请费 5000 元，由中建材玻璃新材料研究院集团有限公司负担。

本裁定立即开始执行。

如对本裁定有异议，可以自收到裁定书之日起十日内向本院申请复议一次。复议期间不停止裁定的执行。

审 判 长　刘付兴
审 判 员　万庆农
审 判 员　张　莹

二〇二六年九月十七日

书 记 员　周　涛

附：相关法律条文

《中华人民共和国民事诉讼法》

第一百五十七条 裁定适用于下列范围：

……（十一）其他需要裁定解决的事项。

《最高人民法院关于审理独立保函纠纷案件若干问题的规定》

第三条 保函具有下列情形之一，当事人主张保函性质为独立保函的，人民法院应予支持，但保函未载明据以付款的单据和最高金额的除外：

（一）保函载明见索即付；

（二）保函载明适用国际商会《见索即付保函统一规则》等独立保函交易示范规则；

（三）根据保函文本内容，开立人的付款义务独立于基础交易关系及保函申请法律关系，其仅承担相符交单的付款责任。

当事人以独立保函记载了对应的基础交易为由，主张该保函性质为一般保证或连带保证的，人民法院不予支持。

当事人主张独立保函适用民法典关于一般保证或连带保证规定的，人民法院不予支持。

第十二条 具有下列情形之一的，人民法院应当认定构成独立保函欺诈：

（一）受益人与保函申请人或其他人串通，虚构基础交易的；

（二）受益人提交的第三方单据系伪造或内容虚假的；

（三）法院判决或仲裁裁决认定基础交易债务人没有付款或

赔偿责任的;

（四）受益人确认基础交易债务已得到完全履行或者确认独立保函载明的付款到期事件并未发生的;

（五）受益人明知其没有付款请求权仍滥用该权利的其他情形。

第十三条 独立保函的申请人、开立人或指示人发现有本规定第十二条情形的，可以在提起诉讼或申请仲裁前，向开立人住所地或其他对独立保函欺诈纠纷案件具有管辖权的人民法院申请中止支付独立保函项下的款项，也可以在诉讼或仲裁过程中提出申请。

第十四条 人民法院裁定中止支付独立保函项下的款项，必须同时具备下列条件:

（一）止付申请人提交的证据材料证明本规定第十二条情形的存在具有高度可能性;

（二）情况紧急，不立即采取止付措施，将给止付申请人的合法权益造成难以弥补的损害;

（三）止付申请人提供了足以弥补被申请人因止付可能遭受损失的担保。

止付申请人以受益人在基础交易中违约为由请求止付的，人民法院不予支持。

开立人在依指示开立的独立保函项下已经善意付款的，对保障该开立人追偿权的独立保函，人民法院不得裁定止付。

第十六条 人民法院受理止付申请后，应当在四十八小时内作

出书面裁定。裁定应当列明申请人、被申请人和第三人，并包括初步查明的事实和是否准许止付申请的理由。

裁定中止支付的，应当立即执行。

止付申请人在止付裁定作出后三十日内未依法提起独立保函欺诈纠纷诉讼或申请仲裁的，人民法院应当解除止付裁定。

第十八条 人民法院审理独立保函欺诈纠纷案件或处理止付申请，可以就当事人主张的本规定第十二条的具体情形，审查认定基础交易的相关事实。

# EXHIBIT 2

**PEOPLE'S REPUBLIC OF CHINA**

**CIVIL RULING OF THE INTERMEDIATE PEOPLE'S COURT OF HEFEI CITY, ANHUI PROVINCE**

Case No. (2026) Wan[1] 01 Xing Bao[2] No. 1-1

Applicant: China National Building Materials Glass New Material Research Institute Group Co., Ltd., with its registered address at No. 1047 Tushan Road, Bengbu City, Anhui Province, Unified Social Credit Code 913403004852224289.

Legal Representative: Tao, Ligang, Chairman of the Board.

Authorized Litigation Representative: Zhang, Chen, Attorney at Law, Beijing Yingke (Shanghai) Law Firm.

Authorized Litigation Representative: Xu, Yexuan, Attorney at Law, Beijing Yingke (Shanghai) Law Firm.

