**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>GOLDENPEAKS POLAND HOLDING LIMITED, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90564 (ARP)<br><br>(Jointly Administered) |

**DEBTORS' REPLY TO SEQUOIA IDF ASSET HOLDINGS S.A.'S OBJECTION TO PROPOSED ORDER RESOLVING, AS TO TIMBER RENEWABLE ENERGY SP. Z O.O. ONLY, (I) ORDER TO SHOW CAUSE; (II) CNBM RESEARCH INSTITUTE FOR ADVANCED GLASS MATERIALS GROUP CO., LTD.'S EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY; (III) THE DEBTORS' RULE 2004 NOTICE; AND (IV) CNBM'S MOTION TO QUASH**

[Related Docket Nos. 831, 832, 940, and 942]

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), including Debtor Timber Renewable Energy sp. z o.o. ("TRE"), submit this reply ("Reply") to *Sequoia IDF Asset Holdings S.A.'s Objection to Proposed Order by and Among the Debtors and CNBM Research Institute for Advanced Glass Materials Group Co., Ltd. Resolving Debtors' Emergency Motion for Order to Show Cause for Violation of the Automatic Stay* [Docket No. 942] (the "Objection"), filed by Sequoia IDF Asset Holdings S.A. ("Sequoia"), and in further support of entry of the proposed *Order Resolving, as to Timber Renewable Energy sp. z o.o. Only, (I) Order to Show Cause; (II) CNBM Research Institute for Advanced Glass Materials Group Co., Ltd.'s Emergency Motion for Relief from the Automatic Stay; (III) the Debtors' Rule 2004 Notice; and*

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GoldenPeaks. The location of Debtor GoldenPeaks Poland LLC's principal place of business and the Debtors' service address in these Chapter 11 cases is 801 Louisiana Street, Suite 368, Houston, TX 77002.

*(IV) CNBM's Motion to Quash* [Docket No. 940] (the "Proposed Order"),[2] and respectfully state as follows:

## PRELIMINARY STATEMENT

At the Hearing conducted on Friday, October 30, 2026, Debtors' counsel advised the Court that the Debtors and CNBM had reached an agreement regarding the terms of a Proposed Order that, if approved by the Court, would resolve the Court's OSC regarding CNBM's violations of the automatic stay and related matters and that submission of the Proposed Order to the Court was delayed in order to give CNBM the opportunity to review and approve a last-minute change to the Proposed Order requested by Sequoia the morning of the hearing.[3] (Because of the time difference, it was impractical to try and obtain immediate formal approval from CNBM's personnel in Beijing). The approval was obtained and on Monday, November 2, the Proposed Order was submitted to the Court. Although certain revisions suggested by Sequoia were included in the Proposed Order, not all were, and the following day, on November 3, Sequoia filed its Objection to the Proposed Order.

The Objection rests on the faulty premise that the text of the Proposed Order refutes: that the Proposed Order "insulates CNBM from any further damages or suits for violation of the automatic stay" and thereby "releases" a claim Sequoia says it holds. Obj. ¶¶ 1, 3. It does neither. The only "Parties" to the Proposed Order are CNBM and the Debtors, and the Proposed Order "shall be binding upon the Parties and their respective successors and assigns." ¶ 15. It provides that nothing in it "is intended to, or shall, determine, adjudicate, waive, release, limit, impair, or

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Proposed Order. Citations in the form "¶ " are to the numbered decretal paragraphs of the Proposed Order; citations in the form "Recital " are to its lettered findings; and citations in the form "Obj. ¶ __" are to the Objection.

[3] Debtors' counsel also advised the Court of how discussions among various parties in interest regarding CNBM led to a separate, potential global settlement of claims by and against CNBM, which settlement would be presented to the Court in the future pursuant to Bankruptcy Rule 9019.

otherwise affect the substantive rights, claims, causes of action, remedies, or defenses of any Party, *or of any other person or entity*," ¶ 13 (emphasis added), and that nothing in it shall be construed as "a determination of the rights of any person or entity that is not a Party hereto, including . . . *Sequoia*." ¶ 13(f) (emphasis added). Over the past two weeks, although the parties have provided drafts of the Proposed Order to, and solicited comments from both Sequoia and Brookfield, Sequoia is not a party to the Proposed Order, and, whatever claim Sequoia has against CNBM, it had before the Proposed Order was negotiated and will have after the Proposed Order is entered.

