United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 09, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>GOLDENPEAKS POLAND HOLDING LIMITED, *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90564 (ARP)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 820, 831, 832, 840, 844, 848 and 862 |

**ORDER RESOLVING, AS TO TIMBER RENEWABLE ENERGY SP. Z O.O. ONLY, (I) ORDER TO SHOW CAUSE; (II) CNBM RESEARCH INSTITUTE FOR ADVANCED GLASS MATERIALS GROUP CO., LTD.'S EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY; (III) THE DEBTORS' RULE 2004 NOTICE; AND (IV) CNBM'S MOTION TO QUASH**

Upon the granting of the *Debtors' Emergency Motion for (A) Entry of an Order to Appear and Show Cause Against CNBM Research Institute for Advanced Glass Materials Group Co., Ltd., and (B) the Imposition of Compensatory and Coercive Sanctions for Violating the Automatic Stay* [Docket No. 831] (the "OSC Motion"), filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), including Debtor Timber Renewable Energy sp. z o.o. ("TRE"); and upon consideration of the *Emergency Motion for Entry of an Order (I) Confirming that CNBM Research Institute for Advanced Glass Materials Co., Ltd.'s Applications in the Hefei Intermediate People's Court Do Not Violate the Automatic Stay or, Alternatively, Annulling the Automatic Stay; (II) Granting Relief from the Automatic Stay to Proceed in a Nonbankruptcy Forum; and (III) Waiving the Fourteen-Day Stay Under Bankruptcy Rule 4001(a)(4)* [Docket No. 832] (the "Stay Motion"), filed by CNBM Research Institute for Advanced Glass Materials Group

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GoldenPeaks. The location of Debtor GoldenPeaks Poland LLC's principal place of business and the Debtors' service address in these Chapter 11 cases is 801 Louisiana Street, Suite 368, Houston, TX 77002.

Co., Ltd. ("CNBM" and the Debtors each a "Party" and together, the "Parties"), the *Notice of the Debtors' Rule 2004 Request for Production of Documents to CNBM Research Institute for Advanced Glass Materials Group Co., Ltd.* [Docket No. 820] (the "Rule 2004 Notice"), filed and served by the Debtors, and the *Motion to: (I) Quash the Debtors' Notice of Rule 2004 Request; and (II) Enter a Protective Order Limiting the Debtors' Requests for Production Pursuant to Federal Rule of Civil Procedure 26(c)* [Docket No. 840] (the "Motion to Quash"), filed by CNBM;[2] and this Court having considered the OSC Motion, the Stay Motion, the Rule 2004 Notice, the Motion to Quash, the responses thereto, and the record of the Hearing (as defined below); and the Parties having advised this Court of the agreed resolution set forth herein; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A. Jurisdiction and Venue. This Court has jurisdiction over this matter and over the property of the Debtors' estates pursuant to 28 U.S.C. § 1334, and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, dated as of May 24, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order hereon under Article III of the United States Constitution. Venue of these Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B. On May 29, 2026 (the "Petition Date"), the Debtors commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy

[2] CNBM appeared in these Chapter 11 Cases, and filed the Stay Motion and the *Objection and Reservation of Rights of CNBM Research Institute for Advanced Glass Materials Co., Ltd. to Debtors' (I) Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases and (II) Adequate Assurance of Future Performance of Stalking Horse Bidder* [Docket No. 396], as "CNBM Research Institute for Advanced Glass Materials Co., Ltd., f/k/a (CNBM) Bengbu Design & Research Institute for Glass Industry Co., Ltd." The Timber EPC Contract, the Timber Bond, and CCB's notices (each as defined below) identify the same entity as "CNBM Research Institute for Advanced Glass Materials Group Co., Ltd." All such names refer to the same entity, and CNBM represents and agrees that this Order binds that entity under each such name.

Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"), which cases are being jointly administered under Case No. 26-90564 (ARP).[3]

C. TRE is a Debtor in the Chapter 11 Cases. TRE's Chapter 11 Case has not been dismissed, and the automatic stay of section 362(a) of the Bankruptcy Code arose as to TRE and its property on the Petition Date and remains in effect.

D. On September 1, 2026, this Court entered the *Order Granting Final Approval of Disclosure Statement and Confirming Plan of Liquidation of GoldenPeaks Poland Holding Limited and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 720], confirming the *Third Amended Combined Disclosure Statement and Plan of Liquidation of GoldenPeaks Poland Holding Limited and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 656] (the "Plan").

E. CNBM is a member of the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Committee") [Docket Nos. 102, 107], and a representative of CNBM is identified as one of the two proposed initial Committee Designees to the Liquidation Trust Board in the form of Liquidation Trust Agreement filed with the *Amended Plan Supplement* [Docket No. 659, Ex. A, § 5.1 & Ex. A thereto] (the "Liquidation Trust Agreement").

F. On April 21, 2025, TRE (together with a non-Debtor former affiliate of the Debtors) entered into an EPC contract with CNBM for the design, supply, construction, and commissioning of solar farms in Poland (as it may have been amended by variation order, the "Timber EPC Contract").

G. To secure CNBM's obligations under the Timber EPC Contract, China Construction Bank Corporation, Anhui Branch ("CCB") issued, at CNBM's request, Performance

---

[3]Unless otherwise indicated, citations to the docket in these Chapter 11 Cases are in the form "[Docket No. __]." Capitalized terms used but not defined herein have the meanings ascribed to them in the OSC Motion.