Respondent: Timber Renewable Energy sp. z o.o., with its registered address at 18 Taneczna Street, 02-829 Warsaw, Republic of Poland (WARSAW, POLAND, Ul. Taneczna 18, 02-829 Warsaw), National Court Register No. 0000890774.

Respondent: China Construction Bank Corporation, Anhui Branch, with its registered address at No. 2358 Yungu Road, Hefei City, Anhui Province, Unified Social Credit Code 91340000610300174F.

Person in Charge: Guan, Yanling.

The present case concerns an application by China National Building Materials Glass New Material Research Institute Group Co., Ltd. (hereinafter referred to as "CNBM Glass Research Institute") to suspend payment under a letter of guarantee against Timber Renewable Energy sp. z o.o. (hereinafter referred to as "Timber Energy") and China Construction Bank Corporation, Anhui Branch (hereinafter referred to as "CCB Anhui Branch"). After the case was docketed on September 15, 2026, this Court duly formed a collegial panel and conducted a review.

On September 15, 2026, CNBM Glass Research Institute applied to this Court, alleging fraud in connection with the letter of guarantee, and requested that this Court order CCB Anhui Branch to suspend payment of the amount demanded by Timber Energy as beneficiary under Performance Letter of Guarantee No. AHC02LG0000005200, in the amount of EUR 5,122,607.40, equivalent to RMB 40,032,664.57, calculated at the exchange rate of EUR 1 to RMB 7.8149 as of September 14, 2026.

Upon preliminary examination, this Court found as follows: On April 21, 2025, CNBM Glass Research Institute, as the contractor, entered into an EPC Contract with Timber Energy, as the owner, and GoldenPeaks Capital Holding Ltd. (hereinafter referred to as "GPC"), the parent company of the owner, for the construction of a 142.40718 megawatts solar power plant located in Poland.

---

[1] Translator note: "Wan" is the romanization of the abbreviation for Anhui Province.
[2] Translator note: "Xing Bao" is part of the Chinese court's case-number classification, indicating a case involving an administrative preservation matter.

On August 27, 2025, CNBM Glass Research Institute, as the general contractor, entered into an EPC Subcontract (the “Sub-EPC Contract”) with Spectris Energy sp. z o.o. (hereinafter referred to as “Spectris Energy”), under which Spectris Energy was to serve as the subcontractor for the project.

On August 26, 2025, CNBM Glass Research Institute (Contractor), Timber Energy (Project Company), Spectris Energy (Subcontractor), GPC (Guarantor), and MONTEVERDI & GRAY GROUP LTD and M+G Group Limited (Co-guarantors) jointly entered into an Additional Agreement (the “Side Contract”). The Side Contract states that the Project Company, the Guarantor, and the Contractor entered into an EPC Contract on April 21, 2025, concerning the design, supply, construction, and commissioning of a photovoltaic power plant with a total capacity of 142.40718 megawatts (the “EPC Contract”); that the Contractor and the Subcontractor signed, on August 26, 2025, the EPC Contract and subsequent amendments thereto (the “Sub-EPC Contract”) concerning the design, supply, construction, and commissioning of a photovoltaic power plant with a total capacity of 142.40718 megawatts; and that all parties were fully aware of and understood the contents of the EPC Contract and the Sub-EPC Contract. Article 1 of the Side Contract provides: “The Co-Guarantors, the Guarantor, and the Project Company agree to bear any costs related to the Performance Guarantee and Warranty Guarantee. In addition, the Co-Guarantors, the Guarantor, and the Project Company did not anticipate that the Performance Guarantee or Warranty Guarantee would be called, but if, in rare circumstances, it is nevertheless called, the Co-Guarantors, the Guarantor, and/or the Project Company shall bear in full the relevant payments and all costs, which shall be covered by the guarantee documents.” Article 3 provides: “The Co-Guarantors, the Guarantor, the Project Company, and the Subcontractor agree to waive any and all rights to bring any claims related to the works against the Contractor under the EPC Contract and the Sub-EPC Contract, including, without limitation, claims based on schedule, the Performance Guarantee, the Warranty Guarantee, the Parent Company Guarantee, and the Direct Agreement (the procurement responsibility for the components shall remain with the Contractor). In the event that the Co-Guarantors, the Guarantor, the Project Company, and/or the Subcontractor brings a claim against the Contractor under the EPC Contract and the Sub-EPC Contract for delay-related default liability or performance guarantee provisions, the Contractor shall be entitled to claim contractual damages up to 100% of the EPC Contract amount. This waiver does not affect the Subcontractor’s right to claim from the Contractor any amounts already received from the Guarantor or the Project Company. The Co-Guarantors, the Guarantor, the Project Company, and the Subcontractor agree that the Contractor will subcontract to the Subcontractor all remaining work other than the procurement of components. For the avoidance of doubt, the Subcontractor shall be responsible for transporting the components from the time they leave the factory until they arrive at the project site and for all related obligations arising therefrom.” Article 13 provides: “Notwithstanding any agreement to the contrary, this Side Contract shall supersede the EPC Contract, the Sub-EPC Contract, and any other agreement or document signed by the parties. The Co-Guarantors acknowledge and agree that if any of the Co-Guarantors, the Guarantor, the Project Company, or the Subcontractor fails to perform its obligations under this Side Contract, the Contractor shall have the right to enforce the guarantee documents in accordance with the provisions thereof.”