Stripped of its inapposite "non-consensual third-party release" framing, the Objection is reduced to three grievances: CNBM would not agree to pay Sequoia's legal fees; the Proposed Order does not create a fund, at CNBM's expense, earmarked for Sequoia's own claimed damages; and the Proposed Order contains a customary provision limiting the use of stipulated findings to the matter being resolved. None is a basis to reject a consensual resolution between the two parties directly affected by the civil contempt proceedings, the Debtors whose stay was violated and the creditor that violated it, whom this Court requested should engage in a dialogue to address the violations of stay and for whom the Court repeatedly continued the Hearing to allow to confer. *See* Obj. ¶ 7. The Debtors have no power to compel CNBM to compensate a non-party as the price of resolving the Debtors' own motion, and no obligation to litigate Sequoia's claims for it. Sequoia remains free to pursue those claims itself; the Proposed Order leaves it fully able to do so and, indeed, equips it with the discovery and unsealed record to do so. ¶¶ 9, 10.

The Debtors and CNBM have requested and been responsive to comments provided and issues raised by both Sequoia and Brookfield, but they have not blindly accepted or included every single revision proposed. Indeed, at the Hearing conducted on October 30, 2026, the Debtors advised the Court that submission of the Proposed Order to the Court was delayed in order for

CNBM's counsel to obtain client approval for one revision requested by Sequoia and included by the Parties.

The Proposed Order represents a balanced approach to compensate the bankruptcy estate for the stay violations and implement a mechanism for transferring the amount of the Timber Bond out of China. The Objection should be overruled and the Proposed Order entered.

## BACKGROUND

1. CNBM's conduct, the OSC Motion [Docket No. 831], the Stay Motion [Docket No. 832], the Rule 2004 Notice [Docket No. 820], and the Motion to Quash [Docket No. 840] are described in the Proposed Order and in the Debtors' prior filings. *See* Proposed Order Recitals F–O; Docket No. 843. The hearing regarding the OSC Motion and the Stay Motion commenced on October 13, 2026, and the Court set its OSC as well as continued the Stay Motion for Hearing 24 hours later. The Hearing was continued to October 14, 16, 20, 23, and 30, 2026, as Sequoia acknowledges, "to afford the Parties an opportunity to confer regarding a consensual resolution of the OSC Motion and the Stay Motion." Obj. ¶ 7. Those discussions succeeded. The Parties filed the fully executed Proposed Order on November 2, 2026. Docket No. 940. Sequoia filed the Objection the following morning. Docket No. 942. The Court has set the Proposed Order and the Objection for hearing on November 18, 2026, at 2:00 p.m. (prevailing Central Time), and a status conference on the Proposed Order for November 6, 2026, at 10:00 a.m. (prevailing Central Time).

2. The Debtors, as they have done throughout these Chapter 11 Cases, worked constructively with all parties in interest in addressing the various issues raised by CNBM's actions. To that end, although Sequoia is not a party to the OSC Motion, the Stay Motion, or the Proposed Order, the Debtors kept Sequoia's counsel apprised of the negotiations, furnished Sequoia with successive drafts, and solicited and considered Sequoia's comments. The Objection's

selective recounting of certain of the parties' communications during the settlement process, Obj. ¶¶ 8–18, reveals that, as is the case when multiple parties discuss disputed issues, not every requested revision by Sequoia was accepted by the Debtors and CNBM. Indeed, the Objection's disclosure of settlement discussions omits that many of Sequoia's requests were accepted and appear in the Proposed Order.[4]

3. The Debtors believe that the relief described in the Proposed Order represents a considered and methodical process for assuring that the bankruptcy estate is compensated for CNBM's violation of the automatic stay and that the amount that otherwise would have been paid to the estate on account of the Timber Bond but for CNBM's actions is held in the registry of this Court pending a determination of its disposition, with the rights of all parties in interest reserved. Especially given the potential complexities and the necessary roles of third parties (e.g., CCB, the Hefei Court) in implementing the actions contemplated in the Proposed Order, including transferring substantial funds out of China, as well as the procedural posture of these Chapter 11 Cases after confirmation of the Plan, it is imperative that Sequoia's Objection be overruled and the relief in the Proposed Order be approved promptly.

## REPLY

### I. The Proposed Order Binds Only Its Parties and Does Not Release, Waive, or Adjudicate Any Claim of Sequoia.

4. The Objection's central contention, that the Proposed Order "constitutes an impermissible non-consensual non-debtor release," fails upon a plain reading of the text. Obj. ¶ 1. Paragraph 15 provides that the Proposed Order "shall be binding upon the Parties and their respective successors and assigns." The "Parties" are CNBM and the Debtors. Proposed Order

[4] The Objection places the negotiating process at issue and improperly discloses settlement communications, Obj. ¶¶ 8–18. *See* Fed. R. Evid. 408. The Debtors also involved and solicited comments from Brookfield in connection with the preparation and negotiation of the Proposed Order.

at 2. Paragraph 13 provides that, apart from the obligations CNBM undertakes in Paragraphs 3 through 11 and the agreements set forth in Paragraph 14, "nothing in this Order, including the findings in Paragraph 2, is intended to, or shall, determine, adjudicate, waive, release, limit, impair, or otherwise affect the substantive rights, claims, causes of action, remedies, or defenses of any Party, or of any other person or entity," and that nothing in the Proposed Order "is intended or shall be construed as . . . a determination of the rights of any person or entity that is not a Party hereto, including the Buyer and DIP Lenders, Sequoia, and CCB." ¶ 13(f). No provision releases Sequoia's claims, enjoins Sequoia from asserting them, or purports to bind Sequoia at all.