Guarantee No. AHC02LG000005200, dated August 22, 2025, in favor of TRE, in the amount of EUR 5,122,607.40, with a stated expiry date of September 30, 2026 (the "Timber Bond").

H. TRE presented written demands for payment of EUR 5,122,607.40 under the Timber Bond to CCB, through TRE's bank, mBank S.A., by authenticated SWIFT message, which CCB received on or about September 9, 2026, and again on or about September 17, 2026 (collectively, the "Timber Demand"), in each case prior to the stated expiry date of the Timber Bond.

I. On September 10, 2026, CNBM sent CCB a Letter Regarding Objection to Guarantee Demand and Request for Suspension of Payment ("September 10 CNBM-CCB Letter"), pursuant to which CNBM, among other things, (i) raised an objection to CCB's payment of the Timber Demand; (ii) recommended bases on which CCB should reject the Timber Demand; (iii) advised CCB that "if your bank pays under this guarantee without conducting a prudent examination, it may face serious adverse consequences, including the loss of the right of recourse for the sums paid, refusal of payment under the counter-guarantee, and administrative regulatory penalties. If such actions result in losses to our company, your bank may also be liable for the corresponding civil damages."; and (iv) requested that CCB suspend payment on account of the Timber Demand to TRE.

J. On September 15, 2026, CNBM filed an application in the Intermediate People's Court of Hefei City, Anhui Province, People's Republic of China (the "Hefei Court"), naming TRE as respondent, for an order suspending CCB's payment to TRE under the Timber Bond (the "September 15 Application"), and on September 17, 2026, the Hefei Court entered a civil ruling in Case No. (2026) Wan 01 Xing Bao No. 1-1 directing CCB to suspend payment to TRE of EUR 5,122,607.40 under the Timber Bond (the "September 17 Stop-Payment Ruling"). The 30-day

suspension period imposed by the September 17 Stop-Payment Ruling expired on October 17, 2026, and CNBM represents that it did not commence any litigation or arbitration in respect of the Timber Bond within such period. In connection with the September 15 Application, CNBM posted a bank deposit of RMB 40,032,664.57 with the Hefei Court as security (the "Timber Security Deposit").

K. CNBM is also party to EPC contracts with, and CCB has issued performance guarantees at CNBM's request in favor of, Debtors Whiskey Renewable Energy sp. z o.o. ("Whiskey") and Sierra Renewable Energy sp. z o.o. ("Sierra"); on September 30, 2026, CNBM filed a further application in the Hefei Court, naming Whiskey as respondent, for an order suspending CCB's payment to Whiskey under its performance guarantee, and on October 10, 2026, the Hefei Court entered a civil ruling thereon; and the Debtors' requests for relief in the OSC Motion and CNBM's requests for relief in the Stay Motion extend to such application and ruling. The foregoing matters, and all other matters relating to Whiskey, Sierra, and their respective EPC contracts and performance guarantees, including, without limitation, the Whiskey 2004 Notice Requests (as defined below, all of the foregoing collectively, the "Reserved Matters"), are not resolved in this Order and are addressed as set forth in Paragraph 14 below, are the subject of a current proposed settlement among CNBM, the Debtors, and other parties in interest, and all rights, claims, remedies, and defenses of every party with respect to the Reserved Matters are expressly reserved.

L. On October 2, 2026, the Debtors filed and served the Rule 2004 Notice; on October 7, 2026, the Debtors filed the OSC Motion; on October 8, 2026, CNBM filed the Stay Motion; and on October 9, 2026, CNBM filed the Motion to Quash.

M. On October 10, 2026, the Parties filed the *Stipulation by and Among the Debtors and CNBM Research Institute for Advanced Glass Materials Group Co., Ltd. re: October 13, 2026, Hearing* [Docket No. 841] (the "Evidentiary Stipulation"); on October 12, 2026, the Debtors filed their objection to the Stay Motion [Docket No. 843], which also supplemented the OSC Motion to seek relief with respect to certain of the Reserved Matters; and on October 12, 2026, CNBM filed its objection to the OSC Motion [Docket No. 849].

N. On October 12, 2026, CNBM filed its *Motion for Leave to File Under Seal Certain Exhibits for October 13, 2026 Hearing* [Docket No. 844] (the "CNBM Seal Motion"), and the Debtors filed their *Motion for Entry of an Order Authorizing the Filing of Certain EPC Contracts Under Seal* [Docket No. 848] (the "Debtors' Seal Motion" and, together with the CNBM Seal Motion, the "Seal Motions"); and on October 14, 2026, Sequoia IDF Asset Holdings S.A. ("Sequoia") filed its objection to the CNBM Seal Motion [Docket No. 862] (the "Sequoia Objection").

O. The OSC Motion and the Stay Motion came before this Court for hearing on October 13, 2026 (the "Hearing"), and this Court has continued the Hearing to October 14, 16, 20, 23 and 30, 2026.