It was further found that on August 22, 2025, CCB Anhui Branch issued Performance Letter of Guarantee No. AHC02LG0000005200 in favor of Timber Energy, with a guaranteed amount of EUR 5,122,607.40 and an expiration date of September 30, 2026. Under the letter of guarantee, CCB Anhui Branch

irrevocably undertook to pay, within five business days after receipt of the beneficiary's first written demand, any amount not exceeding EUR 5,122,607.40.

On September 9, 2026, CCB Anhui Branch received a demand from Timber Energy under the performance letter of guarantee at issue, requesting payment of EUR 5,122,607.40. CCB Anhui Branch thereupon notified CNBM Glass Research Institute.

During the review of this case, CNBM Glass Research Institute stated that, as of September 16, 2026, CCB Anhui Branch had not made any payment under the letter of guarantee at issue. CNBM Glass Research Institute provided this Court with a guarantee in the form of RMB 40,032,664.57 in bank deposits held in account No. 20334039900100000456261 at the Bengbu Branch of the Agricultural Development Bank of China.

This Court finds upon review that the present case concerns an application to suspend payment under a letter of guarantee. Pursuant to Articles 13, 16, and 18 of the Several Provisions of the Supreme People's Court on the Trial of Disputes Involving Independent Letters of Guarantee (hereinafter referred to as the "Several Provisions on Independent Letters of Guarantee"), an applicant for an independent letter of guarantee who discovers circumstances constituting fraud in connection with the letter of guarantee may, before filing a lawsuit or applying for arbitration, apply to a people's court having jurisdiction at the place where the issuer is registered for an order suspending payment under the independent letter of guarantee. After accepting an application for suspension of payment, the people's court may conduct a necessary and limited examination of matters relating to the underlying contract and the letter of guarantee, as well as their performance, for the purpose of determining whether the grounds for the application for suspension of payment are established. In the present case, Performance Letter of Guarantee No. AHC02LG0000005200 issued by CCB Anhui Branch constitutes an independent letter of guarantee as defined in Article 3 of the Several Provisions on Independent Letters of Guarantee. CNBM Glass Research Institute has applied for suspension of payment under the above independent letter of guarantee on the ground of fraud in connection with the letter of guarantee. Since the issuer of the letter of guarantee is located in Hefei City, Anhui Province, this Court has jurisdiction over the present case.

With respect to the applicable law in this case: Pursuant to Article 22 of the Several Provisions on Independent Letters of Guarantee, the procedure for preservation by suspension of payment under Performance Letter of Guarantee No. AHC02LG0000005200 issued by CCB Anhui Branch shall be reviewed and adjudicated in accordance with the laws of the People's Republic of China.