5. "[P]arties who choose to resolve litigation through settlement may not dispose of the claims of a third party . . . without that party's agreement." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986). The very case Sequoia cites holds that "[a] settlement agreement cannot, as a matter of law, release the claims of persons that are not a party or in privity with a party to that agreement at the time of the agreement." *Dahlberg v. ConocoPhillips Co. (In re Reichmann Petroleum Corp.)*, 434 B.R. 790, 798 (Bankr. S.D. Tex. 2010) (citation omitted; cited at Obj. ¶ 26).[5] The Fifth Circuit's decision in *Labuzan*, on which Sequoia also relies, reflects the same ordinary sequence: the trustee there settled the estate's claims against the alleged stay violator, the creditors' separate claims under section 362(k) proceeded, and the court expressly left open what effect, if any, the trustee's settlement had on them. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 545 (5th Cir. 2009).

6. Sequoia's reliance on *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), is also misplaced. *Purdue* addressed a plan of reorganization that, through a release and injunction, would have extinguished the claims of opioid victims against non-debtor Sackler family members

[5] Critically, the consequence in *Reichmann* was not that the debtor's settlement was refused or unwound; it was that the non-parties' claims survived the settlement unimpaired. *Id.* at 798–800. That is precisely the posture here.

without the victims' consent, and the Court "h[e]ld only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Id.* at [227]. There is no plan, no release, no discharge, and no injunction against Sequoia here.

## II. The Proposed Order Does Not Contain Third-Party Releases.

7. Sequoia's "release" argument rests on two clauses of the Proposed Order. The first is the proviso in Paragraph 14 that "the payment under Paragraph 6 hereof shall constitute CNBM's sole and exclusive obligation to pay compensatory sanctions on account of the violations of the automatic stay with respect to the Timber Bond and the Timber Demand." Obj. ¶¶ 17, 27. This provision simply fixes the consideration passing to the estate to redress the stay violations. Paragraph 6 obligates CNBM to pay the Debtors "the reasonable and documented fees and expenses . . . incurred by the Debtors and their estates" and "any other damages suffered by TRE" (together, the "Compensatory Sanctions"). Paragraph 14, which is devoted to carving out the Whiskey and Sierra "Reserved Matters," confirms that the Debtors will not seek a second award of compensatory sanctions from CNBM for the same Timber conduct, while expressly preserving "any compensatory or other sanctions, damages, or remedies with respect to the Reserved Matters, any future violation of the automatic stay or with respect to any failure by CNBM to comply with this Order." ¶ 14.

8. The proviso allocates obligations between CNBM and the Debtors. It does not mention Sequoia, does not purport to adjudicate what any non-party may recover from CNBM, and must be read together with Paragraph 13(f)'s express disclaimer of any determination of Sequoia's rights and Paragraph 15's limitation of the Proposed Order's binding effect to the Parties.

9. The second clause is the integration provision in Paragraph 17, which states that the Proposed Order "sets forth the complete resolution of the matters described in Paragraph 1 hereof and supersedes all prior negotiations, understandings, and agreements with respect thereto." Obj. ¶ 21. The "matters described in Paragraph 1" are the OSC Motion and the Stay Motion (insofar as they relate to TRE) and the Rule 2004 Notice and the Motion to Quash (as to TRE), that is, the Debtors' motion and CNBM's motions. Sequoia filed none of them. An integration clause confirming that two parties' written agreement supersedes their prior negotiations is a staple of every settlement; it is not a release of a third party's claims.

## III. Whatever Sequoia's Claims May Be Against CNBM Are Unaffected, and Sequoia's Remedy Is a Motion of Its Own, Not Disapproval of the Proposed Order.