P. This Order resolves (i) the OSC Motion and the Stay Motion insofar as they relate to TRE, the Timber Bond, the Timber Demand, the September 10 CNBM-CCB Letter, the September 15 Application, and the September 17 Stop-Payment Ruling, and (ii) the Rule 2004 Notice and the Motion to Quash as to TRE, *provided* that the remaining Rule 2004 Notice requests as to the other Debtors, including Whiskey (the "Whiskey 2004 Notice Requests"), are a Reserved Matter, in each case on the terms set forth herein and without the need for further evidentiary proceedings.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Scope of Order. This Order resolves (a) the OSC Motion and the Stay Motion insofar as they relate to TRE, the Timber Bond, the Timber Demand, the September 10 CNBM-CCB Letter, the September 15 Application, and the September 17 Stop-Payment Ruling, and (b) the Rule 2004 Notice and the Motion to Quash as to TRE, *provided* that the remaining Rule 2004 Notice requests as to the other Debtors, including Whiskey, are a Reserved Matter.

2. Findings. This Court finds, that (a) TRE's rights under the Timber Bond, including its right to payment on the Timber Demand, are property of its estate within the meaning of section 541(a) of the Bankruptcy Code; (b) the transmission of the September 10 CNBM-CCB Letter, the filing and prosecution of the September 15 Application, and CNBM's procurement of the September 17 Stop-Payment Ruling, each constituted an act in violation of section 362(a) of the Bankruptcy Code; (c) CNBM had actual knowledge of the Chapter 11 Cases and of the automatic stay at the time it sent the September 10 CNBM-CCB Letter, filed the September 15 Application, and its acts in filing the September 15 Application and obtaining the September 17 Stop-Payment Ruling were intentional for the purpose of staying the Timber Demand; and (d) accordingly, CNBM willfully violated the automatic stay. The findings in this Paragraph 2 are made solely for the purpose of resolving the OSC Motion and the Stay Motion and implementing this Order, shall not be admissible or have any preclusive effect in any other action or proceeding, other than a proceeding to enforce this Order, and are subject to Paragraphs 13 and 14 hereof.

3. Withdrawal of the September 15 Application. No later than five (5) business days (which, as used in this Order, means any day other than a Saturday, Sunday, or legal holiday as defined in Bankruptcy Rule 9006(a)(6)) after entry of this Order (except, with respect to

subparagraph (d) below, no later than two (2) business days after entry of this Order), CNBM shall, at its sole cost and expense:

(a) file with the Hefei Court a written withdrawal of the September 15 Application and a written request that the Hefei Court (i) confirm in writing that the September 17 Stop-Payment Ruling has expired or has been lifted, vacated, or otherwise terminated and (ii) notify CCB in writing that the suspension of payment under the Timber Bond is no longer in effect; *provided* that CNBM shall not be required to obtain any ruling from the Hefei Court lifting the September 17 Stop-Payment Ruling since the September 17 Stop-Payment Ruling has expired by its terms on October 17, 2026;

(b) file with this Court and serve true and complete copies of each filing described in subparagraph (a), in the original Chinese together with a certified English translation, on counsel to the Debtors;

(c) promptly take any and all further actions that the Hefei Court may require, or that the Debtors may reasonably request, to effectuate the withdrawal of the September 15 Application and the confirmation of the expiry of the September 17 Stop-Payment Ruling and any other ruling, order, or measure entered on the September 15 Application, and shall, within three (3) business days after receipt, file with this Court copies (in the original Chinese together with a certified English translation) of any motion, application, ruling, order, notice, or other communication in connection with the September 15 Application; and

(d) deliver to CCB, with a copy delivered simultaneously to counsel to the Debtors, a written notice in a form reasonably acceptable to the Debtors (i) confirming that CNBM has withdrawn the September 15 Application and that the September 17 Stop-Payment Ruling expired by its terms on October 17, 2026; (ii) confirming that CCB is no longer restrained from releasing payment under the Timber Bond in respect of the Timber Demand to TRE, and that CNBM (A) withdraws the September 10 CNBM-CCB Letter, and any other request, objection, instruction, or communication by which CNBM has requested or encouraged CCB to withhold, suspend, or delay payment under the Timber Bond, and (B) consents to such payment solely for the purpose of complying with this Order, subject to Paragraph 13 hereof.

4. Bond Proceeds and Registry Deposit.

(a) ***Bond Proceeds.*** Immediately upon entry of this Order, CNBM shall take all steps within its power to cause CCB to release payment in full of the Timber Demand, i.e., EUR 5,122,607.40, on account of the Timber Bond (any

payment by CCB on account of the Timber Bond in respect of the Timber Demand, the "Bond Proceeds") to TRE no later than five (5) business days after entry of this Order. CNBM shall deliver to counsel to the Debtors, within one (1) business day after sending or receipt, copies of all written communications between CNBM (or its counsel or other representatives) and CCB (or its counsel or other representatives) concerning the payment on account of the Timber Demand under the Timber Bond pursuant to this provision, and shall notify counsel to the Debtors in writing within one (1) business day after CNBM becomes aware that CCB has raised any discrepancy in or objection to the Timber Demand, or has refused or declined to pay the Timber Demand in whole or in part. If TRE, or a successor thereto, receives or received_Bond Proceeds from CCB, the receiving party shall, within five (5) business days after its receipt of collected funds, transfer such Bond Proceeds to the registry of this Court, to be held by the Clerk of this Court in the registry. This obligation of TRE, or a successor thereto, to deposit the Bond Proceeds is absolute and unconditional and is not contingent upon any other provision of this Order. CNBM shall not, directly or indirectly, take any action, or request that any other person take any action, to delay, prevent, condition, or interfere with CCB's payment of the Timber Demand, and shall promptly provide any further written confirmation that CCB may request as a condition to payment. Neither the transfer of the Bond Proceeds to the registry of this Court nor any other provision of this Subparagraph (a) shall be construed to affect any security interest asserted in, or as a determination of the nature, characterization, or ownership of, the Bond Proceeds, or of the rights of any person in or to the Bond Proceeds, all of which are reserved.