It should be noted that an independent letter of guarantee is independent of the underlying contract and is governed by the fundamental principle of "payment upon demand." At the same time, international practice and relevant laws recognize the "fraud exception" to the principle of independence applicable to independent letters of guarantee. Under this principle, a demand for payment meeting specified conditions is not protected by the principle that the letter of guarantee is independent of the underlying transaction. That is, where the beneficiary, knowing that it has no right to demand payment under the letter of guarantee, nevertheless maliciously makes a demand for payment, the issuer should not perform its payment obligation under the letter of guarantee. The independence of the letter of guarantee is thereby rendered ineffective, and such circumstances constitute an exception to the principle of independence. Pursuant to Articles 12, 14, and 18 of the Several Provisions on Independent Letters of Guarantee, where there is an issue as to whether an independent letter of

guarantee involves fraud, the court shall conduct a limited examination of the facts concerning the underlying transaction. Under the foregoing provisions, before accepting a dispute concerning fraud in an independent letter of guarantee brought by a party, the court does not make a final judicial determination as to whether the relevant demand for payment constitutes fraud in connection with an independent letter of guarantee. Instead, based on the circumstances of the case, the court determines only whether there is a high probability that such fraud exists. Accordingly, in reviewing an application to suspend payment under a letter of guarantee, this Court conducts only a preliminary examination. The decision rendered at this stage constitutes only an interim opinion and does not affect the final determination that may be made after a substantive adjudication of any subsequent action concerning fraud in an independent letter of guarantee brought by the parties.

In the present case, CNBM Glass Research Institute entered into the Side Contract with Timber Energy and others, under which Timber Energy and the other parties agreed to waive any rights to bring any claims relating to the works against CNBM Glass Research Institute under the EPC Contract and the Sub-EPC Contract. It is further expressly provided that the Side Contract would supersede the EPC Contract, the Sub-EPC Contract, and any other agreement or document signed by the parties. Under these circumstances, Timber Energy nevertheless submitted a demand for payment under the performance letter of guarantee to CCB Anhui Branch. This is highly likely to constitute the circumstance set forth in Article 12(5) of the Several Provisions on Independent Letters of Guarantee, namely, “other circumstances in which the beneficiary abuses its right to demand payment despite knowing that it has no right to demand payment.” At the same time, the circumstances of this case are urgent. Failure to immediately take suspension measures would cause irreparable harm to the legitimate rights and interests of the applicant, CNBM Glass Research Institute. CNBM Glass Research Institute has provided this Court with security sufficient to compensate the respondents for any losses they may suffer as a result of the suspension of payment. CNBM Glass Research Institute’s application for an order directing CCB Anhui Branch to suspend payment of the amount under Performance Letter of Guarantee No. AHC02LG0000005200 is supported by law, and this Court grants the application.

In summary, CNBM Glass Research Institute’s application complies with the requirements of law. Pursuant to Article 157, paragraph 1, item 11 of the Civil Procedure Law of the People’s Republic of China and Articles 3, 12(5), 13, 14, 16, and 18 of the Several Provisions on the Trial of Disputes Involving Independent Letters of Guarantee of the Supreme People’s Court, this Court hereby rules as follows:

China Construction Bank Corporation, Anhui Branch shall suspend payment to Timber Renewable Energy sp. z o.o. of EUR 5,122,607.40 under Performance Letter of Guarantee No. AHC02LG0000005200 (equivalent to RMB 40,032,664.57, calculated at the exchange rate of EUR 1 to RMB 7.8149 as of September 14, 2026).

The case application fee of RMB 5,000 shall be borne by China National Building Materials Glass New Material Research Institute Group Co., Ltd.

This ruling shall take effect and be enforced immediately.

If any party objects to this ruling, it may apply to this Court for reconsideration once within ten days from the date of receipt of this ruling.

The enforcement of this ruling shall not be suspended during the reconsideration period.

Presiding Judge: Liu, Fuxing

Judge: Wan, Qingnong

Judge: Zhang, Ying

[Official Seal: INTERMEDIATE PEOPLE'S COURT OF HEFEI CITY, ANHUI PROVINCE]

September 17, 2026

Court Clerk: Zhou, Tao

Appendix: Relevant Legal Provisions

CIVIL PROCEDURE LAW OF THE PEOPLE'S REPUBLIC OF CHINA

Article 157. A ruling shall be applicable to the following matters:

... (11) Other matters that require resolution by a ruling.