10. Sequoia argues that "Debtors have no authority to release or compromise the secured creditor's § 362(k) claim through a settlement with CNBM." Obj. ¶ 24. The Debtors agree, and they have not done so. Sequoia's reliance on *Seven Seas* for the proposition that an estate and a creditor may "own separate claims against a third party arising out of the same general series of events and broad course of conduct," Obj. ¶ 24 (quoting *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 585 (5th Cir. 2008)), proves the Debtors' point: if the claims are separate, the Debtors' resolution of theirs leaves Sequoia's exactly where it was. To the extent Sequoia believes it holds a "secured creditor's § 362(k) claim" it is free to file a motion to assert it.[6]

[6] Whether Sequoia, a corporate entity organized as a *société anonyme*, may invoke section 362(k), which affords a remedy to "an *individual* injured by any willful violation of a stay," 11 U.S.C. § 362(k)(1) (emphasis added), is a question the Debtors need not and do not ask the Court to decide. Courts in this District have held that section 362(k) does not extend to corporate entities, which must instead invoke the Court's civil contempt power under section 105(a). *See Havis v. Norman (In re Equator Corp.)*, 362 B.R. 326, 336 (Bankr. S.D. Tex. 2007) ("Debtor is a corporation, not an individual. The Court may, however, award damages to a corporate debtor in enforcement of the court's civil contempt power.") (citing *In re All Trac Transp., Inc.*, 306 B.R. 859, 872 (Bankr. N.D. Tex. 2004)); *see also Labuzan*, 579 F.3d at [542–43] (noting, without deciding, the Ninth Circuit's holding in *In re Goodman*, 991 F.2d 613, 619 (9th Cir. 1993), that "individual" does not include corporations or other artificial entities). Whatever the proper vehicle, the Proposed Order does not affect it.

## IV. Paragraph 2's Limitation on the Use of Stipulated Findings Is Customary and Does Not Bind Sequoia.

11. Sequoia objects that the findings of willful stay violation in Paragraph 2 are "made solely for the purpose of resolving the OSC Motion and the Stay Motion and implementing this Order" and "shall not be admissible or have any preclusive effect in any other action or proceeding, other than a proceeding to enforce this Order." Obj. ¶ 28; ¶ 2. Provisions limiting the use of stipulated facts or findings to the matter being resolved are a routine feature of negotiated resolutions; they reflect the same policy embodied in Federal Rule of Evidence 408 of encouraging compromise by assuring a settling party that its concessions will not be turned against it elsewhere. The clause binds the Parties. It does not bind Sequoia. *See* Proposed Order ¶¶ 13, 13(f), 15, and it deprives Sequoia of nothing: the evidentiary record remains Sequoia's to use.

## V. The Proposed Order Raises No Adequate-Protection Issue.

12. Sequoia asserts that bringing the Bond Proceeds into the Court's registry "raises significant adequate protection issues." Obj. ¶ 20. It does not. Adequate protection under sections 361 and 363(e) of the Bankruptcy Code is the price of a debtor's *use, sale, or lease* of a secured creditor's collateral. The Proposed Order authorizes no use of anything. It requires that funds be transferred to the registry of this Court, Proposed Order ¶ 4(a); provides that neither that transfer nor any other provision of Paragraph 4(a) "shall be construed to affect any security interest asserted in, or as a determination of the nature, characterization, or ownership of, the Bond Proceeds, or of the rights of any person in or to the Bond Proceeds, all of which are reserved," *id.*, which is language Sequoia itself requested; holds the funds "pending . . . a final determination of the respective rights of the Parties, and of any other person or entity asserting an interest, in and to the Bond Proceeds," ¶ 4(c); permits "any party in interest" to apply for an order regarding their disposition, *id.*; and provides that the funds "shall be released only by order of this Court." *Id.*

### VI. Denying the Proposed Order Would Harm the Estates and Serve No Legitimate Purpose.

13. The Court admonished CNBM and the Debtors to discuss a resolution of the stay violations and facilitated those discussions by agreeing to continue the Hearing five times. The Parties did so. Sequoia participated in the negotiations, obtained numerous changes to the Proposed Order, and expressly retains all of its rights, now asks the Court to reject the resolution because CNBM would not also fund Sequoia's fees. Granting that request would deprive TRE's estate of stipulated findings, mandatory withdrawal and payment obligations, compensatory sanctions, discovery, CNBM's removal from the Committee and the Liquidation Trust Board, and a compliance mechanism, and would return the Parties to litigation. The Court should decline to do so.

## RESERVATION OF RIGHTS

14. Nothing contained herein is intended or shall be construed as an admission of the existence, validity, priority, extent, or enforceability of any security interest, lien, or claim asserted by Sequoia or its assignee, Wilmington Trust (London) Limited, or as a waiver of any right, claim, remedy, or defense of the Debtors or their estates, all of which are expressly reserved.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) overrule the Objection; (ii) enter the Proposed Order; and (iii) grant the Debtors such other and further relief as is just and proper under the circumstances.

Dated: November 5, 2026

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Benjamin L. Wallen*

Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Steven W. Golden (SBT 24099681)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
mwarner@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
Malhar S. Pagay (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
mpagay@pszjlaw.com

Counsel to the Debtors and Debtors in Possession

**Certificate of Service**

I certify that on November 5, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Benjamin L. Wallen*

Benjamin L. Wallen