(b) ***Registry Deposit.***

(i) If CCB releases the Bond Proceeds in full to TRE within the time period specified in Subparagraph (a) above, CNBM shall not be required to make the Registry Deposit (as defined below). If CCB fails to release the Bond Proceeds in full to TRE within the time period specified in Subparagraph (a) above, then, within fifteen (15) business days following the later of (i) the expiration of such time period and (ii) CNBM's receipt of payment instructions from the Clerk of the Court (which instructions CNBM shall request from the Clerk of the Court no later than two (2) business days after entry of this Order), but in no event later than twenty-five (25) business days after entry of this Order, CNBM shall deposit into the registry of this Court, pursuant to Bankruptcy Rule 7067 (which this Court hereby directs shall apply to this contested matter pursuant to Bankruptcy Rule 9014(c), Federal Rule of Civil Procedure 67, and 28 U.S.C. § 2041), funds in an amount equal to the amount of the Timber Security Deposit, i.e., RMB 40,032,664.57, converted into U.S. dollars at the closing middle rate for USD/CNY published by the

Bank of China[4] for the business day immediately preceding the date of deposit (the "Registry Deposit"); *provided* that, if TRE receives the Bond Proceeds in full in collected funds before the Registry Deposit has been made, CNBM's obligation to make the Registry Deposit shall be excused as of the date of such receipt. The Registry Deposit stands as security for TRE's asserted rights to payment on the Timber Demand, any damages arising from the September 10 CNBM-CCB Letter, the September 15 Application, and the September 17 Stop-Payment Ruling, and defaults of CNBM's performance under this Order. Except as provided in the first two sentences of this Subparagraph (b)(i), CNBM's obligation to make the Registry Deposit is unconditional, is not contingent upon the Hefei Court's release of the Timber Security Deposit, and may be satisfied from any source of funds. Within two (2) business days after the expiration of the time period specified in Subparagraph (a) above without CCB's release of the Bond Proceeds in full, CNBM shall initiate all governmental, regulatory, and internal approvals required under the laws of the People's Republic of China or otherwise to complete the Registry Deposit, and CNBM shall file with this Court a status report regarding the Registry Deposit every five (5) business days thereafter until the Registry Deposit has been made in full. The unavailability or delay of any such approval shall not excuse, condition, or extend CNBM's obligation to make the Registry Deposit. Until the Registry Deposit has been made in full, CNBM shall not withdraw, transfer, pledge, encumber, or otherwise dissipate the Timber Security Deposit, or permit any of the foregoing to occur.

(ii) Unless and until CCB releases the Bond Proceeds in full to TRE, the Registry Deposit shall remain in the registry of this Court subject to Subparagraph (c) below. If CCB releases the Bond Proceeds in full to TRE after the Registry Deposit has been made, in order to avoid duplication, CNBM may, at any time after such release and notwithstanding the restriction in Subparagraph (c), move this Court, on at least ten (10) business days' written notice to all parties requesting special notice in the Chapter 11 Cases, for an order directing the Clerk of this Court to release and pay to CNBM the Registry Deposit, together with any interest accrued thereon while held in the registry, by wire transfer to an account designated in writing by counsel to CNBM, solely on the ground that such Registry Deposit is duplicative of the Bond Proceeds, and the Debtors or any successors thereto shall not oppose any such motion. If CCB releases Bond Proceeds to TRE in an amount less than the full amount of the Timber Demand (with all amounts converted into U.S. dollars at the applicable rates published by the Bank of China

[4] https://www.boc.cn/english/bocinfo/exr/

and the European Central Bank for the business day immediately preceding the date of CNBM's motion) after the Registry Deposit has been made, CNBM may move for the release of the Registry Deposit under this Subparagraph (b)(ii) only to the extent that the aggregate amount of the Bond Proceeds plus the amount of the Registry Deposit remaining in the Court's registry after such requested release is at least the full amount of the Timber Demand, and the balance of the Registry Deposit shall remain in the registry of this Court subject to Subparagraph (c). Nothing in this Subparagraph (b)(ii) is an admission by CNBM regarding the Debtors' rights or entitlement to payment under the Timber Bond, or by the Debtors or any successors thereto regarding the nature, validity, authenticity or effect of the "Side Contract" or any other purported side agreement, or any other related agreement in connection with the Timber Bond, or a determination of the rights of any person in or to the Registry Deposit or the Bond Proceeds, all of which are reserved under Paragraph 13 hereof.