SEVERAL PROVISIONS OF THE SUPREME PEOPLE'S COURT ON THE TRIAL OF DISPUTES INVOLVING INDEPENDENT LETTERS OF GUARANTEE

Article 3. Where a letter of guarantee has any of the following characteristics and a party claim that the nature of the letter of guarantee is that of an independent letter of guarantee, the people's court shall uphold such claim, except where the letter of guarantee does not specify the documents required as a basis for payment or the maximum amount:

(1) The letter of guarantee states that payment shall be made upon demand;

(2) The letter of guarantee states that it is subject to the International Chamber of Commerce Uniform Rules for Demand Guarantees or other model rules governing independent letter of guarantee transactions;

(3) Based on the contents of the letter of guarantee, the issuer's payment obligation is independent of the underlying transaction and the legal relationship between the issuer and the applicant for the letter of guarantee, and the issuer assumes only the obligation to make payment against complying documents.

Where a party claims that a letter of guarantee is a general guarantee or joint and several guarantee on the ground that the independent letter of guarantee identifies the underlying transaction to which it relates, the people's court shall not uphold such claim.

Where a party claims that an independent letter of guarantee is subject to the provisions of the Civil Code concerning general guarantees or joint and several guarantees, the people's court shall not uphold such claim.

Article 12. The people's court shall find that independent guarantee fraud exists in any of the following circumstances:

(1) The beneficiary colludes with the applicant for the letter of guarantee or another person to fabricate the underlying transaction;

(2) The third-party documents submitted by the beneficiary are forged or contain false information;

(3) A court judgment or arbitral award determines that the debtor in the underlying transaction has no payment or compensation liability;

(4) The beneficiary confirms that the debt arising from the underlying transaction has been fully performed or confirms that the payment-triggering event specified in the independent letter of guarantee has not occurred;

(5) Other circumstances in which the beneficiary abuses its right to demand payment despite knowing that it has no right to demand payment.

Article 13. Where the applicant for an independent letter of guarantee, the issuer, or the instructing party discovers any of the circumstances specified in Article 12 of these Provisions, it may, before filing a lawsuit or applying for arbitration, apply to the people's court at the place where the issuer is registered or another people's court having jurisdiction over a dispute concerning fraud in an independent letter of guarantee for an order suspending payment under the independent letter of guarantee. An application may also be made during the course of litigation or arbitration.

Article 14. When the people's court orders the suspension of payment under an independent letter of guarantee, all of the following conditions must be satisfied:

(1) The evidence submitted by the applicant for suspension of payment demonstrates a high probability that one of the circumstances specified in Article 12 of these Provisions exists;

(2) The circumstances are urgent, and failure to take measures to suspend payment immediately would cause irreparable harm to the legitimate rights and interests of the applicant for suspension of payment;

(3) The applicant for suspension of payment has provided security sufficient to compensate the respondent for any losses that may result from the suspension of payment.

Where the applicant for suspension of payment requests suspension on the ground that the beneficiary has breached the underlying transaction, the people's court shall not uphold such request.

Where the issuer has made payment in good faith under an independent letter of guarantee issued upon instruction, the people's court shall not order suspension of payment under an independent letter of guarantee intended to secure the issuer's right of recourse.

Article 16. After accepting an application for suspension of payment, the people's court shall issue a written ruling within 48 hours. The ruling shall identify the applicant, respondent, and third party, and shall include the facts preliminarily established and the reasons for whether the application for suspension of payment is granted.

Where payment is ordered to be suspended, the order shall be enforced immediately.

If the applicant fails to lawfully initiate litigation or apply for arbitration over the independent guarantee fraud dispute within 30 days after the suspension ruling is issued, the people's court shall lift the suspension ruling.

Article 18. When hearing a dispute concerning fraud in an independent letter of guarantee or handling an application for suspension of payment, the people's court may examine and determine relevant facts concerning the underlying transaction with respect to the specific circumstances under Article 12 of these Provisions alleged by the parties.

# EXHIBIT 3

# Shan He 何杉

San Jose, CA | 831.402.6450 | Shan.he.vaidya@gmail.com | linkedin.com/in/shan-he-b3190b35

## PROFESSIONAL PROFILE

Mandarin-English interpreter and translator with 12+ years of professional experience and 4,000+ hours of simultaneous and consecutive interpreting across court/legal, corporate, technology, automotive, manufacturing, healthcare, and executive settings. M.A. in Translation and Interpretation from the Middlebury Institute of International Studies at Monterey.