(c) ***Retention Pending Resolution of Underlying Dispute.*** The Bond Proceeds shall be retained and held by the Clerk of this Court pending (i) a final determination of the respective rights of the Parties, and of any other person or entity asserting an interest, in and to the Bond Proceeds, including any contention by CNBM that TRE has waived, or is otherwise not entitled to, payment under the Timber Bond or by the Debtors or any successors thereto regarding the nature, validity, authenticity or effect of the "Side Contract" or any other purported side agreement, or any other related agreement in connection with the Timber Bond, by this Court or by such other court or arbitral tribunal as may have jurisdiction over such dispute, consistent with Paragraphs 5 and 15 hereof; (ii) a settlement or other written agreement among the Parties and any such other person or entity resolving such rights; or (iii) order of this Court pursuant to an application by any Party, any successor thereto, or any party in interest, on at least ten (10) business days' written notice to all parties requesting special notice in the Chapter 11 Cases, regarding the disposition of the Bond Proceeds. No Party shall file any motion or application seeking the release, withdrawal, or other disposition of all or any portion of the Registry Deposit or the Bond Proceeds prior to January 1, 2027, other than a motion by CNBM pursuant to Subparagraph (b)(ii) or an application pursuant to Subparagraph (d). The Registry Deposit, if made and to the extent not released to CNBM pursuant to Subparagraph (b)(ii), shall be retained as a substitute for the Bond Proceeds and shall remain on deposit with this Court until the underlying dispute is resolved in the manner set forth in the first sentence of this Subparagraph (c). Nothing in this Order shall determine the forum in which such rights shall be adjudicated, or prejudice the right of any Party to seek relief from the automatic stay or other relief from this Court for the purpose of commencing such an adjudication, or the right of any Party or party in

interest to oppose such relief. If, on or before March 31, 2027, (x) no Party has commenced a proceeding before this Court or, subject to any required relief from the automatic stay, before another court or arbitral tribunal of competent jurisdiction, to determine the respective rights of the Parties in and to the Bond Proceeds or the Registry Deposit, as the case may be, and (y) the Parties have not entered into a written settlement resolving such rights, then either Party may, on at least ten (10) business days' written notice to all parties requesting special notice in the Chapter 11 Cases, move this Court for an order determining the disposition of the Bond Proceeds, or the Registry Deposit (or any remaining portion thereof), as the case may be, and the Parties shall jointly request that this Court hear such motion on an expedited basis. The Bond Proceeds and the Registry Deposit shall be released only by order of this Court.

(d) This Court may, upon application and on notice to all parties requesting special notice in the Chapter 11 Cases, direct that all or any portion of the Registry Deposit be applied to satisfy any unpaid Compensatory Sanctions under Paragraph 6 or any further sanctions imposed under Paragraph 11.

5. No Further Proceedings Outside this Court. Effective immediately upon entry of this Order, and continuing until the earlier of (x) further order of this Court and (y) the dismissal or closing of the applicable Chapter 11 Case, and except for the actions expressly required of CNBM under Paragraphs 3 and 4(a) of this Order, CNBM shall not commence or continue, and shall cause its affiliates that it owns or controls, directly or indirectly, and its agents, representatives, and counsel (including its counsel in the People's Republic of China) not to commence or continue, any action, suit, arbitration, application, or other proceeding against any Debtor or any property of any Debtor or its estate in any forum other than this Court, or take any action which violates or causes to be violated 11 U.S.C. § 362(a), including, without limitation, (a) any litigation or arbitration asserting independent-guarantee fraud under Article 16 of the Provisions of the Supreme People's Court on Several Issues Concerning the Trial of Cases Involving Independent Guarantees (the "Independent Guarantee Provisions") or otherwise, with respect to the Timber Bond or the Timber Demand; (b) any new or renewed application for a stop-payment, preservation, suspension, injunction, or similar interim measure with respect to the

Timber Bond or the Timber Demand or any bond or demand of any Debtor; and (c) any proceeding seeking reconsideration of, or otherwise to preserve or extend, the September 17 Stop-Payment Ruling. CNBM has acknowledged that the thirty-day period under Article 16 of the Independent Guarantee Provisions following the September 17 Stop-Payment Ruling expired on October 17, 2026, on which date the September 17 Stop-Payment Ruling expired by its terms, and has represented that it has not commenced any litigation or arbitration in respect of the Timber Bond or the Timber Demand, and CNBM shall not commence any such litigation or arbitration. For the avoidance of doubt, nothing in this Paragraph precludes CNBM, the Debtors or any successors thereto, or any other party in interest, from asserting any right or defense in the Chapter 11 Cases before this Court, consistent with Paragraphs 13 and 14 hereof. Nothing in this Paragraph shall be construed as, or shall constitute, consent by CNBM to the jurisdiction of this Court to hear or determine the merits of any claim or dispute arising under, out of, or relating to the Timber EPC Contract, the Timber Bond, any parent company guarantee, any direct agreement, any other related agreement, or applicable non-bankruptcy law, including, without limitation, any claim or dispute concerning the Bond Proceeds, in each case subject to Paragraphs 4, 15, and 18 hereof. CNBM expressly reserves all rights, objections, and defenses with respect to jurisdiction and venue over the merits of any such claim or dispute, and nothing herein shall operate as a waiver of any of them.