## EXPERIENCE

### Present | Freelance Court, Conference & Consecutive Interpreter / Translator

Self-employed via Smooth Sail LLC | San Francisco Bay Area

- Provide Mandarin-English simultaneous and consecutive interpretation for legal, court, medical, corporate, technical, automotive, manufacturing, and conference assignments.
- Provisionally qualified Mandarin court interpreter providing services in the Superior Courts of Santa Clara, Alameda, and San Mateo Counties, with experience across criminal, civil, family, and other court proceedings.
- Active interpreter for U.S. Department of Justice EOIR immigration proceedings, including hearings requiring simultaneous and consecutive interpretation and interpretation of oral decisions.
- Legal interpreting experience includes plea and preliminary hearings, jury proceedings, family-court matters, attorney-client communications, depositions and other litigation-related assignments; strong command of criminal procedure, evidentiary, and courtroom terminology.
- Arizona Credentialed Court Interpreter (Tier 1); currently pursuing Tier 3/4 credentialing and California Court Interpreter Certification.
- Deliver high-level conference and executive interpretation for corporations, automotive companies, and early-stage start-ups, handling complex subject matter across technology, manufacturing, healthcare, environmental sustainability, medical technology, entertainment, and cosmetics.

### 04/2025 – 09/2025 | Language Specialist

ByteDance | San Jose, CA

- Provided linguistic expertise to global engineering teams and contributed to development and evaluation of in-house AI simultaneous interpretation models, including the SEED speech-to-speech system.
- Evaluated speech LLMs for audio quality and interpretive accuracy; supported dataset creation, validation, technical translation, simultaneous interpretation, and cross-cultural/tool training.

### 04/2017 – 11/2024 | Interpreter & Translator Manager, Localization

Faraday Future | Gardena, CA

- Managed the in-house translation/localization function and external language providers while maintaining terminology databases, interpretation protocols, style guides, QA standards, and confidentiality.
- Completed 3,000+ booth hours of Mandarin-English simultaneous and consecutive interpreting for high-stakes, confidential meetings across corporate law, bankruptcy, securities, engineering, supply chain, manufacturing, HR, capital markets, and investor relations.
- Led legal translation and interpretation for a high-profile California bankruptcy matter and supported communications involving external counsel, investors, investment bankers, board members, senior executives, creditor matters, and other complex legal issues.
- Delivered 500+ localization projects totaling 1.5M+ words across EV, manufacturing, R&D, powertrain, supply chain, finance, capital markets, marketing, and legal domains.

### 08/2016 – 04/2017 | Translator & Interpreter

LeEco | San Jose, CA

- Provided full-time Mandarin-English translation and simultaneous/consecutive interpretation for executive meetings, U.S.-China leadership teleconferences, cross-border negotiations, and technical/business teams.
- Translated documentation across smartphones, smart TVs, telecommunications, software engineering, after-sales services, content operations, marketing, and business development.

### 07/2014 – 08/2016 | Localization Project Manager

Syntes Language Group | Centennial, CO

- Managed multilingual localization programs, client communications, vendor resources, QA, terminology, subtitling, UI/website localization, and print production.
- Achieved 100% account revenue growth in 2015 through workflow, vendor-quality, and delivery improvements; also provided Chinese translation/transcreation and consecutive interpretation for business delegations.

## COURT INTERPRETER CREDENTIALS

- Arizona Credentialed Court Interpreter – Tier 1; Tier 3/4 credentialing in progress.
- California Court Interpreter Certification – written examination passed; certification process in progress.
- Provisionally Qualified Mandarin Court Interpreter – Superior Courts of Santa Clara, Alameda, and San Mateo Counties.

## EDUCATION

- M.A., Translation and Interpretation — Middlebury Institute of International Studies at Monterey, 2014 | GPA 3.51/4.0
- B.A., English Language and Literature — Beijing Language and Culture University, 2012 | GPA 3.8/4.0; Minor in Teaching Chinese as a Second Language
- Exchange Program — University of Mississippi, 2010–2011 | GPA 3.88/4.0

## LANGUAGES & INTERPRETING MODES

**Languages:** Mandarin Chinese (native) ↔ English | **Modes:** Simultaneous, consecutive, remote simultaneous (RSI), video/remote consecutive (VRI/OPI)