6. <u>Compensatory Sanctions</u>. CNBM shall pay to the Debtors, as compensatory sanctions, the reasonable and documented fees and expenses (including attorneys', translators', and other professionals' fees and expenses) incurred by the Debtors and their estates in connection with the September 10 CNBM-CCB Letter, September 15 Application and the September 17 Stop-Payment Ruling, including the Debtors' correspondence with CNBM concerning the same, the

Rule 2004 Notice, the OSC Motion, the Stay Motion, the Motion to Quash, the Hearing, this Order, and the enforcement hereof, together with any other damages suffered by TRE as a result of the delay in CCB's payment of the Timber Demand (collectively, the "Compensatory Sanctions"), by wire transfer to an account designated in writing by counsel to the Debtors, in accordance with the following procedure. Within three (3) business days after entry of this Order, the Debtors shall serve on counsel to CNBM a statement of the fees and expenses comprising the Compensatory Sanctions, with supporting invoices (which may be redacted). CNBM may, within three (3) business days after such service, deliver to counsel to the Debtors a written objection identifying with specificity each entry that CNBM contends is unreasonable or unrelated to the matters described in this Paragraph 6; CNBM may not otherwise object to the Compensatory Sanctions. The Parties shall confer in good faith regarding any such objection and, if it is not resolved within two (2) business days after its delivery, either Party may file a motion, on not less than three (3) business days' notice, for this Court to determine the disputed amount, which this Court may determine at an expedited hearing or on the papers. CNBM shall pay the undisputed portion of the asserted Compensatory Sanctions within five (5) business days after entry of this Order, and any disputed portion within five (5) business days after the Parties' agreement or this Court's determination. If CNBM does not timely deliver a written objection, or does not timely file a motion with respect to an unresolved objection, CNBM shall be deemed to have waived all objections to the payment thereof and the Compensatory Sanctions shall be payable in full. This Court finds that the Compensatory Sanctions are entirely compensatory in nature and are not punitive.

7. Committee and Liquidation Trust Board. Within one (1) business day after entry of this Order, CNBM shall tender its irrevocable written resignation as a member of the Committee

to the Office of the United States Trustee for Region 7 (the "U.S. Trustee"), and file such resignation with this Court. CNBM shall not serve or seek to serve, as a member of the Committee, as a Committee Designee, or as a member of the Liquidation Trust Board or any successor or analogous body under the Plan or the Liquidation Trust Agreement, and any designation of a representative of CNBM as a Committee Designee is hereby withdrawn and disclaimed. Nothing herein limits the Committee's right to designate a replacement Committee Designee in accordance with Section 5.1 of the Liquidation Trust Agreement, or the U.S. Trustee's authority under section 1102 of the Bankruptcy Code.

8. Resolution of the Stay Motion and the OSC Motion as to TRE. The Stay Motion and the OSC Motion as to TRE are resolved in accordance with the terms of this Order. The Debtors' requests for relief in the OSC Motion, and CNBM's requests for relief in the Stay Motion, with respect to the Reserved Matters are not resolved by this Order and are reserved in their entirety, without prejudice to the rights, claims, remedies, and defenses of any party in interest with respect thereto, as further set forth in Paragraph 14.

9. Rule 2004 Notice and Motion to Quash. The Motion to Quash is deemed withdrawn by CNBM with prejudice. No later than five (5) business days after entry of this Order, CNBM shall produce to the Debtors all non-privileged documents responsive to the Rule 2004 Notice as described on Schedule A thereto that relate to TRE, the Timber EPC Contract, the Timber Bond, the Timber Demand, the September 15 Application, the September 17 Stop-Payment Ruling, or the Timber Security Deposit, with the following exceptions: (1) Request for Production No. 10 is excluded; (2) Requests for Production No. 4, 5 and 6 shall exclude CNBM Affiliates other than entities that CNBM owns or controls, directly or indirectly; and (3) Request for Production No. 5 shall be limited to TRE, in each case in the original language and, as to all documents not in

English, any English translation thereof in CNBM's possession, custody, or control. Any document withheld on the basis of privilege shall be identified on a privilege log served with the production. CNBM consents that the Debtors may provide any documents produced pursuant to this Paragraph 9 to (i) Brookfield Asset Management Limited and its affiliates or designees as DIP Lenders (as such term is defined in the Plan) and Bid Administrator LLC and its designees, as Buyer under the Sale Order [Docket No. 584] (the "Buyer"), (ii) Sequoia, and (iii) their and the Debtors' respective counsel, advisors, agents, and other professionals. Nothing in this Paragraph limits the Debtors' rights under Bankruptcy Rule 2004 or otherwise to seek further discovery from CNBM.

10. Sealed Documents. The Seal Motions are deemed withdrawn and the Clerk of the Court is authorized to unseal the Sealed Documents on the docket. The Debtors are authorized to provide immediately complete, unredacted copies of all documents that are the subject of the Seal Motions, including the documents filed or to be filed under seal pursuant thereto and any order thereon (collectively, the "Sealed Documents"), to (i) the Buyer and DIP Lenders, (ii) Sequoia, and (iii) their and the Debtors' respective counsel, advisors, agents, and other professionals, and CNBM has consented to, and waives any objection to, such provision. The Debtors, Buyer and DIP Lenders and Sequoia are not required to file any of them under seal, whether on the docket of this Court or any other tribunal. As a result of the withdrawal of the Seal Motions, the Sequoia Objection is moot.

11. Compliance. No later than twenty one (21) business days after entry of this Order (or, if CNBM is required to make the Registry Deposit under Paragraph 4(b)(i), no later than two (2) business days after the deadline for the Registry Deposit under Paragraph 4(b)(i)), CNBM shall file with this Court under Bankruptcy Rule 9011 a certification of counsel confirming full and

complete compliance with the terms hereof (a "Compliance Certificate"), which shall attach copies of the filings, notices, confirmations, and other documents filed or delivered by CNBM that evidence CNBM's compliance with Paragraphs 3, 4, 6, 7, and 9 hereof, including the notice delivered to CCB pursuant to Paragraph 3(d). CNBM's compliance with Paragraph 3 hereof shall be evidenced by copies of CNBM's written withdrawal of the September 15 Application and its written request to the Hefei Court described in Paragraph 3(a), and no ruling lifting the September 17 Stop-Payment Ruling shall be required in light of its expiry. The copies shall be accompanied by a certified English translation. The absence of any written response, confirmation, or ruling from the Hefei Court or CCB shall not constitute non-compliance by CNBM. Any written response thereto, if any, received from CCB or from the Hefei Court shall be filed with this Court within three (3) business days after CNBM's receipt. This Court shall conduct a hearing on CNBM's compliance on December 15, 2026, at 11:30 a.m. (prevailing Central Time) (the "Compliance Hearing"). To the extent that the Compliance Certificate provides for anything other than full and complete compliance with the terms of this Order, CNBM's counsel and an authorized and knowledgeable representative of CNBM (who shall be specifically identified in the Compliance Certificate) shall attend the Compliance Hearing in person, unless the Court excuses such in person appearance upon motion on at least ten (10) business' days written notice to all parties requesting special notice in the Chapter 11 Cases. This Court may impose such further sanctions on CNBM at the Compliance Hearing as this Court deems appropriate to the extent that CNBM does not fully comply with this Order. The existence of the Notice of Assignment dated August 25, 2025, between TRE and Sequoia, and any dispute or claim arising from or relating to that Notice of Assignment, shall not affect CNBM's compliance with this Order, *provided* that CNBM performs its obligations under this Order.

12. Representations. CNBM has represented to this Court, and this Court has relied upon such representations in entering this Order, that (a) other than the September 15 Application, the September 17 Stop-Payment Ruling, and the Reserved Matters, neither CNBM nor any affiliate that CNBM owns or controls, directly or indirectly, has commenced, or caused to be commenced, any action, suit, arbitration, application, or other proceeding against any Debtor or any property of any Debtor or its estate in any forum other than this Court since the Petition Date; (b) other than the Timber Security Deposit, neither CNBM nor any such affiliate has posted any security or made any deposit with any court or other person in connection with the September 15 Application; (c) it has disclosed to the Debtors every ruling, order, and measure entered by the Hefei Court in connection with the September 15 Application; and (d) it has the full power and authority to perform its obligations under this Order, and the undersigned counsel is duly authorized to agree to the form and content of this Order on its behalf.

13. Reservation of Rights. Except for the obligations expressly undertaken by CNBM in Paragraphs 3 through 11 hereof, and the agreements set forth in Paragraph 14, nothing in this Order, including the findings in Paragraph 2, is intended to, or shall, determine, adjudicate, waive, release, limit, impair, or otherwise affect the substantive rights, claims, causes of action, remedies, or defenses of any Party, or of any other person or entity, with respect to the Timber Bond, the Timber Demand, the Registry Deposit, the Bond Proceeds, the Timber EPC Contract, the Reserved Matters, any direct agreement, any parent company guarantee, the instrument described in the September 17 Stop-Payment Ruling as the "Side Contract" or any other purported side agreement, or any other related agreement, whether arising under the Bankruptcy Code, the Uniform Rules for Demand Guarantees (URDG 758), or applicable non-bankruptcy law, all of which are expressly reserved. Without limiting the generality of the foregoing, nothing in this Order is intended or shall

be construed as (a) an admission by the Debtors of the existence, authenticity, validity, enforceability, or effect of any instrument described in the September 17 Stop-Payment Ruling or in the September 15 Application, including the purported "Side Contract," or any other similar side contract or side agreement with respect to any other Debtor; (b) an admission by CNBM regarding TRE's rights or entitlement to payment on the Timber Demand under the Timber Bond, or a determination of whether the Debtors have waived any such right; (c) a waiver, release, or limitation of any claim, cause of action, right, remedy, or defense of the Debtors, their estates, or any successor thereto (including the Liquidation Trust) against CNBM, or any affiliate, guarantor or surety thereof; (d) a waiver, release, or limitation of any claim, cause of action, right, remedy, or defense of CNBM against the Debtors, their estates, or any successor thereto (including the Liquidation Trust), or any of their affiliates, guarantors, or sureties; (e) an assumption, rejection, or other treatment of any executory contract under section 365 of the Bankruptcy Code; or (f) a determination of the rights of any person or entity that is not a Party hereto, including the Buyer and DIP Lenders, Sequoia, and CCB. Notwithstanding clauses (b) and (d) of the immediately preceding sentence, TRE shall be entitled to take any steps necessary to cure or correct any deficiency in the Timber Demand, notwithstanding the expiry of the Timber Bond, to the extent TRE's inability to cure or correct such deficiency prior to such expiry is attributable to the September 15 Application, the September 17 Stop-Payment Ruling, or the September 10 CNBM-CCB Letter; and CNBM shall not assert any such expiry as a defense to, or as a basis to challenge, the Timber Demand so cured or corrected. Notwithstanding the foregoing, nothing in this Paragraph 13 shall (i) authorize or excuse any action prohibited by Paragraph 5 hereof or by section 362(a) of the Bankruptcy Code, (ii) condition, delay, or otherwise affect CCB's payment of the

Timber Demand to TRE, or (iii) limit this Court's inherent authority or its authority under section 105(a) of the Bankruptcy Code.

14. Reserved Matters. The Reserved Matters include the alleged violations of the automatic stay asserted in the OSC Motion with respect to the performance guarantee issued in favor of Whiskey, and the Whiskey 2004 Notice Requests, and that the Reserved Matters, together with other claims and causes of action asserted or assertable by and among the Parties and other parties in interest, are subject to a current proposed settlement among the Parties and others to resolve such matters consensually; *provided, however,* that the payment under Paragraph 6 hereof shall constitute CNBM's sole and exclusive obligation to pay compensatory sanctions on account of the violations of the automatic stay with respect to the Timber Bond and the Timber Demand; *provided further* that nothing herein shall limit or otherwise affect any compensatory or other sanctions, damages, or remedies with respect to the Reserved Matters, any future violation of the automatic stay or with respect to any failure by CNBM to comply with this Order. If the settlement does not become effective or terminates, then each of Whiskey (or any successor thereto), the Debtors, the Buyer and DIP Lenders, and CNBM reserves the right to seek relief and remedies from this Court or any other court of competent jurisdiction, subject to the automatic stay to the extent applicable.

15. Binding Effect; Consent to Jurisdiction. This Order shall be binding upon the Parties and their respective successors and assigns, including any trustee, examiner, liquidation trustee, or other estate representative appointed in the Chapter 11 Cases, and shall be binding upon CNBM under each name by which it has appeared or been identified in the Chapter 11 Cases or in connection with the Timber Bond. CNBM irrevocably consents to the jurisdiction of this Court for all purposes relating to the interpretation, implementation, and enforcement of this Order and

agrees that it shall not contest this Court's jurisdiction or the enforceability of this Order in any forum. Nothing in this Order shall be construed to determine, limit, or otherwise affect the forum in which the Parties may commence any action, suit, arbitration, application, or other proceeding to adjudicate their respective rights under the Timber EPC Contract, the Timber Bond, any parent company guarantee, any direct agreement, or any other related agreement; *provided, however*, that absent further order of this Court or the dismissal or closure of TRE's case pending before this Court, no such action, suit, arbitration, application, or other proceeding concerning the Timber Bond, the Timber Demand, the Registry Deposit, or the Bond Proceeds shall be commenced in any forum other than this Court.

16. Effectiveness; No Stay. The provisions of this Order shall be effective immediately upon its entry by this Court. To the extent any provision of this Order could be construed as granting relief from, or a modification of, the automatic stay solely for the purpose of implementing the provisions of this Order, the fourteen-day stay under Bankruptcy Rule 4001(a)(4) is waived, and any such provision shall be effective immediately upon entry.

17. Miscellaneous. This Order sets forth the complete resolution of the matters described in Paragraph 1 hereof and supersedes all prior negotiations, understandings, and agreements with respect thereto, other than the Evidentiary Stipulation, which remains in effect to the extent relevant to any further proceedings hereunder. This Order may be modified, amended, or supplemented only by further order of this Court. This Order was negotiated by the Parties, each of which participated in its drafting, and no provision hereof shall be construed against any Party as the drafter. The headings in this Order are for convenience only and shall not affect its interpretation.

18. Retention of Jurisdiction. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

IT IS SO ORDERED.

Signed: November 09, 2026

Alfredo R Pérez
United States Bankruptcy Judge

**AGREED AS TO FORM AND CONTENT:**

Dated: October 29, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Steven W. Golden (SBT 24099681)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
mwarner@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
Malhar S. Pagay (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
mpagay@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**ARENTFOX SCHIFF LLP**

/s/ Christopher K.S. Wong

Aram Ordubegian (admitted *pro hac vice*)
Christopher K.S. Wong (admitted *pro hac vice*)
Sophia R. Wang (Texas Bar No. 24147006)
555 South Flower Street, 43rd Floor
Los Angeles, CA 90071
Telephone: (213) 629-7400
Facsimile: (213) 629-7401
aram.ordubegian@afslaw.com
christopher.wong@afslaw.com
sophia.wang@afslaw.com

*Counsel to CNBM Research Institute for Advanced Glass Materials Group Co., Ltd.*

[Signature Pages Continue]

CNBM RESEARCH INSTITUTE FOR ADVANCED GLASS MATERIALS CO., LTD., F/K/A (CNBM) BENGBU DESIGN & RESEARCH INSTITUTE FOR GLASS INDUSTRY CO., LTD.
CNBM RESEARCH INSTITUTE FOR ADVANCED GLASS MATERIALS GROUP CO., LTD.
中建材玻璃新材料研究院集团有限公司

By: ______________________ Date: 2026 / 10 / 29

[(公章) seal registration no. 3403040155036; Unified Social Credit Code 913403004852224289; No. 1047 Tushan Road, Bengbu, Anhui]